1   SEPEHR TORABI
    3253 Caminito East Bluff, #26
2   La Jolla, California 92037
    Phone: (858) 518-1515
3

4   Plaintiff, In Pro Se

FILED

09 DEC 17 PM 4: 04

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  SEPEHR TORABI, | Case No. **'09 CV 2838 JAH    BLM** |
| 11 | VERIFIED COMPLAINT |
| 12                    **Plaintiff,** | JURY TRIAL DEMANDED |
| 13 |  |
| 14 | 1.  Violations of 15 U.S.C. 1601, Truth in Lending Act\ |
| 15  **Vs.** | 1.  Unfair Debt Collection Practices Violations of 12 U.S.C. 2601 et seq. |
| 16 | 2.  Real Estate Settlement Procedures Act |
|  | 3.  Set Aside and Vacate Trustees Sale California Civil Code § 3412 |
| 17 | 4.  Unjust Enrichment |
| 18  **WASHINGTON MUTUAL BANK, CHASE BANK, NA,  CITIBANK, NA AS** | 5.  Promissory Estoppel |
|  **TRUSTEE FOR WAMU 2004-AR9,** | 6.  Demand for Accounting |
| 19  **WAMU 2004-AR9, DOES 1 to 25,** | 7.  Breach of Implied Warranties, Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. |
| 20 | 8.  Disgorgement, under Cal. Bus. Prof. C ode § 17200 et seq.) |
| 21 | 9.  Fraud -Violation of Unfair Practices Act |
|  **Defendants.** | 10. Fraud -Violation of Unfair Practices Act |
| 22 | 11. Negligence, as to all Defendants |
| 23 | 13. Declaratory Relief |
| 24 | 14. Application for TRO pending OSC For Preliminary Injunction \ Specific Performance |
| 25 |  |
| 26   /// |  |
| 27 /// |  |
| 28 |  |

- 1 -

## BACKGROUND HISTORY

1        In early 2005 Plaintiff, SEPEHR TORABI, refinanced his home with an adjustable
2    rate mortgage that came from Defendant Washington Mutual (WAMU).  Like many other
3    California citizens Plaintiff fell behind on his mortgage payments as a result of financial
4    difficulties.

5        By the time plaintiff fell into default WAMU had been placed into receivership for
6    risky, and likely fraudulent, lending practices.  As a result of WAMU being placed into
7    receivership WAMU'S assets were taken over by Defendant Chase (CHASE),
8    CHASE  notified plaintiff of his default in February of 2009 and almost simultaneously
9    instructed plaintiff to contact CHASE/WAMU'S loan modification department where
10   CHASE/WAMU would help plaintiff stay in his home.  Plaintiff did as CHASE/WAMU
11   instructed and not only contacted their loan modification department but was actively engaged
12   in the loan modification process when on July 23, 2009, CHASE/WAMU sold plaintiff's
13   home at a trustee sale to Defendant WAMU  2004 AR-9.

14       CHASE/WAMU'S trustee sale of plaintiff's property was done after
15   CHASE/WAMU'S both acted, stated  and reassured Plaintiff on numerous occasions that
16   CHASE/WAMU  had no intention of selling plaintiff's home until the loan modification
17   process was completed. In fact CHASE/WAMU'S actions, statements and reassurances to
18   plaintiff they would not sell his home continued up until July 22, 2009, just 1 day before they
19   sold his home without warning.

20       After CHASE/WAMU sold plaintiff's home out from underneath him they quickly
21   filed an unlawful detainer and would no longer discuss modifying Plaintiff's loan or how
22   CHASE/WAMU justified their actions given the status of the loan modification process.

///

///

///

1       In response to CHASE/WAMU'S unlawful detainer plaintiff filed a demurrer hoping

2   to avoid conviction and reopen the loan modification process he had been engaged in. Instead

3   of discussing modification of plaintiff's loan CHASE/WAMU moved Ex Parte to have

4   plaintiff's demurrer set aside.  In response plaintiff, acting in pro se, filed for bankruptcy

5   under Chapter 13 in hopes defendant would be forced to modify plaintiff's loan. However,

6   being unfamiliar with bankruptcy law or procedure plaintiff's chapter 13 was dismissed for

7   failure to timely file the appropriate schedules.

8       Plaintiff filed a second bankruptcy petition seeking protection under chapter 13 and

9   defendant's responded by motioning the court for relief from automatic stay so that

10   defendant's could move forward in their attempt to evict plaintiff from the home defendant's

11   had taken through their deception.

12       Defendant's motion for relief from the automatic stay was granted on December 8,

13   2009, with the result plaintiff now seeks the protection of this court, Specifically, plaintiff

14   seeks to have a temporary restraining order preventing defendant's from further attempts to

15   oust plaintiff from his residence, have the trustee's sale set aside, and have the defendants

16   ordered to reopen the loan modification process and this time deal with plaintiff in good faith.

17   Understandably upset by the way CHASE/WAMU had acted plaintiff began to investigate the

18   legalities of what had occurred. Plaintiff's investigation consisted of having a forensic review

19   done of his loan documents and numerous hours spent on the internet doing research.

20   Plaintiff learned from the internet research and forensic loan review WAMU for years had

21   been defrauding California consumers in a number of ways.

22       Specifically WAMU, in violation of state and federal laws, engaged in widespread

23   lending fraud by overinflating the value of borrowers homes while convincing borrowers to

24   take subprime adjustable rate home loans.  Plaintiff is informed and believes and herein

25   alleges he is also a victim of WAMU'S fraudulent lending practices in that at the time he

26   obtained his loan WAMU overinflated the value of his residence and convinced plaintiff that a

27   30 year adjustable rate mortgage was in his best interest when almost universally such a loan

28   is considered subprime. .

1    Plaintiff further is informed that at the time he obtained his loan violated both state

2    violated Federal lending laws as well as California Lending laws by pressuring plaintiff to

3    commit to a 30 year adjustable rate mortgage considered subprime when WAMU, among

4    other things, over inflated the value of his home, failed to: adequately disclose the effective

5    interest rate plaintiff would be charged on his loan; provide plaintiff the requisite disclosures

6    required for borrowers obtaining an adjustable rate loan, and charged plaintiff excessive fees

7    in violation of both state and federal lending laws.

8    Pursuant to Cal. Bus. & Professions Code § 17200 et seq. and implementing the

9    California Private Attorney General Statute, plaintiff hereby also seeks damages against

10   Defendant Washington Mutual and its successor in interest Defendant Chase Bank, NA, as

11   well as the other defendants named herein, who, working on behalf of themselves or as the

12   agents and employees of each other, have acted in the manner as set forth herein so as to

13   unjustly enrich themselves by wrongfully depriving plaintiff, and other California residents

14   similarly situated, of their most valuable possession, their homes.

