1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10   SEPEHR TORABI,                    )   Civil No. 3:09-cv-2838-JAH  (BLM)
                                       )
11              Plaintiff,             )   **ORDER GRANTING IN PART**
     v.                                )   **AND DENYING IN PART**
12                                     )   **DEFENDANT CHASE BANK'S**
     WASHINGTON MUTUAL BANK;           )   **MOTION TO DISMISS AND**
13   CHASE BANK, NA; CITIBANK NA as    )   **GRANTING IN PART AND**
     trustee for WAMU 2004-AR9, WAMU   )   **DENYING IN PART PLAINTIFF'S**
14   2004-AR9; and DOES 1 to 25;       )   **REQUEST FOR LEAVE TO AMEND**
                                       )
15              Defendants.            )
                                       )
16   ─────────────────────────────────

17                              **INTRODUCTION**

18          On December 17, 2009, plaintiff Sepehr Torabi ("Plaintiff") filed a complaint

19   against defendants Washington Mutual Bank ("Washington Mutual"); JPMorgan Chase

20   Bank, N.A. (erroneously sued as Chase Bank, N.A. and hereinafter referred to as "Chase

21   Bank"); Citibank, N.A. as trustee for WAMU 2004-AR9; and WAMU 2004-AR9.  (Dkt.

22   No. 1.)  Plaintiff alleges the following causes of action: (1) violations of the Truth in

23   Lending Act, (2) violations of the Federal Fair Debt Collection Practices Act, (3) violations

24   of the Real Estate Settlement Procedures Act, (4) to set aside and vacate a trustee sale, (5)

25   unjust enrichment, (6) promissory estoppel, (7) an accounting, (8) breach of implied

26   warranties in violation of the California Consumers Legal Remedies Act, (9) disgorgement

27   pursuant to the California Unfair Competition Law, (10) fraud in violation of the

28   California Unfair Competition Law, (11) an additional claim of fraud in violation of the

California Unfair Competition Law, (12) negligence, and (13) declaratory relief.  (Dkt. No. 1.)

Chase Bank filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 1, 2010, along with requests for judicial notice.  (Dkt. No. 3.)  Plaintiff filed an opposition to Chase Bank's Motion on December 9, 2010, including requests for judicial notice, and seeking leave to amend in the alternative.  (Dkt. No. 15.)  Chase Bank filed a reply on December 20, 2010 (Dkt. No. 16).

After a careful review of the parties' submissions, and for the following reasons, this Court **GRANTS** in part and **DENIES** in part Defendant's Motion, **GRANTS** Chase Bank's requests for judicial notice,  **DENIES** Plaintiff's requests for judicial notice, and **GRANTS** in part Plaintiff's request for leave to amend.

<u>FACTUAL ALLEGATIONS</u>

In May 2003, Plaintiff obtained financing to purchase a condominium in San Diego, California.  (Dkt. No. ¶¶ 8, 18-19.)  In March 2004, Plaintiff began the process to refinance his condominium, and, on March 30, 2004, Plaintiff learned via a commitment letter that Washington Mutual would fund Plaintiff's refinance loan.  (<u>Id.</u> ¶ 21.)

"The loan Plaintiff obtained from Washington Mutual was defined as an 'Adjustable Rate Mortgage' loan," for which the first monthly payment of $1,289.06 would be due on July 1, 2004.  (<u>Id.</u> ¶ 29.)  Under the loan terms, Plaintiff's monthly payment would remain the same for a total of sixty months, after which Plaintiff's principal and interest payment would adjust upward for a higher principal and interest payment.  (<u>Id.</u> ¶ 30.)  Thereafter, Plaintiff's principal and interest payment would re-adjust annually for the life of the loan.  (<u>Id.</u>)

///

///

///

///

09cv2838

1    Plaintiff alleges that, at some time following his refinance, Washington Mutual was

2    placed in receivership and that, as a result of Washington Mutual being placed in

3    receivership, Chase Bank was able to acquire certain Washington Mutual assets, including

4    Plaintiff's refinance loan.[1]  (Dkt. No. 1 at 2.)

5    In or about August 2008, Plaintiff began to fall behind on his monthly loan

6    payments, and by May 1, 2009, Plaintiff was $12,000.00 in arrears.  (Id. ¶ 31.)  Plaintiff

7    alleges he explained his economic hardship to a business associate and that the business

8    associate volunteered to loan Plaintiff up to $20,000.00 to cure his delinquency.  (Id. ¶

9    32.)

10    In or about May 2009, Plaintiff received a "Notice of Default" and a "Notice of

11    Trustee Sale," which named a reconveyance company as trustee, Plaintiff as trustor, and

12    Washington Mutual as beneficiary.  (Id. ¶ 33.)  Around the same time, Plaintiff also

13    received correspondence from Chase Bank/Washington Mutual stating: "As your mortgage

14    company, we're ready to do whatever we can to help our Chase and WaMu customers

15    through these challenging economic times," coupled with an instruction to call the La

16    Mesa Chase Home Ownership Center where a loan advisor would work with Plaintiff to

17    explore all options available, including government programs designed to keep Plaintiff in

18    his home.  (Id. ¶ 34.)

19    Thereafter, Plaintiff alleges he began working with a Chase Bank/Washington

20    Mutual loan advisor.  (Id. ¶ 37.)  The loan advisor asked Plaintiff to complete an

21    application, to submit a hardship letter, and to provide information detailing his financial

22    position.  (Id.)  After Plaintiff submitted those items, the loan advisor informed Plaintiff

23    that Chase Bank/Washington Mutual "would stop the foreclosure process while they

24    qualified Plaintiff for a modified payment plan."  (Id. ¶ 38.)  Plaintiff specifically informed

25    the loan advisor that, if the loan modification process did not work, he had a business

---

[1] Following Plaintiff's allegation that Chase Bank acquired Washington Mutual's assets, Plaintiff makes no distinction between the two entities.  As such, the Court will set forth Plaintiff's factual allegations as alleged by Plaintiff.  The distinction between these two entities, however, is important as will be discussed below.

associate willing to loan him sufficient funds to cure the default.  (Id. ¶ 39.)  Plaintiff alleges the loan advisor responded by stating that, given the relatively small amount of Plaintiff's delinquency ($12,000.00), obtaining a modified payment plan "would be easy." (Id. ¶ 40.)  Based on the loan advisor's response, Plaintiff advised his business associate "he would not need to borrow the funds [the business associate] had agreed to loan [Plaintiff] as [Chase Bank/Washington Mutual] had agreed to modified [sic] the terms of the mortgage and had also halted both the foreclosure proceeding and trustee sale." (Id. ¶ 41.)

On or about June 16, 2009, Plaintiff received a loan modification contract from Chase Bank/Washington Mutual, indicating Plaintiff's new monthly payment would be $1,853.70 – "a 50% increase" from Plaintiff's prior monthly payment of $1,289.06.  (Id. ¶¶ 42-43.)  Plaintiff, however, alleges the contract was generic in that it did not contain: (1) specifics as to the modified loan terms, (2) an amortization schedule, (3) details regarding how title to the property would be recorded, or (4) an explanation of how the increased monthly payment "was going to help Plaintiff . . . through these 'tough economic times.'"  (Id. ¶ 42.)  Moreover, Plaintiff alleges he received the modification contract on June 17, 2009, and was instructed to sign and return it no later than June 19, 2009.  (Id. ¶ 44.)  Plaintiff communicated his concerns regarding the modification contract's lack of specificity and the two-day deadline to Chase Bank/Washington Mutual representatives.  (Id. ¶¶ 44-45.)  In response, Chase Bank/Washington Mutual agreed to extend Plaintiff's deadline "to the end of July."  (Id. ¶ 47.)

On July 10, 2009, the loan advisor working with Plaintiff informed Plaintiff that Chase Bank/Washington Mutual would be sending Plaintiff a new financial evaluation package and that Plaintiff's loan would be "kept in the active negotiation phase and therefore [Chase Bank/Washington Mutual] would not pursue foreclosure until they determine [Plaintiff's] options."  (Id. ¶ 53.)