15   Therefore, Pursuant to Cal. Bus. & Professions Code § 17200 et seq. should the

16   injunctive relief plaintiff seeks be denied, plaintiff ask this court to rescind all those

17   residential mortgage loan defendant's originated in violation of the Truth in Lending Act,

18   codified at 15 U.S.C. § 1601 et seq., (TILA), or in violation of Federal Reserve Board

19   Regulation Z, 12 C.F.R. part 226, as well as for the immediate cancellation of all Deeds

20   which originated from Defendant's Trustee's Sale. Additionally, Plaintiff seeks redress under

21   15 U.S.C. 1692, et seq. for unlawful and unfair debt collection practices and for violations of

22   the Real Estate Settlement Procedures Act 12 U.S.C. 2601. Moreover, Plaintiff seeks

23   injunctive relief and disgorgement under Cal. Bus. & Professions Code § 17200 et seq. and

24   implementing the California Private Attorney General Statute.

25   ///

26   ///

27

28   ///

1

## JURISDICTION

2     This Court has jurisdiction under 28 U.S.C. § 1331 (general federal question), 15

3     U.S.C. § 1601 (TILA), 15 U.S.C. 1692, Fair Debt Collection Practices Act, 12 U.S.C. 2601,

4     Real Estate Settlement Procedures Act, (RESPA),  and, 28 U.S.C. § 1367 (supplemental

5     jurisdiction). Jurisdiction is additionally inferred under California Business & Professions

6     Code § 17200 et seq. Venue in this District is proper whereas Defendants, and each of them,

7     transact business within the jurisdiction of this Court.

8

## PARTIES

9     1.      Plaintiff, SEPEHR TORABI, is an individual, and is and at all times herein

10    mentioned was a resident of the County of San Diego, State of California within the

11    jurisdictional boundaries of this Court. Plaintiff is the owner of real property commonly

12    known as and located at 3253 Caminito East Bluff, #26, La Jolla, California 92037,

13    (hereinafter the "Subject Property"), which is situated within the jurisdictional boundaries of

14    this Court.

15    2.      Defendant, WASHINGTON MUTUAL BANK, (hereinafter referred to as

16    "WAMU"), at all times herein mentioned was doing business in the County of San Diego,

17    State of California as a Mortgage lender, and this Defendant alleged to be the beneficiary

18    under Plaintiffs note and ordered and perfected the foreclosure of Plaintiffs real property.

19    3.      Defendant, CHASE BANK, NA (hereinafter referred to as "CHASE ") , at all

20    relevant times herein mentioned was doing business in the County of San Diego State of

21    California, and this Defendant alleges to be the beneficiary under Plaintiffs Note and in

22    concert with defendant WAMU, perfected the Foreclosure of Plaintiffs property.

23    4,      Defendant, CITIBANK, NA AS TRUSTEE FOR WAMU 2004-AR9,

24    (hereinafter referred to as "CITI"), at all times herein mentioned was doing business in the

25    County of San Diego, State of California as a Trustee, and this Defendant is alleged to be the

26    Trustee under that deed of trust executed as a result of the trustee's sale of plaintiff's property

27    which occurred on July 23, 2009. And were instrumental in perfecting the foreclosure of

28    Plaintiffs real property.

5.      Plaintiff is informed and believes and upon such information and belief alleges that Defendant WAMU 2004-AR9, (hereinafter referred to as "WAMU AR9"), at all relevant times herein mentioned was the real beneficiary of any deed recorded against Plaintiff's property and further is and was doing business in the County of San Diego State of California, and this Defendant as the real beneficiary under Plaintiffs Note, and in concert with defendants, each and every one of them, perfected the Foreclosure of Plaintiffs property.

6.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, INCLUSIVE, and therefore sues these Defendants by such fictitious names. Plaintiff will amend its complaint to show the true names and capacities of such fictitious Defendants when they have been fully ascertained.

7.      Plaintiff is informed and believes, and upon such information and belief alleges that, at all times herein mentioned each of the Defendants sued herein in relation to the property they claim an interest in was the agent and employee of each of the remaining Defendants thereof and at all times was acting within the purpose and scope of such agency and employment.

8.      Plaintiff alleges that Defendants, each and every one of them, conducted a Trustee Sale and unlawfully perfected foreclosure on Plaintiffs real property commonly known as, and located at, 3253 Caminito East Bluff, #26, La Jolla, California 92037, the same property identified in Exhibit 1, ostensibly to collect the unpaid balance on the Note secured by the security instrument that is identified in Exhibit 1.

9.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, INCLUSIVE, and therefore sues these Defendants by such fictitious names. Plaintiff will amend its complaint to show the true names and capacities of such fictitious Defendants when they have been fully ascertained.

10.     Plaintiff is informed and believes, and upon such information and belief alleges that, at all times herein mentioned each of the Defendants sued herein in relation to the property they claim an interest in was the agent, or employee of and in concert with the remaining Defendant(s).

- 6 -

**INTRODUCTION**

9.     Mortgage Fraud is defined as the intentional misstatement, misrepresentation, or omission by an applicant or other interested parties, relied on by a lender or underwriter to provide funding for, to purchase, or to insure a mortgage loan. Combating mortgage fraud effectively requires the cooperation of law enforcement and industry entities.

10.     No single regulatory agency is charged with monitoring this crime. The FBI, Department of Housing and Urban Development-Office of Inspector General (HUD-OIG), Internal Revenue Service, Postal Inspection Service, and state and local agencies are among those investigating mortgage fraud. "The potential impact of mortgage fraud on financial institutions and the stock market is clear. If fraudulent practices become systemic within the mortgage industry and mortgage fraud is allowed to become unrestrained, it will ultimately place financial institutions at risk and have adverse effects on the stock market." -Chris Swecker, former FBI Assistant Director, Criminal Investigative Division, Introductory Statement: House Financial Services Subcommittee on Housing and Community Opportunity, 7 October 2004.

**Application of Unique Law to this Case is Warranted**

11.     Cal Bus Prof Code 17200, is perhaps the only mechanism that can both force the disgorgement and enjoin further conduct which loots California residents of hundreds of millions of dollars annually by Wamu/Chase alone. Accordingly, Plaintiff, absent being forced to devote his resources to investigating the fraud perpetrated at the inception of the financing triggered by the second stage fraud. This second stage fraud occurred when Wamu/Chase claimed they were sending Plaintiff a new revised mortgage modification and one day later sold his home (to themselves) in a Trustee Sale.