Thereafter, Plaintiff alleges he engaged the help of another business associate to help him through the loan modification process and to act as a third-party advocate.  (Id.

¶ 48.)  Plaintiff alleges that this business associate spoke with a Chase Bank/Washington Mutual representative on July 15, 2009, who informed the business associate that Chase Bank/Washington Mutual was reviewing the loan modification paperwork that Plaintiff had previously submitted.  (Id. ¶¶ 49-50.)  The business associate then spoke with various Chase Bank/Washington Mutual representatives on July 20, 2009, who confirmed Chase Bank/Washington Mutual was not pursuing foreclosure on Plaintiff's property and that Chase Bank/Washington Mutual had no plans to sale Plaintiff's property at that time. (Id. ¶ 52.)

On July 22, 2009, a Chase Bank/Washington Mutual representative informed Plaintiff that, "according to the banks [sic] own conversation log, and progress log, [Chase Bank/Washington Mutual] had sent Plaintiff a request for additional documentation on July 22, 2009."  (Id. ¶ 54.)  Chase Bank/Washington Mutual's "home retention department" further informed Plaintiff that the deadline to return the loan modification documents would be extended to July 30, 2009, because Chase Bank/Washington Mutual had not yet addressed Plaintiff's concerns regarding the documents.  (Id. ¶ 56.)

By July 30, 2009, Chase Bank/Washington Mutual still had not addressed Plaintiff's concerns, so Plaintiff contacted Chase Bank/Washington Mutual to discuss the matter further.  (Id. ¶ 56.)  At that time, Plaintiff learned that, on July 23, 2009, his property had been sold at a trustee sale and that Chase Bank/Washington Mutual was the purchaser.  (Id. ¶ 57.)

Following sale of his property, Plaintiff obtained a forensic review of the loan documents he executed in connection with his 2004 refinance loan, whereby he learned the loan documents "contained numerous violations of the federal 'Truth in Lending Laws, the Federal Real Estate Settlement Procedures Act as well as Inflated Notary Charges in violation of California Law." [Id. ¶ 67 (typographical errors in original).]  "The same forensic company additionally told Plaintiff that they were concerned Washington Mutual's appraisal of his home was artificially high."  (Id. ¶ 68.)

Indeed, Plaintiff alleges he has discovered multiple violations of the Truth in

09cv2838

Lending Act, the Real Estate Settlement Procedures Act, including: (1) undisclosed settlement charges, (2) unjust enrichment, (3) a miscalculated annual percentage rate, (4) inflated notary charges, (5) conflicts between disclosures and official documents, (6) an improperly completed estimated settlement statement, (7) an inflated appraisal, (8) failure to apply an application fee, (9) various miscalculations, (10) failure to provide Plaintiff with a Consumer Handbook on Adjustable Rate Mortgages ("CHARM") Booklet, (11) no good faith estimate, and (12) failure to comply with underwriting standards.  (Id. ¶ 74.)

Plaintiff claims Washington Mutual defrauded him at the time he acquired his refinance loan by offering him a loan that put him "on a track to foreclosure from day one." (Id. ¶ 13.)  Plaintiff claims Washington Mutual perpetrated this "mortgage fraud" by "issuing fraudulent property appraisals" and by "routinely violat[ing] RESPA, TILA, together with inflating Notary [sic] costs by 900%." (Id.)  As to notary costs, Plaintiff alleges Washington Mutual "charged Plaintiff 100.00 for his signature" in violation of California Government Code section 8211. (Id. ¶¶ 13-14.)  Plaintiff alleges that "through their continuing fraud and failure to reverse these charges, and continuing to amortize these illegal costs into each loan payment, [Chase Bank/Washington Mutual] tolled the statute of limitations." (Id. ¶ 15.)

Plaintiff alleges Chase Bank/Washington Mutual further defrauded Plaintiff by claiming to send Plaintiff a revised mortgage modification package, then selling Plaintiff's home to themselves (i.e., Chase Bank/Washington Mutual) at a trustee sale one day later. (Id. ¶ 11.)  Plaintiff alleges that Chase Bank/Washington Mutual's loan modification program was a "ruse designed to [ci]rcumvent California [law] . . . and to lead Plaintiff . . . to early default and foreclosure."   Plaintiff alleges Chase Bank/Washington Mutual intended to mislead Plaintiff so that Chase Bank/Washington Mutual could "steal" his property, as evidenced by the fact that  Chase Bank/Washington Mutual paid $393,000.00 for the property when it was worth an estimated $500,000.00 and by the fact that Chase Bank/Washington Mutual knew Plaintiff's property carried approximately $100,000.00 in equity. (Id. ¶¶ 61-63.)

1    Plaintiff claims that, as a result of Chase Bank/Washington Mutual's conduct,

2    Plaintiff has been damaged in the loss of his home and costs associated with bringing this

3    action.  (Id. ¶ 71.)

4                    **REQUESTS FOR JUDICIAL NOTICE**

5        The Court will discuss the parties' requests for judicial notice before considering

6    Chase Bank's Motion to Dismiss to define the scope of information the Court will

7    consider in deciding Chase Bank's Motion.

8        Generally, "a district court may not consider any material beyond the pleadings in

9    ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th

10   Cir. 2001) (citation omitted).  "When matters outside the pleadings are presented to and

11   not excluded by the court, the motion shall be treated as one for summary judgment and

12   disposed of as provided in Rule 56. . . ." Id. (citation omitted).  A court, however, may

13   look to facts proper for judicial notice without converting a Rule 12(b)(6) motion to one

14   for summary judgment even though those facts are beyond the complaint.  See Mack v.

15   S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986), abrogated in part on other

16   grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).

17       Federal Rule of Evidence 201 allows a court to take judicial notice of an

18   adjudicative fact "not subject to reasonable dispute in that it is . . . capable of accurate and

19   ready determination by resort to sources whose accuracy cannot be reasonably

20   questioned."  "Adjudicative facts are those to which the law is applied in the process of

21   adjudication.  They are the facts that normally go to the jury in a jury case." Grason Elec.

22   Co. v. Sacramento Mun. Util. Dist., 571 F. Supp. 1504, 1521 (E.D. Cal. 1983) (citation

23   omitted).

24   **I.    Chase Bank's Request for Judicial Notice**

25       In connection with its Motion to Dismiss, Chase Bank filed a Request for Judicial

26   Notice, asking the Court to notice facts contained in two documents that Chase Bank

27   asserts are facts capable of accurate and ready determination by resort to sources whose

28   accuracy cannot reasonably be questioned.  (Dkt. No. 3-2 at 2.)  The first document is an

order issued by the Office of Thrift Supervision appointing the Federal Deposit Insurance Corporation ("FDIC") as receiver of Washington Mutual Bank, dated September 25, 2008 ("OTS Order").  (Id.)  The second document is a "Purchase and Assumption Agreement . . . among Federal Deposit Insurance Corporation, Receiver of Washington Mutual Bank, . . . Federal Deposit Insurance Corporation and JPMorgan Chase Bank, National Association, Dated as of September 25, 2008" ("Purchase and Assumption Agreement"). (Id.)

As set forth in its motion, Chase Bank requests that the Court take notice of the fact that the Office of Thrift Supervision placed Washington Mutual into receivership on September 25, 2008, appointing the FDIC as receiver, as provided in the OTS Order. (Dkt. No. 3-1 at 2.)  Chase Bank further requests that the Court take notice of the fact that, when Chase Bank acquired certain Washington Mutual assets and liabilities from the FDIC (acting as receiver of Washington Mutual) on September 25, 2008, Chase Bank did not assume Washington Mutual's potential liabilities associated with borrowers' claims, as provided in the Purchase and Assumption Agreement.[2]  (Dkt. No. 3-1 at 3-4.)

Plaintiff makes no objection to Defendant's request that this Court notice those two facts.

Both facts are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.  The first fact – that Washington

---

[2] The Purchase and Assumption Agreement provides:

**2.5   Borrower Claims**.  Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank [i.e., Washington Mutual] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank [i.e., Chase Bank].