12.     The fact that there was more than $100,000.00 of equity in property was clearly a motivating factor but as evidenced in the admission by Wamu detailed in the 300 page complaint filed against WAMU by its stockholders, that mortgages were not the core of Wamu's profit center, rather, mortgage fraud was the core. And such fraud has served as the key to the Court house for Wamu.

13.   Mortgage fraud is a relatively low-risk, high-yield criminal activity which is accessible to many, however Plaintiff asserts that Wamu took it to a new level rendering fraud the key to generating fees and placing homeowners like Plaintiff on a track to foreclosure from day one. How could a large powerful bank like WAMU place homeowners on a path to foreclosure form the date of financing:

a)   First, they issued fraudulent property appraisals as detailed in the admissions on ABC by the WAMU's top officers and directors and as detailed in the 300 page complaint aforementioned.

b)   Second, in an attempt to strip issuing the loans Wamu would routinely violate

RESPA, TILA, together with inflating the Notary costs by 900%.

For example, Cal.Gov.Code § 8211, in pertinent part states that fees charged by a notary public for the following services shall not exceed the fees prescribed by this section:

"For taking an acknowledgment or proof of a deed, or other instrument, to include the seal and the writing of the certificate, the sum of ten dollars ($10) for each signature taken."

14.   Despite the above, Defendants charged Plaintiff 100.00 for his signature. This alone, sought under 17200 for disgorgement and injunction from further acts trumps the amount in controversy in the foreclosure action (even assuming the entire note was valid, due and owing by more than 100,000,000.00 million dollars.)

15.   With full cognizance that "class actions" are all but barred by the generally flocked to Respa statutes, as these statutes, due to their limitation, have short statute of limitations. Nevertheless, through their continuing fraud and failure to reverse these charges, and continuing to amortize these illegal costs into each loan payment, Wamu tolled the statue of limitations.

16.   Plaintiff asserts that by looting the tens of California for notary fees in excess of 900% of their statutory amount, there no more objective evidence that Plaintiffs claim on behalf of himself and as the private attorney general needs to be decided (as well as the others), which combined with the others well exceeds the amount Wamu claims to be in controversy.

- 8 -

## STATEMENT OF FACTS

17. Plaintiff realleges and incorporates by reference all of the paragraphs as fully set forth above.

18. The property which is the subject to these proceedings is a condominium unit Plaintiff purchased as his sole and separate property in May of 2003 for $395,999.00.

19. When the property was originally purchased in 2003 Plaintiff obtained financing through Suntrust Mortgage.

20. Thereafter, Plaintiff contacted Uniwest Mortgage Corporation to obtain a refinance loan in the amount of $375,000.00.

21. Escrow was opened on March 29, 2004 with LandAmerica Commonwealth. Plaintiff subsequently informed the $375,000.00 in financing I sought could be obtained through Washington Mutual via a commitment letter dated March 30, 2004.

22. On or about May 7, 2004, Plaintiff was told by Jamie LaRiccia, the refinance escrow officer at LandAmerica Commonwealth, that to obtain the amount of financing I sought from Washington Mutual I would be required to sign and submit additional "loan documents."

23. On May 10, 2004 Plaintiff was instructed to go to LandAmerica Commonwealth to initial or sign loan documents from Washington Mutual to obtain a loan for $375,000.00.

24. The documents which I signed or initialed at LandAmerica Commonwealth which came from Washington Mutual include, but are not limited to, the following:

a)    A Commitment Letter which was unsigned but purported to be from Washington Mutual;

b)    Uniform Residential Loan Application with a two page addendum of disclosures;

c)    Affiliated Business Arrangement Disclosure Statement;

d)    Anti-coercion Disclosure;

e)    Servicing Disclosure Statement;

f)    Forced Place Disclosure Statement;

g)  Notice of Insurance Requirements;

h)  Washington Mutual's Privacy Policy;

i)  Verification of Important Loan Information;

j)  Owner Occupancy Agreement;

k)  Escrow Account Notification and Agreement;

l)  Auto Pay Enrollment Form;

m)  Notice of Right to Cancel;

n)  Instruction on how to compute the Cancellation Period;

o)  Truth In Lending Disclosure Statement;

p)  Borrowers Disbursement Authorization.

25.  As requested by LandAmerica's agent Plaintiff signed and initialed the Washington Mutual loan documents as instructed.

26.  Additionally, while at LandAmerica Commonwealth Plaintiff was also asked to, and did, initial and sign the following:

a)  A document which purported to come from "Commonwealth Land Title Company "titled "BUYERS/BORROWERS CLOSING STATEMENT, Estimated." ;

b)  Amended / Supplemental Escrow Instructions;

c)  Loan Document Sign Up Disclosure;

d)  Signature Certification / Name Affidavit;

e)  Instructions on how I wished to receive my portion of the loan proceeds.

27.  Further, while at LandAmerica Commonwealth's offices Plaintiff also signed or initialed the following documents which purportedly came from Washington Mutual:

a)  Fixed/Adjustable Rate Note with Addendum;

b)  Fixed/Adjustable Rate Rider;

c)  Deed of Trust;

d)  Condominium Rider.

///

///

28.   Before leaving LandAmerica Commonwealth Plaintiff was also given the following documents:

    a)      Truth in Lending Worksheet, (Not A Borrower Document);

    b)      Loan Disbursement Summary;

    c)      Lenders Closing Instructions;

    d)      Estimated Disbursement Statement to Settlement Agent;

29.   The loan Plaintiff obtained from Washington Mutual was defined as an "Adjustable Rate Mortgage", ("ARM") loan. Under the terms of the Washington Mutual Loan Plaintiff's first principal and interest payment in the amount of $1,289.06 was due on July 1, 2004. All subsequent payments were then scheduled to be paid on the first of every month thereafter for the life of the loan.

30.   Additional terms of the note indicated that Plaintiffs principal and interest payment of $1,289.06 would continue for a total of 60 months and then on July 1, 2009, the principal and interest payment would adjust upward and Plaintiff would have a new higher principal and interest payment from that point forward. After July 1, 2009, Plaintiff's adjustable rate mortgage was to undergo annual adjustments to the principal and interest payments with the adjustments to occur every July thereafter.

31.   On or about August of 2008, Plaintiff began to fall behind on his monthly mortgage payments to Washington Mutual due to a financial hardship he had encountered. On or about May 1, 2009, Plaintiff determined he was approximately $12,000.00 in arrears on his mortgage payments.