(Dkt. No. 3-2 at 21.)

09cv2838

1   Mutual was placed into receivership – is set forth in the OTS Order, which was issued by

2   the Office of Thrift Supervision, now the Office of the Comptroller of the Currency, an

3   office within the Department of Treasury.  The OTS Order is available at 2008 WL

4   4559947 (Sept. 25, 2008).  The second fact – that Chase Bank did not acquire certain

5   Washington Mutual liabilities – is set forth in the Purchase and Assumption Agreement,

6   which was entered into by the FDIC, acting as receiver of Washington Mutual, and Chase

7   Bank.  It is available on the FDIC government website.[3]  Moreover, this fact is also set

8   forth in a First Circuit decision (Yeomalakis v. Fed. Deposit Ins. Corp., 562 F.3d 56, 60

9   (1st Cir. 2009) as discussed below.  Accordingly, Chase Bank's requests for judicial notice

10  are **GRANTED**.

11  **II.    Plaintiff's Request for Judicial Notice**

12       In support of his opposition to Chase Bank's Motion to Dismiss, Plaintiff requests

13  that this Court take judicial notice of facts in various news articles related to Chase Bank

14  and foreclosures.  (Dkt. No. 15 at 5.)  Specifically, Plaintiff asks the Court to notice the

15  fact contained in a December 2010 Washington Post article that a Chase Bank employee

16  stated she and her team "signed off on about 18,000 foreclosures per month without

17  checking if they were justified."  (Id.)  Plaintiff also asks the Court to notice the fact that

18  industry analysts have declared the "defects" seen in Chase Bank foreclosure documents

19  to be industry-wide, as contained in a November 2010 Washington Post article and a

20  December 2010 Chicago Business Wire article.  (Id.)

21       In reply, Chase Bank objects to Plaintiff's request for judicial notice because the

22  facts Plaintiff requests that this Court notice are "facts that go to the heart of the dispute

23  regarding the purported wrongdoing by [Chase Bank]."  (Dkt. No. 16 at 3.)

24       The facts that Plaintiff asks the Court to notice are not appropriate for judicial

25  notice.  As to the fact that a Chase Bank employee stated she and her team "signed off on

26  about 18,000 foreclosures per month without checking if they were justified," Plaintiff has

27

28
_____

[3] www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf

1  not provided information showing that fact to be capable of accurate and ready

2  determination by resort to sources whose accuracy cannot reasonably be questioned.  A

3  news article is not necessarily, and for judicial notice, such a source.  Further, even if the

4  Court noticed that the employee made such a statement, the truth of that statement is

5  subject to reasonable dispute.  Plaintiff has not provided information showing the fact that

6  industry analysts have declared the defects seen in the Chase Bank foreclosure documents

7  to be industry wide to be capable of accurate and ready determination by resort to sources

8  whose accuracy cannot be reasonably questioned.  Moreover, the conclusions of industry

9  analysts (i.e., the truth of their assertions) are subject to reasonable dispute.  Accordingly,

10  Plaintiff's requests for judicial notice are **DENIED**.

11  **DISCUSSION**

12  **I.    Legal Standard**s

13      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

14  sufficiency of the complaint.  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

15  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal

16  theory.  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); <u>see</u>

17  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to

18  dismiss a claim on the basis of a dispositive issue of law.").  Alternatively, a complaint may

19  be dismissed where it presents a cognizable legal theory yet fails to plead essential facts

20  under that theory.  <u>Robertson</u>, 749 F.2d at 534.  While a plaintiff need not give "detailed

21  factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above

22  the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).

23      In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

24  truth of all factual allegations and must construe all inferences from them in the light most

25  favorable to the nonmoving party.  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir.

26  2002); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal

27  conclusions, however, need not be taken as true merely because they are cast in the form

28  of factual allegations. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>Western</u>

1    <u>Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  "Nor does a complaint

2    suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Ashcroft</u>

3    <u>v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

4    **II.      Analysis**

5            **A.      Scope of Chase Bank's Liability**

6            Chase Bank asserts it is not liable for actions undertaken by Washington Mutual

7    as those actions relate to Plaintiff's loan because Chase Bank expressly disclaimed such

8    liability when it acquired certain Washington Mutual assets and liabilities from the FDIC

9    acting as receiver of Washington Mutual.  (Dkt. No. 3-1 at 3-4.)

10           Chase Bank also points to a First Circuit case in which the court addressed the issue

11   of Chase Bank's liability for Washington Mutual's pre-acquisition actions as they

12   pertained to borrowers' claims under the same Purchase and Assumption Agreement

13   offered by Chase Bank here.  In that case, the First Circuit stated:

14           When Washington Mutual failed, Chase Bank acquired many assets but its
             agreement with the FDIC retains for the FDIC "any liability associated with
15           borrower claims for payment of or any liability to any borrower for monetary
             relief, or that provide for any other form of relief to any borrower."[]  Thus
16           the FDIC was and remains the appropriate party in interest.

17   <u>Yeomalakis v. Fed. Deposit Ins. Corp.</u>, 562 F.3d 56, 60 (1st Cir. 2009).

18           This Court agrees with the First Circuit's analysis.  Because the FDIC was

19   appointed as receiver of Washington Mutual on September 25, 2008, and because – when

20   Chase Bank acquired certain Washington Mutual assets and liabilities from the FDIC on

21   September 25, 2008 – it expressly disclaimed liability related to Washington Mutual's

22   actions as they relate to borrowers' claims, the FDIC retains liability for Plaintiff's claims

23   to the extent they arose before September 25, 2008.  Thus, to the extent Plaintiff makes

24   claims against Chase Bank for Washington Mutual's conduct prior to September 25,

25   2008, Plaintiff fails to state a claim against Chase Bank.

26           **B.      Plaintiff's First Cause of Action for Violation of the Truth in Lending**

27                    **Act**

28           Plaintiff alleges Washington Mutual and Chase Bank violated provisions of the

                                              11                          09cv2838

1   Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and Regulation Z, 12 C.F.R. § 226.23.

2   (Dkt. No. 1 ¶ 76.)  Plaintiff claims he has a "continuing right to rescind" his refinance

3   loan because Washington Mutual failed to comply with 12 C.F.R. § 226.23.  (Id. ¶ 77.)

4   "[I]n addition to rescission," Plaintiff claims "the Court may award relief under section

5   1640 of this title for violations [of] this sub-chapter not relating to the right to rescind,"

6   namely "statutory damages for the disclosure violations" and "[a]ttorneys fees, litigation

7   expenses and costs."  (Id. at 21.)

8        In its Motion to Dismiss, Chase Bank asserts the applicable statute of limitations

9   bars Plaintiff's claims for rescission and for civil penalties.  (Dkt. No. 3-1 at 12.)

10       In response, and at apparent odds with his Complaint, Plaintiff asserts he "is not

11  seeking rescission for TILA . . . violations." (Dkt. No. 15 at 9.)  Plaintiff further asserts

12  that the doctrine of equitable tolling should apply to his claim for damages, as Plaintiff

13  had no way of knowing what, if any, violations had occurred until 2009 when he received

14  the results of the forensic review of his 2004 loan documents.  (Id.)

15       In reply, Chase Bank asserts that any TILA violation must have occurred when

16  Plaintiff's loan originated in 2004, which is before Chase Bank acquired an interest in

17  Plaintiff's loan pursuant to the Purchase and Assumption Agreement. (Dkt. No. 16 at 4.)

18  Thus, Chase Bank argues it cannot be held liable for any violation of TILA as a matter of

19  law.  (Id.)  Chase Bank again argues that, in any event, the statute of limitations bars

20  Plaintiff's claims for both damages and rescission.  (Id.)  Chase Bank does not, however,

21  address Plaintiff's contention that equitable tolling should apply to overcome the statute

22  of limitations applicable to Plaintiff's claim for damages.