32.   Given the relatively small amount his mortgage was in arrears Plaintiff approached a longtime business associate, Robert Mackie, and upon explaining his current financial condition Robert volunteered to loan Plaintiff up to $20,000.00 to cure his delinquent mortgage payments and help him through the economic hardship he had suffered.

///

///

///

33. On or about May 20, 2009, Plaintiff received a "Notice of Default" and a "Notice of Trustee Sale" from Defendant California Reconveyance Company. These notices named Defendant California Reconveyance Company as Trustee, Plaintiff as Trustor, and Washington Mutual Bank, FA as Beneficiary, pursuant to a deed of trust recorded 05/17/2004 Book, Page, Instrument 2004-0444813 of the official records of the Office of the Recorder San Diego County.

34. At this time I also received correspondence from Wamu/Chase which stated:"As your mortgage company, we're ready to do whatever we can to help our Chase and WaMu customers through these challenging economic times."

35. The correspondence from Chase instructed Plaintiff to "Call the La Mesa Chase Home Ownership Center" and a loan Advisor will work with you [sic] to explore all options available, including government programs designed to keep you in your home."

36. After receiving the notice of default and trustee sale from California Reconveyance Company along with the correspondence from Wamu/Chase Plaintiff started a workout plan with Wamu/Chase.

37. Plaintiff began to work with Wamu/Chase's "Loan Advisor" and was asked to complete an application, submit a hardship letter, and provide various financial information detailing his current financial position.

38. Upon submitting all the documents as required by Wamu/Chase Plaintiff's "Loan Advisor" informed him that Wamu/Chase would stop the foreclosure process while they qualified Plaintiff for a modified payment plan.

39. Plaintiff specifically instructed the loan advisor that if the Loan Modification did not work he had a business associate willing to loan him sufficient funds to cure the default.

40. In response Plaintiff was informed by the "Loan Advisor" that given the relatively small amount of my arrears, approximately $12,000.00, that obtaining a modified payment plan would be easy.

///

///

41.   Based upon the communications Plaintiff had with the Wamu/Chase "Loan Advisor" Plaintiff contacted his business associate and informed him that he would not need to borrow the funds he had agreed to loan him as Wamu/Chase had agreed to modified the terms of the mortgage and had also halted both the foreclosure proceeding and trustee sale.

42.   On or around June 16, 2009 Plaintiff received a loan modification contract from Wamu/Chase. The contract was very generic in terms in that it did not contain:

a)   Specifics as to the modified loan terms;

b)   An explanation of what amortization schedule Chase used to calculate their proposed modified loan payment;

c)   The correct details on how title to my property was to be recorded;

d)   An explanation of how a 50% increase in his monthly mortgage payment was going to help Plaintiff, as a Chase/WAMU customer through these "tough economic times".

43.   The Modification agreement did however contain an ambiguous explanation of the proposed new payment being $1,853.70 along with the following statement:

"Upon the Agreement becoming binding and effective, the principal and interest amount of your monthly payments will be $1,853.70. Your first payment includes taxes and insurance (if applicable) is due August 1, 2009, the total payment amount is $1,853.70. This payment amount is subject to change upon escrow analysis if applicable.

44.   Further, the loan modification documents Plaintiff received from Wamu/Chase were dated June 11, 2009, and came with instructions for Plaintiff to sign the documents and return them to Defendants Wamu/Chase no later than June 19, 2009, however Plaintiff did not receive the documents from Defendants until June 17, 2009.

45.   This means Defendants gave Plaintiff only 2 days in which to do as Wamu/Chase instructed. Because of the deadline he found himself up against Plaintiff contacted Wamu/Chase to voice his concern.

///

///

- 13 -

46.   At that time Plaintiff also told Wamu/Chase's representative that beside the deadline he was faced with he had additional concerns with the documents Wamu/Chase had sent him. Plaintiff explained to the Wamu/Chase representative that the concerns he had included among other things:

    a)    A request for more specific information about the terms of the proposed loan modification;

    b)    Clarification of how the interest rate in Wamu/Chase's proposed Loan Modification was amortized and how Wamu/Chase calculated the new loan payments they wanted Plaintiff to pay;

    c)    That the new proposed monthly payment terms were unclear as to whether they included taxes and insurance as well as principal and interest;

    d)    How Wamu/Chase determined an increase in the monthly payment of nearly 50 percent could benefit Plaintiff;

47.   Given these and other concerns Plaintiff voiced to Wamu/Chase about the loan modification documents Wamu/Chase agreed to extend the deadline to the end of July.

48.   Due to his increased apprehension Plaintiff asked a business associate of his named Martin Esehaghi to help him through the loan modification process and to act as a third party advocate, whereas Mr. Esehaghi had the knowledge and capability to negotiate on plaintiffs behalf.

49.   On July 15, 2009 I met with Mr. Esehaghi to discuss the status of his loan modification.

50.   At that time Mr. Esehaghi informed Plaintiff that earlier in the day he had spoken to a Wamu/Chase bank representative named Scott who worked in Wamu/Chase's home retention department. Mr. Esehaghi informed Plaintiff that he had been told by Scott that the bank was reviewing the loan modification paperwork he had previously provided Wamu/Chase.

///

51. On July 20, 2009, Plaintiff again spoke to Mr. Esehaghi about the loan modification and was told them he had spoken to Stephanie at Wamu/Chase that day at 4:57 PM and was told by Stephanie that my loan was not in active foreclosure and further informed Plaintiff that Stephanie from Wamu/Chase needed additional financial worksheets from him faxed to Wamu/Chase for further review.

52. Mr. Esehaghi concluded his conversation by assuring Plaintiff that during his July 20, 2009 phone conversation with Stephanie she twice confirmed that Wamu/Chase was not pursuing foreclosure on the Subject Property and Wamu/Chase had no plans to sale the Subject Property at that time. In addition to Mr. Esehaghi, Plaintiff also continued communicating directly with various individual's employed in Wamu/Chase's home retention department who confirmed the same. \

53. On or about July 10, 2009 Plaintiff was told by his "Loan Advisor" at Wamu/Chase, that Wamu/Chase would be sending him a new financial evaluation package. Plaintiff was also told by the Loan Advisor that his loan would be, "kept in the active negotiation phase and therefore Wamu/Chase would not pursue foreclosure until they determine his options."

54. On or about July 22, 2009, Plaintiff was informed by Mr. Michael Alba ( WAMU'S rep at the San Diego office) that: "according to the banks own conversation log, and progress log, Wamu/Chase had sent Plaintiff a request for additional documentation on July 22, 2009."