23       TILA provides protection for consumers engaged in credit transactions by requiring

24  "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a); Eby v. Reb Realty, Inc., 495

25  F.2d 646 (9th Cir. 1974) (TILA "is a remedial statute designed as much as possible to

26  permit borrowers to make informed judgments about the use of credit.").  Thus, any

27  violation necessarily occurs at the time a consumer seeks and/or obtains credit because the

28  fundamental purpose of the statute "is to provide information to facilitate comparative

1  credit shopping." <u>Brown v. Marquette Sav. & Loan Ass'n</u>, 686 F.2d 608, 612 (7th Cir.

2  1982).  Indeed, the limitations period applicable to TILA actions for damages, 15 U.S.C.

3  § 1640(e), runs from the date a covered loan transaction is <u>consummated</u>.  <u>King v.</u>

4  <u>California</u>, 784 F.2d 910, 915 (9th Cir. 1986).  "[T]he doctrine of equitable tolling may,

5  in appropriate circumstances, suspend the limitations period until the borrower discovers

6  or had reasonable opportunity to discovery the fraud or nondisclosures that form the basis

7  of the TILA action."  (<u>Id.</u>)

8          Here, because any violation of TILA must have occurred when Plaintiff's refinance

9  loan was consummated in 2004, and because Chase Bank did not assume liability for

10 borrowers' claims arising from Washington Mutual's actions undertaken before September

11 25, 2008, Chase Bank is not liable for any violation of TILA as it relates to Plaintiff's

12 refinance loan.  Thus, it is unnecessary at this time for the Court to address whether

13 Plaintiff has pled facts sufficient to equitably toll the statue of limitations applicable to

14 his claim for damages.  Accordingly, as alleged against Chase Bank, Plaintiff's First Cause

15 of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

16          **C.      Plaintiff's Second Cause of Action for Unfair Debt Collection Practices**

17          Plaintiff avers "that the Defendants, and each of them, in taking the actions

18 aforementioned, have violated provisions of the Federal Fair Debt Collections Act

19 ["FDCPA"]. . . and the Real Estate Settlement Procedures Act . . . ."  (Dkt. No. 1 ¶ 79.)

20          In its Motion, Chase Bank asserts the act of foreclosure is not considered "debt

21 collection" as defined by the FDCPA.  (Dkt. No. 3-1 at 5.)

22          In opposition, Plaintiff asserts foreclosure is "debt collection" because a recording

23 that plays when calling Chase Bank/Washington Mutual's loan modification department

24 states Chase Bank/Washington Mutual is "attempting to collect a debt."  (Dkt. No. 15 at

25 9.)

26 ///

27 ///

28 ///

1    In reply, Chase Bank reasserts that foreclosure is not considered "debt collection"

2  because payment of funds is not the object of a foreclosure action.[4]  (Dkt. No. 16 at 4-5.)

3    The FDCPA sets forth various requirements and prohibitions for the purpose of,

4  among other things, eliminating abusive debt collection practices by "debt collectors."  15

5  U.S.C. § 1692(e).  The FDCPA provides:

6    The term "debt collector" means any person who uses any instrumentality
   of interstate commerce or the mails in any business the principal purpose of
7    which is the collection of any debts, or who regularly collects or attempts to
   collect, directly or indirectly, debts owed or due or asserted to be owed or
8    due another.

9  Id. § 1692a(6) (emphasis added).

10    Foreclosure is "a legal proceeding to terminate a mortgagor's interest in property,

11  instituted by the lender (the mortgagee) either to gain title or to force a sale in order to

12  satisfy the unpaid debt secured by the property."  Black's Law Dictionary (9th ed. 2009)

13  (emphasis added).

14    Thus, because "foreclosure" is a proceeding to satisfy an unpaid debt, it appears the

15  act of foreclosure falls within the FDCPA only if the mortgagee (i.e., the lender) can be

16  considered a "debt collector" as defined by the FDCPA.

17    The Court has not found a Ninth Circuit case that addresses the question of

18  whether mortgagees are debt collectors.  Section 1692a(6), however, makes clear that a

19  "debt collector" is one who collects a debt on behalf of another.  Because foreclosure is

20  instituted by the mortgagee to recover a debt owed to itself, a mortgagee instituting

21  foreclosure cannot be considered a "debt collector" under the FDCPA.  See Diessner v.

22  Mortgage Electronic Registration Systems, 618 F. Supp. 2d 1184, 1188–89 (D. Ariz.

23  2009) (concluding that, based on the available legal authority and the legislative history,

24  a mortgagee is not a debt collector as defined in the FDCPA).  Further, a number of

25

26    [4] As a preliminary matter, neither party addresses Plaintiff's allegation that unfair
27  debt collection practices constitute a violation of the Real Estate Settlement Procedures
   Act ("RESPA").  The Court, however, notes that RESPA does not provide a cause of
28  action for unfair debt collection practices.  See generally 12 U.S.C. § 2601 et seq.; see also
   24 C.F.R. § 3500.1 et seq.

district court cases in the Ninth Circuit have addressed this question, holding that the act of foreclosure is not debt collection under the FDCPA.  See Odinma v. Aurora Loan Serv., 2010 WL 2232169, at *11 (N.D. Cal. June 3, 2010); Jozinovich v. JPMorgan Chase Bank, N.A., 2010 WL 234895, at *6 (N.D. Cal. Jan. 14, 2010); Mansour v. Cal-Western Reconveyance Corp., 619 F. Supp. 2d 1178, 1182 (D.Ariz. 2009); Gallegos v. Recontrust Co., 2009 WL 215406, at *3 (S.D. Cal. Jan. 29, 2009); Castro v. Executive Trustee Services, LLC, 2009 WL 438683, at *6 (D. Ariz. Feb. 23, 2009); Hulse v. Ocwen Fed. Bank, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).  The Court finds the rationale in these cases persuasive.

Because Plaintiff alleges a violation of the FDCPA in connection with the foreclosure of his property, Plaintiff has failed to state a claim for violation of the FDCPA. Accordingly, as alleged against all defendants, Plaintiff's Second Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

### D.    Plaintiff's Third Cause of Action for Violation of RESPA

Plaintiff alleges Washington Mutual "gave to, and/or accepted a fee, kickback, or thing of value pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred to a person in violation of" the Real Estate Settlement Procedures Act ("RESPA"). (Dkt. No. 1 at 22.)

Chase Bank argues Plaintiff's Third Cause of Action should be dismissed because it is barred by the applicable statute of limitations requiring the type of claim asserted by Plaintiff for violation of RESPA to be brought within one year of the violation.  (Dkt. No. 3-1 at 14.)

Plaintiff asserts in opposition that equitable tolling should apply to overcome the applicable statute of limitations.  (Dkt. No. 15 at 9.)

In reply, Chase Bank argues that Plaintiff has failed to set forth factual allegations sufficient for the Court to consider Plaintiff's assertion that the applicable statute of limitations should be tolled.  (Dkt. No. 16 at 6.)  Moreover, Chase Bank asserts that, in

1   any event, it is not liable for any alleged wrongdoing that occurred at the time Plaintiff's

2   loan originated.  (Id.)

3          In relevant part, RESPA "requires mortgage lenders to disclose the costs associated

4   with real estate closings," "prohibits fee-splitting in connection with settlement services

5   except for services actually performed," and "prohibits giving or accepting anything of

6   value in exchange for referrals except in certain circumstances." Bloom v. Martin, 77 F.3d

7   318, 320 (9th Cir. 1996) (citing 12 U.S.C. §§ 2601, 2602, 2603, 2607).  Accordingly, any

8   RESPA violation of these types must occur at the time the loan closes.

9          Here, because the type of RESPA violation alleged by Plaintiff must have occurred

10   when Plaintiff's refinance loan closed in 2004, and because Chase Bank did not assume

11   liability for borrowers' claims arising from Washington Mutual's actions undertaken

12   before September 25, 2008, Chase Bank cannot be liable for violating RESPA as it

13   pertains to Plaintiff's refinance loan.  Thus, it is unnecessary at this time for the Court to

14   address whether Plaintiff has pled facts sufficient to state a claim under RESPA or, if he

15   has, whether Plaintiff has alleged facts showing he is entitled to equitable tolling of the

16   applicable statute of limitations.  Accordingly, as alleged against Chase Bank, Plaintiff's

17   Third Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

18          **E.**     **Plaintiff's Fourth Cause of Action to Set Aside and Vacate the Trustee**

19                  **Sale of His Property and to Cancel the Trustee's Deed Upon Sale**

20          Plaintiff claims Chase Bank conducted the trustee sale of his property in violation

21   of California Civil Code section 2924 et sequens.  (Dkt. No. 1 ¶ 84.)  In conjunction with

22   this claim, Plaintiff asserts the trustee's deed upon sale should be canceled to avoid

23   irreparable injury to Plaintiff pursuant to California Civil Code section 3412.  (Id. ¶ 87.)