55. Further, Plaintiff was informed by Wamu/ Chase's home retention department that the timeline set out within the loan modification package he had been sent would be extended to July 30, 2009 because Wamu/Chase had not yet addressed the concerns Plaintiff had raised about the loan modification documents he received.

56. By June 30, 2009, (the deadline to sign and return the loan modification document Wamu/Chase had sent Plaintiff) Wamu/Chase had still not addressed the numerous concerns and questions Plaintiff had with the loan modification package they had sent him so he attempted to contact Wamu/Chase to discuss the matter further.

57.    At that time, Plaintiff discovered that on July 23, 2009, the Subject property was sold at auction via a trustee sale and that the purchaser was none other than Wamu/Chase. This was done by Wamu/Chase even though he was still negotiating a loan modification with the "Loan advisor",

58.    Additionally, Plaintiff had been asked the day before to send Wamu/Chase additional documents and had been informed Wamu/Chase would not resume foreclosure or a trustee sale until such time as my options had been determined.

59.    Plaintiff asserts the he had no written or verbal notification from Wamu/Chase of their intent to go forward with a sale of the Subject Property despite the numerous conversations concerning the loan modification which had taken place just prior to the sales occurrence. and that Defendants Wamu/Chase knew or should have known that Plaintiff, and anyone else similarly situated, would rely upon Wamu/Chase's representations under the circumstances.

60.   Plaintiff asserts that Wamu/Chase also knew that anyone like Plaintiff who relied upon Wamu/Chase's statements did so to their own detriment given the duplicity with which they conducted the loan modification process they had engaged Plaintiff in.

61.   The true facts are that  Wamu/Chase made numerous statements to Plaintiff, and Plaintiffs third party advocate Martin Esehaghi,  assuring each of them that Wamu/Chase did not intend to foreclosure or sell the Subject Property in an effort to conceal Wamu/Chase's true intention which was to mislead Plaintiff so that Wamu/Chase could steal the Subject Property thereby benefiting from the sizable amount of equity the property contained.

62.    Wamu/Chase intent is further demonstrated by the fact Wamu/Chase sold the Subject Property to themselves for $ 393,000.00 when  3 bedroom 2.5 bath properties such as plaintiff's routinely sell for over $500,000.00 in the neighborhood in which the property is situated.

63.    Further, Wamu/Chase was aware that Plaintiff  had the means of curing the relatively small amount he was then in default on the loan, (Approximately $12,000.00) compared to the equity he  had in the home, (Approximately $100,000.00) as Wamu/Chase knew of Plaintiff's ability to obtain a personal loan and cure the default if necessary.

- 16 -

64.     Given Wamu/Chase's actions Plaintiff began researching into the legalities of what Wamu/Chase had done to him and discovered that Defendant Washington Mutual had been taken over by Defendant Chase after essentially going bankrupt making billions of dollars of risky home loans.

65.     Plaintiff further discovered the existence of a major share holder class action suit which had been filed against Washington Mutual in the United States District Court in the Western District of Washington at Seattle under case number No. 2.08-md-1919 MJP / Lead Case No. C08-387 MJP in which it is alleged that Washington Mutual's risky loan practice arose after it illegally inflated the value of numerous homes to allow them to lend excessive amounts of money to homeowners borrowing from them.

66.     Additionally, Plaintiff found numerous news articles which disclosed a number of government agencies who are currently investigating employees and officers of Washington mutual to ascertain the full extent of their unlawful lending practices.

67.     Based upon what Plaintiff learned about Washington Mutual during his independent research he decided to have a forensic review conducted of the Loan Documents he had executed with Washington Mutual in 2004 and was informed that loan documents contained numerous violations of the federal "Truth and Lending Laws, the Federal Real Estate Settlement Procedures Act as well as Inflated Notary Charges in violation of California Law.

68.     The same forensic company additionally told Plaintiff that they were concerned Washington Mutual's appraisal of his home was artificially high.

///

///

///

69.     Plaintiff is informed and believes, and upon such information and belief alleges that Defendants "Loan Modification" program is a nothing more than a ruse designed to rcumvent California State Bill 1137[1], and to lead Plaintiff, and other similarly situated borrowers to early default and foreclosure.

70.     Plaintiff asserts that Defendant, CHASE, had no legal right to initiate foreclosure under the security instrument identified in the Notice of Sale attached as Exhibit 1, nor did it have the right to direct , to foreclose and sell the Subject real property owned by Plaintiff to themselves ,whereas Defendants, CHASE and,  had been put on notice of Plaintiffs claim in his regard and assurances had been made of Defendant CHASE that it would suspend any foreclosure during the loan modification process.

71.     As a result thereof, Plaintiff has been damaged in the loss of his home and costs associated with bringing this action to enjoin Defendants and each of them from unlawfully depriving Plaintiff from ownership of the subject property.

72.     Defendants, and each of them, misrepresented the facts intending to mislead Plaintiff so that Defendants and each of them, could steal the Subject Property thereby benefitting from the sizable amount of equity the property contained.

73.     Plaintiff is informed and believes, and upon such information and belief alleges that Defendants, WAMU, and, CHASE , have engaged in deceptive practices with respect to Plaintiff in violation of the Home Ownership and Equity Protection Act, ("HOEPA"), 15 U.S.C. § 1637, the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601, Regulation Z, 12 C.F.R. 226, and the Federal Trade Commission Act, ("FTC Act") 15 U.S.C. §§ 41-58.

///

///

///

---

1  . Close examination of SB 1137 shows there are some significant loop holes for mortgage companies insofar and they don't have to comply with SB 1137 if they are offering modifications to home owners that meet certain criteria. All that a lender needs to do is offer a deferment of some of the principal due until the end of the loan and a minimal interest rate decrease to qualify under the new law. The lender does not necessarily have to modify any loan, only offer. Once such a modification is offered, the lender can apply for a certificate of exemption, and continue to foreclose regardless of this law.

74.     In addition to the foregoing, Plaintiff discovered multiple violations of the Truth In Lending Act (TILA), and the Real Estate Settlement Procedures Act, (RESPA), which include but are not limited to:

a.)     Undisclosed Settlement Charges;

b.)     Unjust Enrichment;

c.)     Miscalculated Annual Percentage Rate;

e.)     Inflated Notary Charges;

f.)     Conflicts between Disclosures and Official Documents;

g.)     Estimated Settlement Statement Not Properly Completed;

h.)     Inflated Appraisal;

g.)     Failure to Apply Application Fee;

h.)     Various Miscalculations;

i.)     Failure to provide Consumer Handbook on Adjustable Rate Mortgages "CHARM" Booklet;

j.)     No Good Faith Estimate;

k.)     Failure to comply with underwriting standards

## FIRST CLAIM FOR RELIEF

### Violations of 15 U.S.C. 1601, Truth in Lending Act

75.     Plaintiff realleges and incorporates ¶ ¶ 1-74, as fully set forth above. This claim is against Defendants, WAMU, and, CHASE .