24          In support of its Motion to Dismiss, Chase Bank asserts that Plaintiff failed to

25   allege that he "can fully and unconditionally tender the amount owing under the deed of

26   trust, or the means by which Plaintiff will accomplish such payment, as required by

27   California Law" to state a claim for cancellation under section 3412.  (Dkt. No. 3-1 at 8.)

28          Plaintiff provides no argument in opposition.   As such, Chase Bank argues

16                                    09cv2838

Plaintiff's Fourth Cause of Action should be dismissed for failure to oppose Chase Bank's Motion as to this claim.  (Dkt. No. 16 at 7.)  Chase Bank, however, offers no authority for this position.

California Civil Code section 2924 <u>et sequens</u> generally sets forth various technical procedures and requirements for foreclosure under California law.  Civil Code section 3412 provides the remedy of cancelling void or voidable instruments such as a trustee's deed upon sale that fails to comply with section 2924 <u>et sequens</u>.  California appellate courts have held that "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  <u>Karlsen v. Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (1971); <u>see also</u> <u>United States Cold Storage v. Great W. Sav. & Loan Ass'n</u>, 165 Cal. App. 3d 1214, 1225 (1985) ("It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property.")  Other district courts in the Ninth Circuit have held that, in order to bring a claim for wrongful foreclosure, a plaintiff is generally required to allege actual tender of, or the ability to tender, the amount of indebtedness owed.  <u>Lipscomb v. Mortgage Elec. Registration Sys., Inc.</u>, 2011 WL 3361132, at *7 (E.D. Cal. Aug. 3, 2011); <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009).

Here, Plaintiff fails to allege which provisions of California Civil Code section 2924 <u>et sequens</u> that Chase Bank violated.  Further, while Plaintiff alleges that his business associate was at one time willing to loan Plaintiff funds to cure his delinquency, Plaintiff has failed to allege that he has the present ability to make, or has actually made, full tender of the indebtedness owed, the non-payment of which led to foreclosure.  While Plaintiff does not oppose Chase Bank's Motion as to this claim, Plaintiff does generally ask the Court for leave to amend any deficient claims.  Accordingly, as alleged against Chase Bank, Plaintiff's Fourth Cause of Action is **DISMISSED WITH LEAVE TO**

09cv2838

1   **AMEND**.[5]

2   **F.    Plaintiff's Fifth Cause of Action for Unjust Enrichment**

3   Plaintiff alleges that Washington Mutual and Chase Bank were unjustly enriched

4   by "marketing sub-prime loans via inflated property appraisal(s), charging Plaintiff and

5   countless other borrowers inflated notary and various other non-disclosed fees, and

6   through the unlawful foreclosure of Plaintiffs [sic] property . . . ." (Dkt. No. ¶ 89.)

7   Chase Bank seeks dismissal of this claim because "Plaintiff fails to set forth any

8   facts as to what fees were charged." (Dkt. No. 3-1 at 16.) Moreover, Chase Bank asserts

9   it cannot be held liable for any amounts claimed as to actions undertaken by Washington

10  Mutual pursuant to the Purchase and Assumption Agreement. (Id.)

11  Plaintiff provides no argument in opposition.

12  In a previous decision, this Court recognized a split in California authority

13  regarding whether unjust enrichment is a cognizable cause of action. Selfhelpworks.com

14  v. 1021018 Alberta Ltd., 2010 WL 5396042, at *5 (S.D. Cal. Dec. 23, 2010).

15  Ultimately, the Court concluded "unjust enrichment is not a separate cause of action in

16  California."

17  Accordingly, as alleged against all defendants, Plaintiff's Fifth Cause of Action is

18  **DISMISSED WITHOUT LEAVE TO AMEND.**

19  **G.    Plaintiff's Sixth Cause of Action for Promissory Estoppel**

20  Plaintiff alleges Chase Bank "promised, assured and represented to Plaintiff that the

21  foreclosure sale of his property had been suspended due to Plaintiffs [sic] participation in

22  defendants [sic] 'Loan Modification' Program." (Dkt. No. 1 ¶ 91.) Specifically, Plaintiff

23  alleges that Chase Bank "assured and represented to Plaintiff that the sale of the Subject

24

25  _____

26  [5] The Court notes that, when deciding to grant an unopposed motion for dismissal, it must consider, among other things, the availability of less drastic sanctions. See Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986). Because Plaintiff is

27  proceeding pro se, and because Plaintiff specifically requested leave to amend any deficient claims, the Court finds it appropriate, at this early stage in the litigation, to grant Plaintiff

28  leave to amend his claims as indicated herein even if Plaintiff offers no argument in opposition to Chase Bank's Motion to Dismiss.

Property would continue to be suspended pending approval of his 'Loan Modification.'" (Id.)  Plaintiff claims Chase Bank "knew, or should have known that Plaintiff would be reasonably induced to rely on Defendants [sic] promise . . . to suspend the foreclosure . . . and not seek alternative financial and/or legal remedies to rescue the property." (Id. ¶ 92.)  Plaintiff alleges he reasonably relied on Chase Bank's promise and that, as a result of Chase Bank's failure to keep its promise, Plaintiff was "deprived of title to, as well as the quiet use and enjoyment of the Subject Property." (Id. ¶ 94.)  Plaintiff alleges injustice can be avoided by enforcing Chase Bank's promise.  (Id. ¶ 95.)

In its Motion to Dismiss, Chase Bank asserts that, while Plaintiff alleges Chase Bank "promised to stop the foreclosure," Plaintiff "gives no facts as to who made this alleged statement or when it was made, or to whom it was made.  (Dkt. No. 3-1 at 10.)

Plaintiff offers no argument in opposition.  In reply, however, Chase Bank asserts it made no clear promise to Plaintiff.  (Dkt. No. 16 at 8.)

The elements of promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reasonable and foreseeable reliance; and (4) injury resulting from the reliance.  Thomson v. Int'l Alliance of Theatrical Stage Emp. & Moving Picture Machine Operators of the U.S. & Canada, 232 Cal. App. 2d 446, 454 (1965).

Here, Plaintiff has stated facts sufficient to state a claim for promissory estoppel.  First, Plaintiff has alleged facts demonstrating that, in June and July 2009, Chase Bank representatives promised on more than one occasion that Chase Bank would continue to suspend foreclosure of Plaintiff's property pending the outcome of Plaintiff's participation in Chase Bank's loan modification program.  The Court finds this promise is clear and unambiguous, as no additional terms are needed to understand or carry it out.

Second, Plaintiff has alleged facts demonstrating that he relied on Chase Bank's promise.  While Plaintiff's allegation that he forwent "other legal remedies to rescue the property" is likely too vague to survive a motion to dismiss, Plaintiff's allegation that he forwent a loan from a business associate to cure his delinquency is sufficiently pled.

Third, Plaintiff has alleged facts sufficient to demonstrate his reliance was reasonable and foreseeable. Plaintiff alleges he informed his Chase Bank loan advisor that, if the loan modification process did not work, he had a business associate willing to loan him sufficient funds to cure his default. Plaintiff alleges that the loan advisor told him that, given the relatively small amount of Plaintiff's delinquency ($12,000.00), obtaining a modified payment plan would be easy. Further, Plaintiff alleges that, on July 10, 2009, his loan advisor informed him his loan would be "kept in the active negotiation phase and therefore [Chase Bank] would not pursue foreclosure until they determine [Plaintiff's] options."