76.     Because the transaction was secured by Plaintiffs home, and was not entered into for the purposes of the initial acquisition or construction of that home, it is subject to the right to cancel provided by TILA, 15 U.S.C. § 1601, and implementing Federal Reserve Board Regulation Z, 12 C.F.R § 226.23, which provides: (f) of this section. [fn]47.

(2)     To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditors' designated place of business.

- 19 -

(3)     The consumer my exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of alL material disclosures , [fn] 48, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. § 1635(f)].

(4)     When more than one consumer in a transaction has the right to rescind the exercise  of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind

In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1)     The retention or acquisition of a security interest in the consumers' principal dwelling.

(2)     The consumers right to rescind the transaction;

(3)     How to exercise the right to rescind, with a form for that purpose, designating the address of the creditors place of business;

(4)     The effects of rescission, as described in paragraph (d) of this section;

(5)     The date the rescission period expires;

(f) <u>Exempt transactions</u>.

        The right to rescind does not apply to the following:

        (1)    A residential mortgage transaction [defined in U.S.C. 15 §1602(w) as one where a "security interest is created or retained against the consumers dwelling to finance the acquisition or initial construction of such dwelling].

        (2)    A credit plan in which a state agency is a creditor.

77.    Because Defendant WAMU failed to comply with Section 226.23, Plaintiff's has a continuing right to rescind.

78.    Plaintiff's has given notice of his election to rescind.

**ADDITIONAL RELIEF:**

In any transaction in which it is determined that the creditor has violated this section, in addition to rescission, the Court may award relief under section 1640 of this title for violations this sub-chapter not relating to the right to rescind. WHEREFORE, Plaintiff's requests that the Court enter judgment in favor of Plaintiff's and against Washington Mutual Bank for:

a.    Rescission of the 2004 WASHINGTON MUTUAL BANK, mortgage loan;

b.    Statutory damages for the disclosure violations;

c.    Attorneys fees, litigation expenses and costs.

d.    Such other relief as the Court may deem just and proper.

**<u>SECOND CLAIM FOR RELIEF</u>**

**(Unfair Debt Collection Practices)**

79.    Plaintiff realleges and incorporates ¶ ¶ 1-80, as fully set forth above. This claim is against Defendants, and, CHASE , and,  80. Plaintiff is informed and believes, and upon such formation and belief alleges that the Defendants, and each of them, in taking the actions aforementioned, have violated provisions of the Federal Fair Debt Collections Act, 15 U.S.C. Title 41, Subchapter V, §§ 1692 et seq., and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.§§ 2601-2617.

1       WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as

2   hereinafter set forth.

### THIRD CLAIM FOR RELIEF

### (Violations of 12 U.S.C. 2601 et seq. Real Estate Settlement Procedures Act.)

5       81.  Plaintiff's incorporates ¶¶ 1-80, as fully set forth above. This claim is against

6   defendants, WAMU.

7       82.  By engaging in the practices set forth above, Defendant WAMU gave to,

8   and/or accepted a fee, kickback, or thing of value pursuant to an agreement or understanding

9   that business incident to or a part of a real estate settlement service involving federally related

10  mortgage loans would be referred to a person in violation of the Real Estate Settlement

11  procedures Act of 1974, 12 U.S.C. § 2607(a).

12      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them,

13  as hereinafter set forth.

### FOURTH CLAIM FOR RELIEF

### (Set Aside and Vacate Trustee's Sale

### Cancellation of Deed of Trust California Civil Code § 3412)

17      83.  Plaintiff's incorporates ¶¶ 1-82, as fully set forth above. This claim is against

18  Defendants, CHASE , and,

19      84. Plaintiff is informed and believes, and upon such information and belief alleges

20  that Defendants, CHASE, and, conducted the trustee's sale in violation of *California Civil*

21  *Code* § 2924 et seq. As a direct and proximate result, Plaintiff has been wrongfully deprived

22  of title to the Subject Property and of its beneficial use and enjoyment.

23      85.  Defendant, BANK claims and interest in the Subject Property based upon the

24  Trustee's Deed Upon Sale.

25      86.  The claim of Defendant, to the Subject Property is without any right or merit.

26  Although the Trustee's Deed Upon Sale appears valid on its face, it is invalid and of no force

27  and effect, for the reasons set forth hereinabove.

28

87.     As a direct and proximate result of the improperly, tortiously, unfair, unlawful Trustee's sale of the Subject Property, by Defendant, CHASE, and the subsequent execution and recording of the Trustee's Deed Upon Sale, Plaintiff has been deprived of title to, as well as the use and enjoyment of the Subject Property, all to Plaintiffs injury. If the Trustee's Deed Upon Sale is not delivered and canceled, serious irreparable injury will continue to result to Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment)

88.     Plaintiff's incorporates ¶¶ 1-87, as fully set forth above. This claim is against Defendants, WAMU, and, CHASE.

89.     As a direct and proximate result of the conduct described above, specifically marketing sub-prime loans via inflated property appraisal(s), charging Plaintiff and countless other borrowers inflated notary and various other non-disclosed fees, and through the unlawful foreclosure of Plaintiffs property, as well as the hundreds of thousands of similarly situated homeowners, Defendants and each of them have unjustly enriched themselves in an amount to be proven at the time of trial.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

## SIXTH CLAIM FOR RELIEF

### (Promissory Estoppel)

90.     Plaintiff's incorporates ¶¶ 1-89, as fully set forth above. This claim is against Defendant, CHASE.

///
///

///

- 23 -

91.     On or about July 23, 2009, Defendant promised, assured and represented to Plaintiff that the foreclosure sale of his property had been suspended due to Plaintiffs participation in defendants "Loan Modification" Program. Defendant's, and each of them promised, assured and represented to Plaintiff that the sale of the Subject Property would continue to be suspended pending approval of his "Loan Modification".

92.     In doing so, Defendant knew, or should have known that Plaintiff would be reasonably induced to rely on Defendants promise, assurance and representation to suspend the foreclosure of his home by participating in Defendants "Loan Modification" Program and not seek alternative financial and/or legal remedies to rescue the property.