Plaintiff then alleges that his business associate spoke with a Chase Bank representative on July 15, 2009, who informed the business associate that Chase Bank was reviewing the loan modification paperwork that Plaintiff had previously submitted. The business associate then spoke with various Chase Bank representatives on July 20, 2009, who confirmed Chase Bank was not pursuing foreclosure on Plaintiff's property and that Chase Bank had no plans to sell Plaintiff's property at that time. Plaintiff also alleges that, on the day before Chase Bank foreclosed on Plaintiff's property, a Chase Bank representative informed Plaintiff that, "according to the banks [sic] own conversation log, and progress log, [Chase Bank] had sent Plaintiff a request for additional documentation on July 22, 2009." Plaintiff alleges that Chase Bank's "home retention department" informed Plaintiff that the deadline to return the loan modification documents would be extended to July 30, 2009, because Chase Bank had not yet addressed Plaintiff's concerns regarding the documents. In sum, it is reasonable and foreseeable that Plaintiff would not have taken action to save his property from foreclosure prior to July 30, 2009, based on Chase Bank's promise to suspend foreclosure pending the outcome of Plaintiff's participation in the loan modification program.

Lastly, Plaintiff has stated sufficient facts demonstrating he was injured by Chase Bank's alleged failure to keep its promise. That is, Plaintiff alleged that he was deprived of title to, and quiet use and enjoyment of, his property and that he incurred costs

1  associated with bringing this suit.  Accordingly, as to Plaintiff's Sixth Cause of Action,

2  Chase Bank's Motion is **DENIED**.

3        **H.**    **Plaintiff's Seventh Cause of Action for an Accounting**

4       In conjunction with his claim that the sale of his property was unlawful, Plaintiff

5  alleges Chase Bank "received proceeds from the unlawful sale, a portion of which is due

6  to Plaintiff from Defendants."  (Dkt. No. 1 ¶ 97.)  "The amount of money due from

7  Defendants," alleges Plaintiff "is unknown to Plaintiff at this time and cannot be

8  ascertained without an accounting of the proceeds after [t]he sale of the Subject property."

9  (Id. ¶ 98.)   Plaintiff further alleges that he "has demanded an accounting of the

10  amortization schedule and calculated interest for the aforementioned loan modification

11  from" Chase Bank and that Chase Bank has refused to render such an accounting.  (Id.

12  ¶ 99.)

13       In support of its Motion, Chase Bank argues Plaintiff is not entitled to an

14  accounting because he has failed to allege facts demonstrating that Chase Bank owed

15  Plaintiff either a fiduciary duty or a general duty of care, or that the foreclosure itself was

16  improper.  (Dkt. No. 3-1 at 10.)

17       Plaintiff offers no argument in opposition.

18       "A cause of action for an accounting requires a showing that a relationship exists

19  between the plaintiff and defendant that requires an accounting, and that some balance

20  is due the plaintiff that can only be ascertained by an accounting." Teselle v. McLoughlin,

21  173 Cal. App. 4th 156, 179 (2009).  Ordinarily, the relationship between a bank and its

22  customer is that of debtor-creditor and is not a fiduciary one.  See Price v. Wells Fargo

23  Bank, 213 Cal. App. 3d 465, 476-77 (1989).  Even where no fiduciary relationship exists,

24  however, a cause of action for an accounting will lie "where the accounts are so

25  complicated that an ordinary legal action demanding a fixed sum is impracticable." Civic

26  W. Corp. v. Zila Indus., Inc., 66 Cal. App. 3d 1, 14 (1977).  A cause of action for an

27  accounting will not lie, however, "where it appears from the complaint that none is

28  necessary or that there is an adequate remedy at law."  Id. (citation omitted).  Lastly,

"[t]he right to an accounting is derivative and depends on the validity of a plaintiff's underlying claims." Duggal v. G.E. Capital Commc'n Serv., Inc., 81 Cal. App. 4th 81, 95 (2000).

Here, Plaintiff has failed to allege facts sufficient to state a cause of action for an accounting. Calculating the proceeds from a single trustee sale is not so complicated that an ordinary legal action demanding a fixed sum would be impractical. Moreover, Plaintiff alleges other legal causes of action seeking damages, the amount of which would be subject to ordinary methods of discovery and proof, thus obviating the need for an accounting. As to Plaintiff's demand for an accounting of the amortization schedule and calculation of interest for his potential loan modification, Plaintiff's claim again fails because Plaintiff is not alleging that Chase Bank owes an undefined balance. Plaintiff merely demands additional terms of the loan modification offer. Accordingly, as alleged against Chase Bank, Plaintiff's Seventh Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND**.

## I.      Plaintiff's Eighth Cause of Action for Breach of Implied Warranties in Violation of the CLRA

Plaintiff alleges Chase Bank violated the California Consumers Legal Remedies Act ("CLRA") in that it "carried out a scheme designed to deliberately cheat large numbers of consumers out of their homes, and individually, through small to moderate sums of money." (Dkt. No. 1 ¶¶ 101, 105.) Plaintiff then states generally that

> Defendants . . . have violated the CLRA, which . . . provides . . . the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . . i) Representing that the services have characteristics or benefits which they do not have; . . . ii) Advertising services with the intent not to provide them as advertised.

(Id. ¶ 104.)

Chase Bank seeks dismissal of this claim, primarily arguing that foreclosure is not governed by the CLRA. (Dkt. No. 3-1 at 18.) Specifically, Chase Bank argues that Plaintiff's refinance loan and the potential loan modification are not "goods" or "services"

as defined by the CLRA.  (<u>Id.</u>)  Chase Bank further argues that, even if the CLRA applied, Plaintiff has failed to allege facts showing that Chase Bank's alleged actions are likely to deceive a reasonable consumer.  (<u>Id.</u>)  Lastly, Chase Bank asserts that Plaintiff has failed to cite to any authority permitting Plaintiff to proceed with a private cause of action under the CLRA.  (<u>Id.</u>)

Plaintiff offers no argument in opposition.

The CLRA makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  "Goods" are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes."  Cal. Civ. Code § 1761(a).  "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).

With regard to mortgage loans, this Court has found no California Supreme Court case addressing whether the CLRA applies to mortgage loans or services rendered in connection with mortgage loans.  Several district courts in the Ninth Circuit, however, have addressed the issue.  In one case, a district court found that the California Supreme Court would conclude that the CLRA applied to the mortgage loans at issue in that case because the lenders did not just provide a loan to the plaintiffs, but also provided "services in developing an acceptable refinancing plan by which they could remain in possession of their home."  <u>Hernandez v. Hilltop Fin. Mortg., Inc.</u>, 622 F. Supp. 2d 842, 851 (N.D. Cal. 2007) ("[T]he situation . . . involves more than the mere extension of a credit line. Instead, the circumstances here deal not just with the mortgage loan itself, but also with the services involved in developing, securing and maintaining plaintiffs' loan."); <u>see also</u> <u>Jefferson v. Chase Home Fin. LLC</u>, 2007 WL 1302984, at *2-3 (N.D. Cal. May 3, 2007) (finding the CLRA applicable to financial services provided in connection with real estate transactions); <u>see also</u> <u>Knox v. Ameriquest Mortg. Co.</u>, 2005 WL 1910927, at *4 (N.D.

1   Cal. Aug. 10, 2005) (finding the CLRA applicable to predatory lending practices as

2   financial services).