93.   Plaintiff reasonably relied on Defendants promise, assurance and representation by entering into Defendants "Loan Modification" Program instead of seeking alternative financial and/or legal remedies to rescue the property.

94.     As a direct and proximate result of Defendants failure to perform according to its promise, assurance and representation made to Plaintiff, Plaintiff has been deprived of title to, as well as the quiet use and enjoyment of the Subject Property, but for Defendants failure to uphold its promise, assurance and representation and proceed with foreclosure all to Plaintiffs injury.

95.     Injustice can be avoided by enforcing Defendants' promise, assurance and representation  completely.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

## SEVENTH CLAIM FOR RELIEF

### (Demand for Accounting)

96.     Plaintiff's incorporates ¶¶ 1-95, as fully set forth above. This claim is against ALL DEFENDANTS.

97.     Plaintiff asserts that as a result of the aforementioned conduct of Defendants, and each of them, these Defendants have received proceeds from the unlawful sale of the Subject property, a portion of which is due to Plaintiff from Defendants, as previously alleged.

98.     The amount of money due from Defendants, and each of them, to Plaintiff is unknown to Plaintiff at this time and cannot be ascertained without an accounting of the proceeds after he sale of the Subject property. Plaintiff is informed and believes and thereon alleges that the amount due to Plaintiff exceeds the minimum jurisdiction of this Court.

99,     Further, Plaintiff has demanded an accounting of the amortization schedule and calculated interest for the aforementioned loan modification from Defendant, CHASE, but defendant has failed and refused, and continues to fail and refuse, to render such an accounting.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Implied Warranties, Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.)

100.     Plaintiff's incorporates ¶¶ 1-99, as fully set forth above. This claim is against Defendants, WAMU, and, CHASE.

101.     This cause of action is brought on behalf of Plaintiff and on behalf of each of the similarly situated homeowners throughout the state of California pursuant to the Consumers legal Remedies Act, *California Civil Code* §§ 1750, et seq. (the "CLRA").

102.     The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in services provided to consumers.

103.     Plaintiff, and similarly situated homeowners purchased loans and other services from Defendants, and each of them, for personal, family, and household use and are thus, "consumers" within the meaning of Cal. Civ. Code § 1761(a).

///

///

///

104.    In doing the acts alleged above, Defendants, and each of them, have violated the CLRA, which, among other things provides:

   a)  the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or <u>services</u> to any consumer are unlawful:

   i)  Representing that the services have characteristics or benefits which they do not have;

   ii) Advertising services with the intent not to provide them as advertised.

105.    In doing the acts alleged above, Defendants have carried out a scheme designed to deliberately cheat large numbers of consumers out of their homes, and individually, through small to moderate sums of money.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

### NINTH CLAIM FOR RELIEF

**(Disgorgement, under Cal. Bus. Prof. Code § 17200 et seq.)**

106.    Plaintiff's incorporates ¶¶ 1-106, as fully set forth above. This claim is against Defendants, WAMU, and, CHASE.

107.    Plaintiff is informed and believes, and upon such information and belief alleges that Defendants, WAMU, and, CHASE have a pattern and practice of defrauding borrowers through the personal misuse of their real property assets.

108..   Defendants, WAMU, and, CHASE have absconded with ill gotten gains, defrauding not only Plaintiff but similarly situated homeowners, by perfecting foreclosure on residential properties without any legal authority whatsoever to do so. As a proximate result of the acts of Defendants, Plaintiff as well as hundreds of thousands of other California homeowners are either facing foreclosure or have already lost their homes.

109.    Plaintiff has suffered injury in fact as a direct and proximate result of the acts of Defendants and each of them.

110   Defendants practices as alleged herein are unfair, unlawful, immoral, unethical, and in violation of the law.

111.   Plaintiff prays for the full disgorgement of monies and profits and the value of converted assets according to proof, which exceeds the minimum jurisdiction of this Court, against Defendants, WAMU, and, CHASE .

112.   Plaintiff further prays for an injunctive order enjoining and restraining Defendants, and each of them from engaging in or performing any act to deprive Plaintiff of ownership or possession of their real property, including but not limited to, prosecuting or maintaining foreclosure or sale proceedings on Plaintiffs real property, from recording any deeds or mortgages regarding the property, or from otherwise taking any steps whatsoever to deprive Plaintiff of ownership in the Subject property.

## TENTH CLAIM FOR RELIEF

### (Fraud -Violation of Unfair Practices Act)

115.   Plaintiff's incorporates ¶¶ 1-113, as fully set forth above. This claim is against Defendants, WAMU.

116.   Defendant WAMU, engaged in unfair and deceptive act in violation of the California Unfair Practices Act, *California Business & Professions Code* § 1700 et seq. as it is an unfair practice to advertise, misrepresent to consumers and encourage loan modifications which are designed to lead borrowers to certain foreclosure/.

117.   *California Business and Professions Code* § 17200 states as follows; As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

118.   Defendant engaged in such unfair and fraudulent acts and practiced in course of trade and commerce in financial services.

119.   Defendant intended that Plaintiff's rely on the undisclosed facts by entering into Defendants loan Modification Program.

- 27 -

120.   Plaintiff did so rely, and was damaged in the loss of his home.

121.   The conduct of Defendant was deliberately oppressive, corrupt and dishonest. WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## ELEVENTH CLAIM FOR RELIEF

### (Fraud -Violation of Unfair Practices Act)

122.   Plaintiff's incorporates ¶¶ 1-121, as fully set forth above. This claim is against defendants, CHASE.

123.   Defendant CHASE, engaged in unfair and deceptive act in violation of the California Unfair Practices Act, as it is an unfair practice to misrepresent to Plaintiff, and other similarly situated consumers, in detrimental reliance to enter into its "Loan Modification" program, and to thereafter misrepresent to consumers including Plaintiff, that the foreclosure of their home(s) had been stayed when the true facts are that they were proceeding with foreclosure nonetheless.

124.   Plaintiff further alleges that the intentional concealment of facts, made by the Defendant, was done with the intent of inducing Plaintiff to not seek alternative financial and/or legal remedies, and to lead him into certain foreclosure.

125.   At the time the intentional misrepresentations and concealment of facts took place, and at the time Plaintiff took the actions herein described, Plaintiff was ignorant of Defendants', secret intention to foreclose on his property.

126.   Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendants' secret intentions based upon the promises and representations made by Defendants'. If Plaintiff had known of the actual intentions of Defendant, Plaintiff would not have taken such action.