3         In a more recent case, a district court found that mortgage loans are not "goods"

4   as defined by the CLRA.  Consumer Solutions REO, LLC, v. Hillery, 658 F. Supp. 2d

5   1002, 1016-17 (N.D. Cal. 2009).  The court found that, to the extent the plaintiff in that

6   case was challenging the validity of a mortgage loan itself, and not non-ancillary services

7   related to the loan, the plaintiff failed to state a claim for violation of the CLRA.  Id.  In

8   dismissing that plaintiff's CLRA claim, the court relied on a California Supreme Court

9   case indicating "loans are intangible goods and that ancillary services provided in the sale

10  of intangible goods do not bring these goods within the coverage of the CLRA."  Id. at

11  1016 (citing Fairbanks v. Super. Ct., 46 Cal. 4th 56, 65 (2009)).  In Fairbanks, the

12  California Supreme Court rejected a plaintiff's argument that ancillary services related to

13  life insurance policies brings life insurance policies within the CLRA as "goods," stating:

14          As [defendant] points out ancillary services are provided by the sellers of
            virtually all intangible goods-investment securities, bank deposit accounts
15          and loans, and so forth. The sellers of virtually all these intangible items
            assist prospective customers in selecting products that suit their needs, and
16          they often provide additional customer services related to the maintenance,
            value, use redemption, resale, or repayment of the intangible item. Using the
17          existence of these ancillary services to bring intangible goods within the
            coverage of the CLRA would defeat the apparent legislative intent in limiting
18          the definition of "goods" to include only "tangible chattels."

19  Fairbanks, 46 Cal. 4th at 1016.

20        Further, to state a claim for violation of the CLRA based on unfair methods of

21  competition and unfair or deceptive acts, a plaintiff must allege facts showing that

22  members of the public are likely to be deceived.  Williams v. Gerber Products Co., 552

23  F.3d 934, 938 (9th Cir. 2008).  That is, such claims are subject to the "reasonable

24  consumer" test.  Id.

25        Here, it unclear what Plaintiff refers to by alleging "Defendants have carried out a

26  scheme designed to deliberately cheat large numbers of consumers out of their homes."

27  It is not clear, for example, if the "scheme" Plaintiff alleges refers to Washington Mutual's

28  alleged "mortgage fraud," Chase Bank's loan modification program, neither, or both.

1   Further, Plaintiff has failed to respond or otherwise cite any authority demonstrating that

2   Chase Bank's actions fall under the CLRA.  Accordingly, as alleged against Chase Bank,

3   Plaintiff's Eighth Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

4       **J.      Plaintiff's Ninth and Eleventh Causes of Action for Violations of**

5              **California's UCL**

6           Plaintiff alleges Washington Mutual and Chase Bank violated California's Unfair

7   Competition Law, California Business and Professions Code section 17200 et sequens

8   ("UCL"), in that they "have a pattern and practice of defrauding borrowers through the

9   personal misuse of their real property assets."  (Dkt. No. ¶ 107.)  Specifically, Plaintiff

10  avers that Washington Mutual and Chase Bank "have absconded with ill gotten gains,

11  defrauding not only Plaintiff but similarly situated homeowners, by perfecting foreclosure

12  on residential properties without any legal authority whatsoever to do so."  (Id. ¶ 108).

13  These practices, alleges Plaintiff,  are "unfair, unlawful, immoral, unethical, and in

14  violation of the law."  (Id. ¶ 110.)  As such, "Plaintiff prays for the full disgorgement of

15  monies and profits and the value of converted assets according to proof" and "an

16  injunction order enjoining and restraining Defendants . . . from engaging in or performing

17  any act to deprive Plaintiff of ownership or possession of their real property . . . ."  (Id. ¶¶

18  111-112.)

19          And, in his Eleventh Cause of Action, Plaintiff claims Chase Bank engaged in unfair

20  and deceptive acts, "as it is an unfair practice to misrepresent to Plaintiff . . . in

21  detrimental reliance to enter into its 'Loan Modification' program, and to thereafter

22  misrepresent to consumers including Plaintiff, that the foreclosure of their home(s) had

23  been stayed when the true facts are that they were proceeding with foreclosure

24  nonetheless."  (Id. ¶ 123.)

25          Chase Bank seeks dismissal of these claims, arguing Plaintiff lacks standing to bring

26  an action for violation of the UCL because Plaintiff failed to allege facts demonstrating

27  he "suffered an injury in fact, or even that he lost any money or property as a result" of

28  Chase Bank's alleged conduct.  (Dkt. No. 3-1 at 12.)

As to Plaintiff's claims for fraud (Tenth and Eleventh causes of action), Chase Bank asserts Plaintiff failed to allege facts sufficient to state a claim for the common law tort of fraud, in that Plaintiff failed to "state with the requisite specificity the 'times, dates, places, benefits received, and other details of the alleged fraudulent activity.'" (Id. at 14.) Chase Bank also argues that "Plaintiff also fails to adequately allege the remaining elements [of a fraud claim], including knowledge of falsity . . . that Defendants intended to induce Plaintiff into relying on any representation . . . that Plaintiff relied on any representation by Defendants . . . or any resulting damage." (Id.)

The UCL prohibits unfair competition, which means "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful acts" are "anything that can properly be called a business practice and that at the same time is forbidden by law . . . be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made . . . ." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151-52 (9th Cir. 2008) (citations omitted). As to "unfair acts," there is a split in California authority; they include either "conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" or conduct that is "tethered to a specific constitutional, statutory, or regulatory provisions." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1260-61 (2006). Lastly, "fraudulent acts" are those by which members of the public are likely to be deceived. Id. This prong "does not refer to the common law tort of fraud" but only requires a showing that members of the public "are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (2008). Nevertheless, allegations of fraudulent conduct must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Claridge v. RockYou, Inc., 2011 WL 1361588, at *6 (N.D. Cal. Apr. 11, 2011) (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-05 (9th Cir. 2003)). "To avoid dismissal for inadequacy under Rule 9(b), [a] complaint [must] 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" Edwards v. Marin Park, Inc. 356 F.3d 1058, 1066 (9th Cir. 2004)

(citation omitted).

Thus, to state a claim under the UCL, a plaintiff asserting a private cause of action must allege (1) that defendant engaged in one of the practices prohibited by the statue, and (2) that plaintiff suffered actual injury in fact as a result of defendant's actions.  Cal. Bus. & Prof. Code § 17204.

As to the actual injury prong of a UCL claim, Plaintiff has alleged that he was wrongfully deprived of his property and that he incurred costs related to investigating and bringing this suit due to Chase Bank's practices in violation of the UCL.  Thus, Plaintiff alleges facts sufficient to show he has standing to assert a UCL claim.  Plaintiff, however, fails to allege facts sufficient to satisfy the prohibited practices prong of a UCL claim.

Plaintiff's Ninth Cause of Action fails.  Plaintiff vaguely states that Chase Bank has "defrauded borrowers through the personal misuse of their real property assets." Plaintiff, however, alleges no facts demonstrating how Chase Bank misused borrowers' real property assets.  Further, while Plaintiff has alleged facts demonstrating the fraudulent conduct would deceive a reasonable consumer, he has failed to allege facts regarding the time, place, specific content, and parties involved with the fraudulent conduct.  Again, although Plaintiff did not specifically oppose Chase Bank's motion to dismiss this claim, Plaintiff generally requests leave to amend.  Accordingly, as alleged against Chase Bank, Plaintiff's Ninth Cause of Action is **DISMISSED WITH LEAVE TO AMEND.**

Plaintiff's Eleventh Cause of Action also fails.  Plaintiff asserts Chase Bank engaged in unfair and fraudulent acts by misrepresenting to Plaintiff and other consumers that the foreclosure of their home had been stayed when, in actuality, Chase Bank was proceeding with foreclosure.  First, to the extent Plaintiff alleges Chase Bank engaged in unfair practices, Plaintiff has not alleged any facts demonstrating Chase Bank's conduct falls within either definition of "unfair practices."  Second, while Plaintiff has alleged specific dates, the names of some Chase Bank representatives that Plaintiff or his representative spoke to, and the specific content of the allegedly fraudulent conduct, Plaintiff must allege more detailed allegations of the Chase Bank representatives who engaged in the fraudulent

conduct and the place where the conduct occurred.  Again, although Plaintiff did not specifically oppose Chase Bank's motion to dismiss this claim, Plaintiff generally requests leave to amend.  Accordingly, as alleged against Chase Bank, Plaintiff's Eleventh Cause of Action is **DISMISSED WITH LEAVE TO AMEND.**

### K.    Plaintiff's Twelfth Cause of Action for Negligence

In his Twelfth Cause of Action, Plaintiff alleges that Washington Mutual and Chase Bank "owed a duty of care to Plaintiff as Mortgage lenders and holders of Plaintiffs [sic] note and Deed of Trust."  (Dkt. No. 1 ¶ 129.)   Plaintiff then alleges generally that Washington Mutual and Chase Bank breached that duty and that their breach was a direct and proximate cause of Plaintiff's damages.  (Id. ¶¶ 130-131.)