127.   At all times herein mentioned, and by engaging in the conduct described above, Defendants, and each of them, acted with oppression, fraud and malice, entitling Plaintiff to on award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## TWELFTH CLAIM FOR RELIEF

### (Negligence, as to all Defendants)

128.   Plaintiff's incorporates ¶¶ 1-127, as fully set forth above. This claim is against Defendants, WAMU, CHASE.

129.   Defendants, WAMU, and CHASE owed a duty of care to Plaintiff as Mortgage lenders  and holders of Plaintiffs note and Deed of Trust.

130.   Plaintiff alleges that, WAMU and CHASE were negligent and breached their duty of care and these Defendants breach is the direct and proximate cause of Plaintiff damages.

131.   But for the negligence of Defendant WAMU and CHASE Plaintiff has suffered and will continue to suffer damages, including but not limited to, mitigation expenses and fees and cost associated with bringing the instant action to protect his property from unlawful foreclosure.

132.   Additionally,  these damages were foreseeable by WAMU and CHASE as they represented to Plaintiff that they would not seek to foreclose and sell Plaintiffs property while negotiating a "Loan Modification."

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## THIRTEENTH CLAIM FOR RELIEF

### (Declaratory Relief)

133.   Plaintiff's incorporates ¶¶ 1-132, as fully set forth above. This claim is against Defendants, WAMU, and, CHASE.

134.   An actual controversy has arisen and currently exists between Plaintiff and Defendants, and each of them, concerning the respective rights, obligations and duties of each party herein, whereas, Plaintiff's contends that Defendants herein "blindsided" him by foreclosing on his home when they expressly told him they would not do so while he was negotiating a "Loan Modification".

///

135.   Plaintiff desires a judicial determination of Defendants rights, obligations and duties, and a declaration as to whether the foreclosure is valid and enforceable.

136.   A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights, obligations and duties.

137.   Plaintiff is under financial burden and emotional strain which he is suffering due to this unsettled state of affairs.

138.   If Defendants are allowed to deprive Plaintiff from ownership of his home when they are not entitled to do so, Plaintiff will be irreparably damaged in the loss of his property and investment in the same.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## Application for Temporary Restraining Order and

## Osc Re: Preliminary Injunction

139.   Plaintiff's incorporates ¶¶ 1-138, as fully set forth above.

140   Plaintiff applies for a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction enjoining Defendants and their agents, employees, representatives, successors partners, assigns and those acting in concert or in participation with them,  their agents, employees, officers, representatives, successors, partners, assigns, and those acting in concert or participation with them, from spending, transferring, disbursing, encumbering,  or otherwise dissipating any real or personal property without prior Court approval, including but not limited to any money or other consideration that Defendants have received from Plaintiff for any loan, refinance transaction or appraisals made with Defendants and each of them, and any money or other consideration Defendants have received from Plaintiff as a result of their "Loan Modification Scheme" including but not limited to money or other considerations obtained from borrowers, lenders, or other entities for the transaction.

This application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction is made on the grounds that:

///

- 30 -

1          a.      Defendants have violated, and continue to violate,  the Truth in Lending

2                   Act, 15 U.S.C. § 1601;

3          b.      Defendants have violated, and continue to violate *California Business*

4                   *& Professions Code* § 17200, (prohibiting unfair business practices),

5                   and 17500, (prohibiting false or misleading statements).

6          c.      Defendants have violated, and continue to violate the Fair Debt

7                   Collection Practices Act, 15 U.S.C. 1692, et seq.

8          d.      Defendants have violated, and continue to violate the Real Estate

9                   Settlement Procedures Act (RESPA), 12 U.S.C.§§ 2601-2617.

10         e.      Defendants have violated, and continue to violate the Home Ownership

11                 and Equity Protection Act, ("HOEPA"), 15 U.S.C. § 1637;

12         f.      Defendants have violated, and continue to violate the Federal Trade

13                 Commission Act, ("FTC Act") 15 U.S.C. §§ 41-58

14      The relief that the Plaintiff is requesting is necessary to protect himself from being

15 irreparably harmed by Defendants', and each of their misconduct.

16 ///

17 ///

18

19

20

21

22

23

24

25

26

27

28 ///

WHEREFORE, Plaintiff's pray judgment against Defendants, and each of them as follows:

1. For rescission of Plaintiff's May 2004 WAMU loan;

2. For general damages, according to proof at the time of trial for Defendants, and each of their, general negligence and misconduct;

3, For the full disgorgement of monies and profits and the value of converted assets according to proof, which exceeds the minimum jurisdiction of this Court;

4. For an injunctive order enjoining and restraining Defendants, and each of them from engaging in or performing any act to deprive Plaintiff's of ownership or possession of his real property, including but not limited to, prosecuting or maintaining Unlawful Detainer proceedings on Plaintiff's real property, from recording any deeds or mortgages regarding the property, or from otherwise taking any steps whatsoever to deprive Plaintiff's or ownership in the property.

5. For a judicial determination of the rights and duties of each party herein;

6. For Court fees and cost associated with bringing this action, including but not limited to attorneys fees and cost, if necessary.

7. For any and all further relief as the Court may deem just and proper.


Dated: 12/17/09 .                  By: _____
                                        SEPEHR TORABI
                                        Plaintiff, In Pro Se


## VERIFICATION

I, SEPEHR TORABI Plaintiff in the above entitled action, hereby declare that I have read the foregoing Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true. I hereby declare, under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.


Dated: 12/17/09                    By: _____
                                        SEPEHR TORABI

- 32 -

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Sepehr Torabi, In Pro Se.

**DEFENDANTS**
WASHINGTON MUTUAL BANK, CHASE BANK, NA, CITIBANK, NA AS TRUSTEE FOR WAMU 2004-AR9, WAMU 2004-AR9 DOES 1 to 25,

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Sepehr Torabi, In Pro Se;  3253 CAMINITO EASTBLUFF # 26 LA JOLLA CA 92037
PHONE # 858-518-1515

Attorneys (If Known)

**'09 CV 2838 JAH    BLM**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. 1601; 15 U.S.C. 1692
Brief description of cause:
TRUTH IN LENDING, FAIR DEBT COLLECTIONS, CONSUMER FRAUD

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE   DOCKET NUMBER

DATE 12/14/2009   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # 8425   AMOUNT 350.00   APPLYING IFP   JUDGE   MAG. JUDGE
MS 12/17/09

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS008425
Cashier ID: msweaney
Transaction Date: 12/17/2009
Payer Name: SEPEHR N TORABI
----------------------------------
CIVIL FILING FEE
 For: TORABI V WASHINGTON MUTUAL BAN
 Case/Party: D-CAS-3-09-CV-002838-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 5078
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```