In its Motion to Dismiss, Chase Bank argues it owes no cognizable legal duty to Plaintiff as a lender engaged in securing its interest in loan collateral and that Plaintiff alleges no specific facts supporting the remaining elements of a negligence claim.  (Dkt. No. 3-1 at 15.)

Plaintiff makes no argument in opposition.

The elements of a common law negligence claim are: (1) defendant owes a duty of care to plaintiff; (2) that duty of care was breached by defendant; (3) plaintiff suffered an injury; and (4) defendant's breach was the proximate cause of plaintiff's injury.  Minch v. Cal. Highway Patrol, 140 Cal. App. 4th 895, 900-01 (2006).  The question of duty is decided by the court.  Ballard v. Uribe, 41 Cal. 3d 564, 573 n.6 (1986).

In support of its position that it owes Plaintiff no legal duty, Chase Bank cites to various cases it asserts stand for the proposition that "a lender is only liable to a borrower for negligence when the lender 'actively participates' in an enterprise beyond the domain of the usual moneylender."  (Id.)  Each of the cases to which Chase Bank cites, however, address a lender's liability based on the conduct of a third party or on extraneous events.[6]

---

[6] Connor v. Great W. Sav. & Loan Ass'n, 69 Cal.2d 850, 864 (1968) (holding a lender that became an active participant in a home construction enterprise owed a duty to protect borrowers from construction defects); Wagner v. Benson, 101 Cal. App. 3d 27 (1980) (holding a mere lender owed no duty to protect borrowers from a risky business

1   Accordingly, to the extent Plaintiff asserts his negligence claim for Chase Bank's own

2   conduct, the Court finds the cases do not support Chase Bank's argument.  Additionally,

3   the Court is not convinced that a loan modification program under the circumstances

4   alleged does not reflect active participation in an "enterprise beyond the domain of the

5   usual money lender."

6        Here, the Court finds Plaintiff fails to allege facts sufficient to state a negligence

7   claim.  While Plaintiff generally alleges Chase Bank owed him a duty of care, Plaintiff does

8   not plead facts sufficient for the Court to determine what duty was owed.  Plaintiff does

9   not, for example, allege that Chase Bank had a duty to ensure its foreclosure department

10  communicated with its loan modification department.  Moreover, Plaintiff does not plead

11  facts describing how Chase Bank breached whatever duty it owed to Plaintiff, how

12  Plaintiff was injured, or how any breach proximately caused Plaintiff's injury.  While

13  Plaintiff did not specifically oppose Chase Bank's motion to dismiss this claim, Plaintiff

14  generally requests leave to amend.  Accordingly, as alleged against Chase Bank, Plaintiff's

15  Twelfth Cause of Action is **DISMISSED WITH LEAVE TO AMEND.**

16        **L.      Plaintiff's Thirteenth Cause of Action for Declaratory Relief**

17        Plaintiff alleges "[a]n actual controversy has arisen and currently exists between

18  Plaintiff and Defendants" in that "Defendants herein 'blindsided' him by foreclosing on

19  his home when they expressly told him they would not do so while he was negotiating a

20  'loan modification.'"  (Dkt. No. 1 ¶ 134.)  Plaintiff further alleges he "desires a judicial

21  determination . . . as to whether the foreclosure is valid and enforceable."  (Id. ¶ 135.)

22        Citing California law, Chase Bank argues this claim should be dismissed because

23  Plaintiff does not seek a judicial determination of the parties' respective rights and

24  obligations as they relate to the future conduct of either party.  (Dkt. No. 3-1 at 16.)

25        In opposition, Plaintiff cites to the federal Declaratory Judgment Act and various

26

27  ───────────

venture);  Meyers v. Guarantee Sav. & Loan Ass'n, 79 Cal. App. 3d 307 (1978) (holding
a mere lender owed no duty to protect borrowers from a contractor's deviation from

28  construction plans); Bradler v. Craig, 274 Cal. App. 2d 466 (1969) (holding a mere lender
owed no duty to protect borrowers from damages caused by construction defects).

federal cases addressing declaratory relief.  Plaintiff, however, offers no argument applying the law he cites to the factual allegations in his Complaint.

In reply, Chase Bank asserts Plaintiff's declaratory relief claim duplicates Plaintiff's other causes of action alleging Chase Bank's foreclosure was improper.  (Dkt. No. 16 at 6.)

"A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." Seattle Audubon Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201).  The Declaratory Judgment Act "is intended to allow earlier access to federal courts in order to spare potential defendants from the threat of impending litigation." Id. (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950)).

"Declaratory judgment actions are justiciable if 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Seattle Audobon Soc., 80 F.3d at 1405 (citing Nat'l Basketball Ass'n v. SDC Basketball Club, 815 F.2d 562, 565 (9th Cir.1987)).

Here, the alleged controversy has reached a stage where a party may seek coercive relief.  Indeed, Plaintiff asserts twelve other causes of action, alleging he is entitled to coercive relief in the form of damages, rescission, and injunction.  Plaintiff does not allege the threat of an impending foreclosure; he alleges claims based on a completed foreclosure. In essence, Plaintiff's claim for declaratory relief is moot.  Accordingly, Plaintiff's Thirteenth Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

**M.** **Plaintiff's Requests for Temporary Restraining Order and Preliminary Injunction**

At the end of his Complaint, Plaintiff

applies for a Temporary Restraining Order ["TRO"] and Order to Show Cause re: Preliminary Injunction enjoining Defendants . . . from spending, transferring, disbursing, encumbering, or otherwise dissipating any real or

09cv2838

personal property without prior Court approval, including but not limited to any money or other consideration that Defendants have received from Plaintiff for any loan, refinance transaction or appraisals made with Defendants . . . and any money or other consideration Defendants have received from Plaintiff as a result of their "Loan Modification Scheme" including but not limited to money or other considerations obtained from borrowers, lenders, or other entities for the transaction.

(Dkt. No. 1 ¶ 140.)

Plaintiff bases his requests on the allegations in his First, Second, Third, Ninth, Tenth, and Eleventh causes of action.  (Dkt. No. 1 ¶ 140.)  Plaintiff also alleges, for the first time in his Complaint, that defendants have violated the Home Ownership and Equity Protection Act ("HOEPA") and the Federal Trade Commission Act ("FTCA"). (Id.)

Because this Court dismisses each of Plaintiff's claims as discussed above, and because Plaintiff fails to allege any facts demonstrating that Chase Bank has violated either HOEPA or the FTCA, Plaintiff's requests for a TRO and an "OSC Re: Preliminary Injunction" are **DENIED WITHOUT PREJUDICE**.

<u>**CONCLUSION**</u>

After careful consideration of the parties' submissions, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. As alleged against Chase Bank, Plaintiff's First, Third, and Seventh causes of action are **DISMISSED WITHOUT LEAVE TO AMEND**;

2. As alleged against all defendants, Plaintiff's Second, Fifth, Eighth, and Thirteenth causes of action are **DISMISSED WITHOUT LEAVE TO AMEND**;

3. Plaintiff's Fourth, Ninth, Tenth, Eleventh, and Twelfth causes of action are **DISMISSED WITH LEAVE TO AMEND**;

4. As to Plaintiff's Sixth cause of action, Chase Bank's Motion is **DENIED**;

5. Plaintiff's requests for a TRO and "OSC Re: Preliminary Injunction" are **DENIED**;

09cv2838

1        6.      Plaintiff may file an amended complaint no later than October 31, 2011.[7]

3   Dated: September 29, 2011           _____

                             HON. JOHN A. HOUSTON

                             United States District Judge

---

[7] While Chase Bank moved to dismiss Plaintiff's Tenth Cause of Action, the Court notes Chase Bank was not named as a defendant in that cause of action.  The Court did not address it.

32