1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10   SEPEHR TORABI,                      )   Civil No. 3:09-cv-2838-JAH  (BLM)
                                         )
11               Plaintiff,              )   **AMENDED ORDER GRANTING**
     v.                                  )   **DEFENDANT CHASE BANK'S**
12                                       )   **MOTION TO DISMISS IN ITS**
     WASHINGTON MUTUAL BANK;             )   **ENTIRETY AND GRANTING IN**
13   CHASE BANK, NA; CITIBANK NA as      )   **PART AND DENYING IN PART**
     trustee for WAMU 2004-AR9, WAMU     )   **PLAINTIFF'S REQUEST FOR**
14   2004-AR9; and DOES 1 to 25;         )   **LEAVE TO AMEND**
                                         )
15               Defendants.            )
                                         )
16   _____ )

17                           **INTRODUCTION**

18         On December 17, 2009, plaintiff Sepehr Torabi ("Plaintiff") filed a complaint

19   against defendants Washington Mutual Bank ("Washington Mutual"); JPMorgan Chase

20   Bank, N.A. (erroneously sued as Chase Bank, N.A. and hereinafter referred to as "Chase

21   Bank"); Citibank, N.A. as trustee for WAMU 2004-AR9; and WAMU 2004-AR9.  (Dkt.

22   No. 1.)  Plaintiff alleges the following causes of action: (1) violations of the Truth in

23   Lending Act, (2) violations of the Federal Fair Debt Collection Practices Act, (3) violations

24   of the Real Estate Settlement Procedures Act, (4) to set aside and vacate a trustee sale, (5)

25   unjust enrichment, (6) promissory estoppel, (7) an accounting, (8) breach of implied

26   warranties in violation of the California Consumers Legal Remedies Act, (9) disgorgement

27   pursuant to the California Unfair Competition Law, (10) fraud in violation of the

28   California Unfair Competition Law, (11) an additional claim of fraud in violation of the

1   California Unfair Competition Law, (12) negligence, and (13) declaratory relief.  (Dkt.

2   No. 1.)

3       Chase Bank filed a motion to dismiss Plaintiff's Complaint pursuant to Federal

4   Rule of Civil Procedure 12(b)(6) on February 1, 2010, along with requests for judicial

5   notice.  (Dkt. No. 3.)  Plaintiff filed an opposition to Chase Bank's Motion on December

6   9, 2010, including requests for judicial notice, and seeking leave to amend in the

7   alternative.  (Dkt. No. 15.)  Chase Bank filed a reply on December 20, 2010 (Dkt. No.

8   16).

9       After a careful review of the parties' submissions, and for the following reasons, this

10  Court **GRANTS** Defendant's Motion, **GRANTS** Chase Bank's requests for judicial notice,

11  **DENIES** Plaintiff's requests for judicial notice, and **GRANTS IN PART** and **DENIES**

12  **IN PART** Plaintiff's request for leave to amend.

13                          <u>**FACTUAL ALLEGATIONS**</u>

14      In May 2003, Plaintiff obtained financing to purchase a condominium in San

15  Diego, California.  (Dkt. No. ¶¶ 8, 18-19.)  In March 2004, Plaintiff began the process to

16  refinance his condominium, and, on March 30, 2004, Plaintiff learned via a commitment

17  letter that Washington Mutual would fund Plaintiff's refinance loan.  (<u>Id.</u> ¶ 21.)

18      "The loan Plaintiff obtained from Washington Mutual was defined as an

19  'Adjustable Rate Mortgage' loan," for which the first monthly payment of $1,289.06

20  would be due on July 1, 2004.  (<u>Id.</u> ¶ 29.)  Under the loan terms, Plaintiff's monthly

21  payment would remain the same for a total of sixty months, after which Plaintiff's

22  principal and interest payment would adjust upward for a higher principal and interest

23  payment.  (<u>Id.</u> ¶ 30.)  Thereafter, Plaintiff's principal and interest payment would re-

24  adjust annually for the life of the loan.  (<u>Id.</u>)

25  / / /

26  / / /

27  / / /

28  / / /

Plaintiff alleges that, at some time following his refinance, Washington Mutual was placed in receivership and that, as a result of Washington Mutual being placed in receivership, Chase Bank was able to acquire certain Washington Mutual assets, including Plaintiff's refinance loan.[1]  (Dkt. No. 1 at 2.)

In or about August 2008, Plaintiff began to fall behind on his monthly loan payments, and by May 1, 2009, Plaintiff was $12,000.00 in arrears.  (Id. ¶ 31.)  Plaintiff alleges he explained his economic hardship to a business associate and that the business associate volunteered to loan Plaintiff up to $20,000.00 to cure his delinquency.  (Id. ¶ 32.)

In or about May 2009, Plaintiff received a "Notice of Default" and a "Notice of Trustee Sale," which named a reconveyance company as trustee, Plaintiff as trustor, and Washington Mutual as beneficiary.  (Id. ¶ 33.)  Around the same time, Plaintiff also received correspondence from Chase Bank/Washington Mutual stating: "As your mortgage company, we're ready to do whatever we can to help our Chase and WaMu customers through these challenging economic times," coupled with an instruction to call the La Mesa Chase Home Ownership Center where a loan advisor would work with Plaintiff to explore all options available, including government programs designed to keep Plaintiff in his home.  (Id. ¶ 34.)

Thereafter, Plaintiff alleges he began working with a Chase Bank/Washington Mutual loan advisor.  (Id. ¶ 37.)  The loan advisor asked Plaintiff to complete an application, to submit a hardship letter, and to provide information detailing his financial position.  (Id.)  After Plaintiff submitted those items, the loan advisor informed Plaintiff that Chase Bank/Washington Mutual "would stop the foreclosure process while they qualified Plaintiff for a modified payment plan."  (Id. ¶ 38.)  Plaintiff specifically informed the loan advisor that, if the loan modification process did not work, he had a business

---

[1] Following Plaintiff's allegation that Chase Bank acquired Washington Mutual's assets, Plaintiff makes no distinction between the two entities.  As such, the Court will set forth Plaintiff's factual allegations as alleged by Plaintiff.  The distinction between these two entities, however, is important as will be discussed below.

09cv2838

associate willing to loan him sufficient funds to cure the default.  (Id. ¶ 39.)  Plaintiff alleges the loan advisor responded by stating that, given the relatively small amount of Plaintiff's delinquency ($12,000.00), obtaining a modified payment plan "would be easy." (Id. ¶ 40.)  Based on the loan advisor's response, Plaintiff advised his business associate "he would not need to borrow the funds [the business associate] had agreed to loan [Plaintiff] as [Chase Bank/Washington Mutual] had agreed to modified [sic] the terms of the mortgage and had also halted both the foreclosure proceeding and trustee sale."  (Id. ¶ 41.)

On or about June 16, 2009, Plaintiff received a loan modification contract from Chase Bank/Washington Mutual, indicating Plaintiff's new monthly payment would be $1,853.70 – "a 50% increase" from Plaintiff's prior monthly payment of $1,289.06.  (Id. ¶¶ 42-43.)  Plaintiff, however, alleges the contract was generic in that it did not contain: (1) specifics as to the modified loan terms, (2) an amortization schedule, (3) details regarding how title to the property would be recorded, or (4) an explanation of how the increased monthly payment "was going to help Plaintiff . . . through these 'tough economic times.'"  (Id. ¶ 42.)  Moreover, Plaintiff alleges he received the modification contract on June 17, 2009, and was instructed to sign and return it no later than June 19, 2009.  (Id. ¶ 44.)  Plaintiff communicated his concerns regarding the modification contract's lack of specificity and the two-day deadline to Chase Bank/Washington Mutual representatives.  (Id. ¶¶ 44-45.)  In response, Chase Bank/Washington Mutual agreed to extend Plaintiff's deadline "to the end of July."  (Id. ¶ 47.)

On July 10, 2009, the loan advisor working with Plaintiff informed Plaintiff that Chase Bank/Washington Mutual would be sending Plaintiff a new financial evaluation package and that Plaintiff's loan would be "kept in the active negotiation phase and therefore [Chase Bank/Washington Mutual] would not pursue foreclosure until they determine [Plaintiff's] options."  (Id. ¶ 53.)

Thereafter, Plaintiff alleges he engaged the help of another business associate to help him through the loan modification process and to act as a third-party advocate.  (Id.

¶ 48.)  Plaintiff alleges that this business associate spoke with a Chase Bank/Washington Mutual representative on July 15, 2009, who informed the business associate that Chase Bank/Washington Mutual was reviewing the loan modification paperwork that Plaintiff had previously submitted.  (Id. ¶¶ 49-50.)  The business associate then spoke with various Chase Bank/Washington Mutual representatives on July 20, 2009, who confirmed Chase Bank/Washington Mutual was not pursuing foreclosure on Plaintiff's property and that Chase Bank/Washington Mutual had no plans to sale Plaintiff's property at that time. (Id. ¶ 52.)

On July 22, 2009, a Chase Bank/Washington Mutual representative informed Plaintiff that, "according to the banks [sic] own conversation log, and progress log, [Chase Bank/Washington Mutual] had sent Plaintiff a request for additional documentation on July 22, 2009."  (Id. ¶ 54.)  Chase Bank/Washington Mutual's "home retention department" further informed Plaintiff that the deadline to return the loan modification documents would be extended to July 30, 2009, because Chase Bank/Washington Mutual had not yet addressed Plaintiff's concerns regarding the documents.  (Id. ¶ 56.)

By July 30, 2009, Chase Bank/Washington Mutual still had not addressed Plaintiff's concerns, so Plaintiff contacted Chase Bank/Washington Mutual to discuss the matter further.  (Id. ¶ 56.)  At that time, Plaintiff learned that, on July 23, 2009, his property had been sold at a trustee sale and that Chase Bank/Washington Mutual was the purchaser.  (Id. ¶ 57.)

Following sale of his property, Plaintiff obtained a forensic review of the loan documents he executed in connection with his 2004 refinance loan, whereby he learned the loan documents "contained numerous violations of the federal 'Truth in Lending Laws, the Federal Real Estate Settlement Procedures Act as well as Inflated Notary Charges in violation of California Law."  [Id. ¶ 67 (typographical errors in original).]  "The same forensic company additionally told Plaintiff that they were concerned Washington Mutual's appraisal of his home was artificially high."  (Id. ¶ 68.)

Indeed, Plaintiff alleges he has discovered multiple violations of the Truth in

Lending Act, the Real Estate Settlement Procedures Act, including: (1) undisclosed settlement charges, (2) unjust enrichment, (3) a miscalculated annual percentage rate, (4) inflated notary charges, (5) conflicts between disclosures and official documents, (6) an improperly completed estimated settlement statement, (7) an inflated appraisal, (8) failure to apply an application fee, (9) various miscalculations, (10) failure to provide Plaintiff with a Consumer Handbook on Adjustable Rate Mortgages ("CHARM") Booklet, (11) no good faith estimate, and (12) failure to comply with underwriting standards.  (Id. ¶ 74.)

Plaintiff claims Washington Mutual defrauded him at the time he acquired his refinance loan by offering him a loan that put him "on a track to foreclosure from day one." (Id. ¶ 13.)  Plaintiff claims Washington Mutual perpetrated this "mortgage fraud" by "issuing fraudulent property appraisals" and by "routinely violat[ing] RESPA, TILA, together with inflating Notary [sic] costs by 900%." (Id.)  As to notary costs, Plaintiff alleges Washington Mutual "charged Plaintiff 100.00 for his signature" in violation of California Government Code section 8211. (Id. ¶¶ 13-14.)  Plaintiff alleges that "through their continuing fraud and failure to reverse these charges, and continuing to amortize these illegal costs into each loan payment, [Chase Bank/Washington Mutual] tolled the statute of limitations." (Id. ¶ 15.)

Plaintiff alleges Chase Bank/Washington Mutual further defrauded Plaintiff by claiming to send Plaintiff a revised mortgage modification package, then selling Plaintiff's home to themselves (i.e., Chase Bank/Washington Mutual) at a trustee sale one day later. (Id. ¶ 11.)  Plaintiff alleges that Chase Bank/Washington Mutual's loan modification program was a "ruse designed to [ci]rcumvent California [law] . . . and to lead Plaintiff . . . to early default and foreclosure."   Plaintiff alleges Chase Bank/Washington Mutual intended to mislead Plaintiff so that Chase Bank/Washington Mutual could "steal" his property, as evidenced by the fact that  Chase Bank/Washington Mutual paid $393,000.00 for the property when it was worth an estimated $500,000.00 and by the fact that Chase Bank/Washington Mutual knew Plaintiff's property carried approximately $100,000.00 in equity.  (Id. ¶¶ 61-63.)

1  Plaintiff claims that, as a result of Chase Bank/Washington Mutual's conduct,

2  Plaintiff has been damaged in the loss of his home and costs associated with bringing this

3  action.  (Id. ¶ 71.)

4  **REQUESTS FOR JUDICIAL NOTICE**

5  The Court will discuss the parties' requests for judicial notice before considering

6  Chase Bank's Motion to Dismiss to define the scope of information the Court will

7  consider in deciding Chase Bank's Motion.

8  Generally, "a district court may not consider any material beyond the pleadings in

9  ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th

10  Cir. 2001) (citation omitted).  "When matters outside the pleadings are presented to and

11  not excluded by the court, the motion shall be treated as one for summary judgment and

12  disposed of as provided in Rule 56. . . ." Id. (citation omitted).  A court, however, may

13  look to facts proper for judicial notice without converting a Rule 12(b)(6) motion to one

14  for summary judgment even though those facts are beyond the complaint. See Mack v.

15  S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986), abrogated in part on other

16  grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).

17  Federal Rule of Evidence 201 allows a court to take judicial notice of an

18  adjudicative fact "not subject to reasonable dispute in that it is . . . capable of accurate and

19  ready determination by resort to sources whose accuracy cannot be reasonably

20  questioned."  "Adjudicative facts are those to which the law is applied in the process of

21  adjudication.  They are the facts that normally go to the jury in a jury case." Grason Elec.

22  Co. v. Sacramento Mun. Util. Dist., 571 F. Supp. 1504, 1521 (E.D. Cal. 1983) (citation

23  omitted).

24  **I.  Chase Bank's Requests for Judicial Notice**

25  In connection with its Motion to Dismiss, Chase Bank filed a Request for Judicial

26  Notice, asking the Court to notice facts contained in two documents that Chase Bank

27  asserts are facts capable of accurate and ready determination by resort to sources whose

28  accuracy cannot reasonably be questioned.  (Dkt. No. 3-2 at 2.)  The first document is an

1   order issued by the Office of Thrift Supervision appointing the Federal Deposit Insurance

2   Corporation ("FDIC") as receiver of Washington Mutual Bank, dated September 25, 2008

3   ("OTS Order").  (Id.)  The second document is a "Purchase and Assumption Agreement

4   . . . among Federal Deposit Insurance Corporation, Receiver of Washington Mutual Bank,

5   . . . Federal Deposit Insurance Corporation and JPMorgan Chase Bank, National

6   Association, Dated as of September 25, 2008" ("Purchase and Assumption Agreement").

7   (Id.)

8          As set forth in its motion, Chase Bank requests that the Court take notice of the

9   fact that the Office of Thrift Supervision placed Washington Mutual into receivership on

10  September 25, 2008, appointing the FDIC as receiver, as provided in the OTS Order.

11  (Dkt. No. 3-1 at 2.)  Chase Bank further requests that the Court take notice of the fact

12  that, when Chase Bank acquired certain Washington Mutual assets and liabilities from

13  the FDIC (acting as receiver of Washington Mutual) on September 25, 2008, Chase Bank

14  did not assume Washington Mutual's potential liabilities associated with borrowers'

15  claims, as provided in the Purchase and Assumption Agreement.[2]  (Dkt. No. 3-1 at 3-4.)

16         Plaintiff makes no objection to Defendant's request that this Court notice those

17  two facts.

18         Both facts are capable of accurate and ready determination by resort to sources

19  whose accuracy cannot be reasonably questioned.  The first fact – that Washington

20

21         [2] The Purchase and Assumption Agreement provides:

22         **2.5   Borrower Claims**.  Notwithstanding anything to the contrary in this
       Agreement, any liability associated with borrower claims for payment of or
23     liability to any borrower for monetary relief, or that provide for any other
       form of relief to any borrower, whether or not such liability is reduced to
24     judgment, liquidated or unliquidated, fixed or contingent, matured or
       unmatured, disputed or undisputed, legal or equitable, judicial or
25     extra-judicial, secured or unsecured, whether asserted affirmatively or
       defensively, related in any way to any loan or commitment to lend made by
26     the Failed Bank [i.e., Washington Mutual] prior to failure, or to any loan
       made by a third party in connection with a loan which is or was held by the
27     Failed Bank, or otherwise arising in connection with the Failed Bank's
       lending or loan purchase activities are specifically not assumed by the
28     Assuming Bank [i.e., Chase Bank].

    (Dkt. No. 3-2 at 21.)

1   Mutual was placed into receivership – is set forth in the OTS Order, which was issued by

2   the Office of Thrift Supervision, now the Office of the Comptroller of the Currency, an

3   office within the Department of Treasury.   The OTS Order is available at 2008 WL

4   4559947 (Sept. 25, 2008).  The second fact – that Chase Bank did not acquire certain

5   Washington Mutual liabilities – is set forth in the Purchase and Assumption Agreement,

6   which was entered into by the FDIC, acting as receiver of Washington Mutual, and Chase

7   Bank.  It is available on the FDIC government website.[3]   Moreover, this fact is also set

8   forth in a First Circuit decision (Yeomalakis v. Fed. Deposit Ins. Corp., 562 F.3d 56, 60

9   (1st Cir. 2009) as discussed below.  Accordingly, Chase Bank's requests for judicial notice

10  are **GRANTED**.

11  **II.     Plaintiff's Requests for Judicial Notice**

12  _____In support of his opposition to Chase Bank's Motion to Dismiss, Plaintiff requests

13  that this Court take judicial notice of facts in various news articles related to Chase Bank

14  and foreclosures.  (Dkt. No. 15 at 5.)  Specifically, Plaintiff asks the Court to notice the

15  fact contained in a December 2010 Washington Post article that a Chase Bank employee

16  stated she and her team "signed off on about 18,000 foreclosures per month without

17  checking if they were justified."  (Id.)  Plaintiff also asks the Court to notice the fact that

18  industry analysts have declared the "defects" seen in Chase Bank foreclosure documents

19  to be industry-wide, as contained in a November 2010 Washington Post article and a

20  December 2010 Chicago Business Wire article.  (Id.)

21        In reply, Chase Bank objects to Plaintiff's request for judicial notice because the

22  facts Plaintiff requests that this Court notice are "facts that go to the heart of the dispute

23  regarding the purported wrongdoing by [Chase Bank]."  (Dkt. No. 16 at 3.)

24        The facts that Plaintiff asks the Court to notice are not appropriate for judicial

25  notice.  As to the fact that a Chase Bank employee stated she and her team "signed off on

26  about 18,000 foreclosures per month without checking if they were justified," Plaintiff has

27

28
_____

[3] www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf

1   not provided information showing that fact to be capable of accurate and ready

2   determination by resort to sources whose accuracy cannot reasonably be questioned.  A

3   news article is not necessarily, and for judicial notice, such a source.  Further, even if the

4   Court noticed that the employee made such a statement, the truth of that statement is

5   subject to reasonable dispute.  Plaintiff has not provided information showing the fact that

6   industry analysts have declared the defects seen in the Chase Bank foreclosure documents

7   to be industry wide to be capable of accurate and ready determination by resort to sources

8   whose accuracy cannot be reasonably questioned.  Moreover, the conclusions of industry

9   analysts (i.e., the truth of their assertions) are subject to reasonable dispute.  Accordingly,

10  Plaintiff's requests for judicial notice are **DENIED**.

11  **DISCUSSION**

12  **I.     Legal Standard**s

13       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

14  sufficiency of the complaint.  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

15  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal

16  theory.  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); <u>see</u>

17  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to

18  dismiss a claim on the basis of a dispositive issue of law.").  Alternatively, a complaint may

19  be dismissed where it presents a cognizable legal theory yet fails to plead essential facts

20  under that theory.  <u>Robertson</u>, 749 F.2d at 534.  While a plaintiff need not give "detailed

21  factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above

22  the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).

23       In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

24  truth of all factual allegations and must construe all inferences from them in the light most

25  favorable to the nonmoving party.  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir.

26  2002); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal

27  conclusions, however, need not be taken as true merely because they are cast in the form

28  of factual allegations.  <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>Western</u>

1  Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  "Nor does a complaint

2  suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Ashcroft

3  v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

4       The Ninth Circuit has held that a district court may properly grant a motion to

5  dismiss as unopposed pursuant to a local rule where the local rule permits, but does not

6  require the granting of a motion for failure to respond.  See generally Ghazali v. Moran,

7  46 F.3d 52, 53 (9th Cir. 1995) (per curiam) (affirming dismissal for failure to timely file

8  opposition to papers).  Civil Local Rule 7.1(f.3.c) expressly provides that "[i]f an opposing

9  party fails to file the papers in the manner required by Local Rule 7.1(e.2), that failure

10  may constitute a consent to the granting of that motion or other request for ruling by the

11  court."

12  **II.    Analysis**

13       **A.    Scope of Chase Bank's Liability**

14       Chase Bank asserts it is not liable for actions undertaken by Washington Mutual

15  as those actions relate to Plaintiff's loan because Chase Bank expressly disclaimed such

16  liability when it acquired certain Washington Mutual assets and liabilities from the FDIC

17  acting as receiver of Washington Mutual.  (Dkt. No. 3-1 at 3-4.)

18       Chase Bank also points to a First Circuit case in which the court addressed the issue

19  of Chase Bank's liability for Washington Mutual's pre-acquisition actions as they

20  pertained to borrowers' claims under the same Purchase and Assumption Agreement

21  offered by Chase Bank here.  In that case, the First Circuit stated:

22       When Washington Mutual failed, Chase Bank acquired many assets but its
         agreement with the FDIC retains for the FDIC "any liability associated with
23       borrower claims for payment of or any liability to any borrower for monetary
         relief, or that provide for any other form of relief to any borrower."[]  Thus
24       the FDIC was and remains the appropriate party in interest.

25  Yeomalakis v. Fed. Deposit Ins. Corp., 562 F.3d 56, 60 (1st Cir. 2009).

26       This Court agrees with the First Circuit's analysis.  Because the FDIC was

27  appointed as receiver of Washington Mutual on September 25, 2008, and because – when

28  Chase Bank acquired certain Washington Mutual assets and liabilities from the FDIC on

September 25, 2008 – it expressly disclaimed liability related to Washington Mutual's actions as they relate to borrowers' claims, the FDIC retains liability for Plaintiff's claims to the extent they arose before September 25, 2008.  Thus, to the extent Plaintiff makes claims against Chase Bank for Washington Mutual's conduct prior to September 25, 2008, Plaintiff fails to state a claim against Chase Bank.

**B.    Plaintiff's First Cause of Action for Violation of the Truth in Lending Act**

Plaintiff alleges Washington Mutual and Chase Bank violated provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and Regulation Z, 12 C.F.R. § 226.23. (Dkt. No. 1 ¶ 76.)  Plaintiff claims he has a "continuing right to rescind" his refinance loan because Washington Mutual failed to comply with 12 C.F.R. § 226.23.  (Id. ¶ 77.) "[I]n addition to rescission," Plaintiff claims "the Court may award relief under section 1640 of this title for violations [of] this sub-chapter not relating to the right to rescind," namely "statutory damages for the disclosure violations" and "[a]ttorneys fees, litigation expenses and costs."  (Id. at 21.)

In its Motion to Dismiss, Chase Bank asserts the applicable statute of limitations bars Plaintiff's claims for rescission and for civil penalties.  (Dkt. No. 3-1 at 12.)

In response, and at apparent odds with his Complaint, Plaintiff asserts he "is not seeking rescission for TILA . . . violations."  (Dkt. No. 15 at 9.)  Plaintiff further asserts that the doctrine of equitable tolling should apply to his claim for damages, as Plaintiff had no way of knowing what, if any, violations had occurred until 2009 when he received the results of the forensic review of his 2004 loan documents.  (Id.)

In reply, Chase Bank asserts that any TILA violation must have occurred when Plaintiff's loan originated in 2004, which is before Chase Bank acquired an interest in Plaintiff's loan pursuant to the Purchase and Assumption Agreement. (Dkt. No. 16 at 4.) Thus, Chase Bank argues it cannot be held liable for any violation of TILA as a matter of law.  (Id.)  Chase Bank again argues that, in any event, the statute of limitations bars Plaintiff's claims for both damages and rescission.  (Id.)  Chase Bank does not, however,

1   address Plaintiff's contention that equitable tolling should apply to overcome the statute

2   of limitations applicable to Plaintiff's claim for damages.

3       TILA provides protection for consumers engaged in credit transactions by requiring

4   "meaningful disclosure of credit terms."  15 U.S.C. § 1601(a); Eby v. Reb Realty, Inc., 495

5   F.2d 646 (9th Cir. 1974) (TILA "is a remedial statute designed as much as possible to

6   permit borrowers to make informed judgments about the use of credit.").  Thus, any

7   violation necessarily occurs at the time a consumer seeks and/or obtains credit because the

8   fundamental purpose of the statute "is to provide information to facilitate comparative

9   credit shopping."  Brown v. Marquette Sav. & Loan Ass'n, 686 F.2d 608, 612 (7th Cir.

10  1982).  Indeed, the limitations period applicable to TILA actions for damages, 15 U.S.C.

11  § 1640(e), runs from the date a covered loan transaction is consummated.  King v.

12  California, 784 F.2d 910, 915 (9th Cir. 1986).  "[T]he doctrine of equitable toling may,

13  in appropriate circumstances, suspend the limitations period until the borrower discovers

14  or had reasonable opportunity to discovery the fraud or nondisclosures that form the basis

15  of the TILA action."  (Id.)

16      Here, because any violation of TILA must have occurred when Plaintiff's refinance

17  loan was consummated in 2004, and because Chase Bank did not assume liability for

18  borrowers' claims arising from Washington Mutual's actions undertaken before September

19  25, 2008, Chase Bank is not liable for any violation of TILA as it relates to Plaintiff's

20  refinance loan.  Thus, it is unnecessary at this time for the Court to address whether

21  Plaintiff has pled facts sufficient to equitably toll the statue of limitations applicable to

22  his claim for damages.  Accordingly, as alleged against Chase Bank, Plaintiff's First Cause

23  of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

24      **C.   Plaintiff's Second Cause of Action for Unfair Debt Collection Practices**

25      Plaintiff avers "that the Defendants, and each of them, in taking the actions

26  aforementioned, have violated provisions of the Federal Fair Debt Collections Act

27  ["FDCPA"]. . . and the Real Estate Settlement Procedures Act . . . ."  (Dkt. No. 1 ¶ 79.)

28      In its Motion, Chase Bank asserts the act of foreclosure is not considered "debt

13

1   collection" as defined by the FDCPA.  (Dkt. No. 3-1 at 5.)

2          In opposition, Plaintiff asserts foreclosure is "debt collection" because a recording

3   that plays when calling Chase Bank/Washington Mutual's loan modification department

4   states Chase Bank/Washington Mutual is "attempting to collect a debt."  (Dkt. No. 15 at

5   9.)

6          In reply, Chase Bank reasserts that foreclosure is not considered "debt collection"

7   because payment of funds is not the object of a foreclosure action.[4]  (Dkt. No. 16 at 4-5.)

8          The FDCPA sets forth various requirements and prohibitions for the purpose of,

9   among other things, eliminating abusive debt collection practices by "debt collectors."  15

10  U.S.C. § 1692(e).  The FDCPA provides:

11          The term "debt collector" means any person who uses any instrumentality
            of interstate commerce or the mails in any business the principal purpose of
12          which is the collection of any debts, or who regularly collects or attempts to
            collect, directly or indirectly, debts owed or due or asserted to be owed or
13          due another.

14  Id. § 1692a(6) (emphasis added).

15          Foreclosure is "a legal proceeding to terminate a mortgagor's interest in property,

16  instituted by the lender (the mortgagee) either to gain title or to force a sale in order to

17  satisfy the unpaid debt secured by the property."  Black's Law Dictionary (9th ed. 2009)

18  (emphasis added).  Thus, because "foreclosure" is a proceeding to satisfy an unpaid debt,

19  it appears the act of foreclosure falls within the FDCPA only if the mortgagee (i.e., the

20  lender) can be considered a "debt collector" as defined by the FDCPA.

21          The Court has not found a Ninth Circuit case that addresses the question of

22  whether mortgagees are debt collectors.  Section 1692a(6), however, makes clear that a

23  "debt collector" is one who collects a debt on behalf of another.  Because foreclosure is

24  instituted by the mortgagee to recover a debt owed to itself, a mortgagee instituting

25

26          [4] As a preliminary matter, neither party addresses Plaintiff's allegation that unfair
27  debt collection practices constitute a violation of the Real Estate Settlement Procedures
    Act ("RESPA").  The Court, however, notes that RESPA does not provide a cause of
28  action for unfair debt collection practices.  See generally 12 U.S.C. § 2601 et seq.; see also
    24 C.F.R. § 3500.1 et seq.

foreclosure cannot be considered a "debt collector" under the FDCPA.  See Diessner v. Mortgage Electronic Registration Systems, 618 F. Supp. 2d 1184, 1188–89 (D. Ariz. 2009) (concluding that, based on the available legal authority and the legislative history, a mortgagee is not a debt collector as defined in the FDCPA).  Further, other district courts in the Ninth Circuit have also addressed this question, holding that the act of foreclosure is not debt collection under the FDCPA.  See Odinma v. Aurora Loan Serv., 2010 WL 2232169, at *11 (N.D. Cal. June 3, 2010); Jozinovich v. JPMorgan Chase Bank, N.A., 2010 WL 234895, at *6 (N.D. Cal. Jan. 14, 2010); Mansour v. Cal-Western Reconveyance Corp., 619 F. Supp. 2d 1178, 1182 (D.Ariz. 2009); Gallegos v. Recontrust Co., 2009 WL 215406, at *3 (S.D. Cal. Jan. 29, 2009); Castro v. Executive Trustee Services, LLC, 2009 WL 438683, at *6 (D. Ariz. Feb. 23, 2009); Hulse v. Ocwen Fed. Bank, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).  The Court finds the rationale in these cases persuasive.

Because Plaintiff alleges a violation of the FDCPA in connection with the foreclosure of his property, Plaintiff has failed to state a claim for violation of the FDCPA. Accordingly, as alleged against Chase Bank, Plaintiff's Second Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

### D.    Plaintiff's Third Cause of Action for Violation of RESPA

Plaintiff alleges Washington Mutual "gave to, and/or accepted a fee, kickback, or thing of value pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred to a person in violation of" the Real Estate Settlement Procedures Act ("RESPA"). (Dkt. No. 1 at 22.)

Chase Bank argues Plaintiff's Third Cause of Action should be dismissed because it is barred by the applicable statute of limitations requiring the type of claim asserted by Plaintiff for violation of RESPA to be brought within one year of the violation.  (Dkt. No. 3-1 at 14.)

Plaintiff asserts in opposition that equitable tolling should apply to overcome the

1    applicable statute of limitations.  (Dkt. No. 15 at 9.)

2        In reply, Chase Bank argues that Plaintiff has failed to set forth factual allegations

3    sufficient for the Court to consider Plaintiff's assertion that the applicable statute of

4    limitations should be tolled.  (Dkt. No. 16 at 6.)  Moreover, Chase Bank asserts that, in

5    any event, it is not liable for any alleged wrongdoing that occurred at the time Plaintiff's

6    loan originated.  (Id.)

7        In relevant part, RESPA "requires mortgage lenders to disclose the costs associated

8    with real estate closings," "prohibits fee-splitting in connection with settlement services

9    except for services actually performed," and "prohibits giving or accepting anything of

10   value in exchange for referrals except in certain circumstances."  Bloom v. Martin, 77 F.3d

11   318, 320 (9th Cir. 1996) (citing 12 U.S.C. §§ 2601, 2602, 2603, 2607).  Any RESPA

12   violation of these types must occur at the time the loan closes.

13       Here, because the type of RESPA violation alleged by Plaintiff must have occurred

14   when Plaintiff's refinance loan closed in 2004, and because Chase Bank did not assume

15   liability for borrowers' claims arising from Washington Mutual's actions undertaken

16   before September 25, 2008, Chase Bank cannot be liable for violating RESPA as it

17   pertains to Plaintiff's refinance loan.  Thus, it is unnecessary at this time for the Court to

18   address whether Plaintiff has pled facts sufficient to state a claim under RESPA or, if he

19   has, whether Plaintiff has alleged facts showing he is entitled to equitable tolling of the

20   applicable statute of limitations.  Accordingly, as alleged against Chase Bank, Plaintiff's

21   Third Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

22       **E.    Plaintiff's Fourth Cause of Action to Set Aside and Vacate the Trustee**

23             **Sale of His Property and to Cancel the Trustee's Deed Upon Sale**

24       Plaintiff claims Chase Bank conducted the trustee sale of his property in violation

25   of California Civil Code section 2924 et sequens.  (Dkt. No. 1 ¶ 84.)  In conjunction with

26   this claim, Plaintiff asserts the trustee's deed upon sale should be canceled to avoid

27   irreparable injury to Plaintiff pursuant to California Civil Code section 3412.  (Id. ¶ 87.)

28       In support of its Motion to Dismiss, Chase Bank asserts that Plaintiff failed to

allege that he "can fully and unconditionally tender the amount owing under the deed of trust, or the means by which Plaintiff will accomplish such payment, as required by California Law" to state a claim for cancellation under section 3412. (Dkt. No. 3-1 at 8.)

Plaintiff provides no argument in opposition but generally requests leave to amend. (Dkt. No. 15 at 12.)

In its Reply, Chase Bank argues Plaintiff's Fourth Cause of Action should be dismissed for failure to oppose Chase Bank's Motion as to this claim. (Dkt. No. 16 at 8.)

Because Plaintiff provides no argument in opposition to Chase Bank's Motion, Plaintiff's Fourth Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

### F.      Plaintiff's Fifth Cause of Action for Unjust Enrichment

Plaintiff alleges that Washington Mutual and Chase Bank were unjustly enriched by "marketing sub-prime loans via inflated property appraisal(s), charging Plaintiff and countless other borrowers inflated notary and various other non-disclosed fees, and through the unlawful foreclosure of Plaintiffs [sic] property . . . ." (Dkt. No. ¶ 89.)

Chase Bank seeks dismissal of this claim because "Plaintiff fails to set forth any facts as to what fees were charged." (Dkt. No. 3-1 at 16.)  Moreover, Chase Bank asserts it cannot be held liable for any amounts claimed as to actions undertaken by Washington Mutual pursuant to the Purchase and Assumption Agreement.  (Id.)

Plaintiff provides no argument in opposition but generally requests leave to amend. (Dkt. No. 15 at 12.)

In its Reply, Chase Bank argues Plaintiff's Fifth Cause of Action should be dismissed for failure to oppose Chase Bank's Motion as to this claim. (Dkt. No. 16 at 8.)

Because Plaintiff provides no argument in opposition to Chase Bank's Motion, Plaintiff's Fifth Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

### G.      Plaintiff's Sixth Cause of Action for Promissory Estoppel

Plaintiff alleges Chase Bank "promised, assured and represented to Plaintiff that the foreclosure sale of his property had been suspended due to Plaintiffs [sic] participation in defendants [sic] 'Loan Modification' Program." (Dkt. No. 1 ¶ 91.)  Specifically, Plaintiff

1    alleges that Chase Bank "assured and represented to Plaintiff that the sale of the Subject

2    Property would continue to be suspended pending approval of his 'Loan Modification.'"

3    (Id.)  Plaintiff claims Chase Bank "knew, or should have known that Plaintiff would be

4    reasonably induced to rely on Defendants [sic] promise . . . to suspend the foreclosure .

5    . . and not seek alternative financial and/or legal remedies to rescue the property." (Id. ¶

6    92.)  Plaintiff alleges he reasonably relied on Chase Bank's promise and that, as a result

7    of Chase Bank's failure to keep its promise, Plaintiff was "deprived of title to, as well as

8    the quiet use and enjoyment of the Subject Property."  (Id. ¶ 94.)  Plaintiff alleges

9    injustice can be avoided by enforcing Chase Bank's promise.  (Id. ¶ 95.)

10        In its Motion to Dismiss, Chase Bank asserts that, while Plaintiff alleges Chase

11   Bank "promised to stop the foreclosure," Plaintiff "gives no facts as to who made this

12   alleged statement or when it was made, or to whom it was made.  (Dkt. No. 3-1 at 10.)

13        Plaintiff provides no argument in opposition but generally requests leave to amend.

14   (Dkt. No. 15 at 12.)

15        In reply Chase Bank asserts Plaintiff failed to alleged that Chase Bank made a clear

16   promise to Plaintiff.  (Dkt. No. 16 at 9.)

17        Because Plaintiff provides no argument in opposition to Chase Bank's Motion,

18   Plaintiff's Sixth Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

19        **H.    Plaintiff's Seventh Cause of Action for an Accounting**

20        In conjunction with his claim that the sale of his property was unlawful, Plaintiff

21   alleges Chase Bank "received proceeds from the unlawful sale, a portion of which is due

22   to Plaintiff from Defendants."  (Dkt. No. 1 ¶ 97.)  "The amount of money due from

23   Defendants," alleges Plaintiff "is unknown to Plaintiff at this time and cannot be

24   ascertained without an accounting of the proceeds after [t]he sale of the Subject property."

25   (Id. ¶ 98.)  Plaintiff further alleges that he "has demanded an accounting of the

26   amortization schedule and calculated interest for the aforementioned loan modification

27   from" Chase Bank and that Chase Bank has refused to render such an accounting.  (Id.

28   ¶ 99.)

1    In support of its Motion, Chase Bank argues Plaintiff is not entitled to an

2 accounting because he has failed to allege facts demonstrating that Chase Bank owed

3 Plaintiff either a fiduciary duty or a general duty of care, or that the foreclosure itself was

4 improper.  (Dkt. No. 3-1 at 10.)

5    Plaintiff provides no argument in opposition but generally requests leave to amend.

6 (Dkt. No. 15 at 12.)

7    In its Reply, Chase Bank argues Plaintiff's Seventh Cause of Action should be

8 dismissed for failure to oppose Chase Bank's Motion as to this claim.  (Dkt. No. 16 at 9-

9 10.)

10    Because Plaintiff provides no argument in opposition to Chase Bank's Motion,

11 Plaintiff's Seventh Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

12    **I.    Plaintiff's Eighth Cause of Action for Breach of Implied Warranties in**

13    **Violation of the CLRA**

14    Plaintiff alleges Chase Bank violated the California Consumers Legal Remedies Act

15 ("CLRA") in that it "carried out a scheme designed to deliberately cheat large numbers of

16 consumers out of their homes, and individually, through small to moderate sums of

17 money."  (Dkt. No. 1 ¶¶ 101, 105.)  Plaintiff then states generally that

18    Defendants . . . have violated the CLRA, which . . . provides . . . the
   following unfair methods of competition and unfair or deceptive acts or
19    practices undertaken by any person in a transaction intended to result or
   which results in the sale or lease of goods or services to any consumer are
20    unlawful: . . . i) Representing that the services have characteristics or benefits
   which they do not have; . . . ii) Advertising services with the intent not to
21    provide them as advertised.

22 (Id. ¶ 104.)

23    Chase Bank seeks dismissal of this claim, primarily arguing that foreclosure is not

24 governed by the CLRA.  (Dkt. No. 3-1 at 18.)  Specifically, Chase Bank argues that

25 Plaintiff's refinance loan and the potential loan modification are not "goods" or "services"

26 as defined by the CLRA.  (Id.)  Chase Bank further argues that, even if the CLRA applied,

27 Plaintiff has failed to allege facts showing that Chase Bank's alleged actions are likely to

28 deceive a reasonable consumer.  (Id.)  Lastly, Chase Bank asserts that Plaintiff has failed

to cite to any authority permitting Plaintiff to proceed with a private cause of action under the CLRA.  (Id.)

Plaintiff provides no argument in opposition but generally requests leave to amend. (Dkt. No. 15 at 12.)

In its Reply, Chase Bank argues Plaintiff's Eighth Cause of Action should be dismissed for failure to oppose Chase Bank's Motion as to this claim.  (Dkt. No. 16 at 8.)

Because Plaintiff provides no argument in opposition to Chase Bank's Motion, Plaintiff's Eighth Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

> **J.**  **Plaintiff's Ninth and Eleventh Causes of Action for Violations of California's UCL**

In his Ninth Cause of Action, Plaintiff alleges Washington Mutual and Chase Bank violated California's Unfair Competition Law, California Business and Professions Code section 17200 et sequens ("UCL"), in that they "have a pattern and practice of defrauding borrowers through the personal misuse of their real property assets."  (Dkt. No. ¶ 107.) Specifically, Plaintiff avers that Washington Mutual and Chase Bank "have absconded with ill gotten gains, defrauding not only Plaintiff but similarly situated homeowners, by perfecting foreclosure on residential properties without any legal authority whatsoever to do so."  (Id. ¶ 108).  These practices, alleges Plaintiff,  are "unfair, unlawful, immoral, unethical, and in violation of the law."  (Id. ¶ 110.)  As such, "Plaintiff prays for the full disgorgement of monies and profits and the value of converted assets according to proof" and "an injunction order enjoining and restraining Defendants . . . from engaging in or performing any act to deprive Plaintiff of ownership or possession of their real property . . . ."  (Id. ¶¶ 111-112.)

In his Eleventh Cause of Action, Plaintiff claims Chase Bank engaged in unfair and deceptive acts, "as it is an unfair practice to misrepresent to Plaintiff . . . in detrimental reliance to enter into its 'Loan Modification' program, and to thereafter misrepresent to consumers including Plaintiff, that the foreclosure of their home(s) had been stayed when the true facts are that they were proceeding with foreclosure nonetheless."  (Id. ¶ 123.)

Chase Bank seeks dismissal of these claims, arguing Plaintiff lacks standing to bring an action for violation of the UCL because Plaintiff failed to allege facts demonstrating he "suffered an injury in fact, or even that he lost any money or property as a result" of Chase Bank's alleged conduct.  (Dkt. No. 3-1 at 12.)

As to Plaintiff's Eleventh Cause of Action, Chase Bank asserts Plaintiff failed to allege facts sufficient to state a claim for the common law tort of fraud, in that Plaintiff failed to "state with the requisite specificity the 'times, dates, places, benefits received, and other details of the alleged fraudulent activity.'"  (<u>Id.</u> at 14.)  Chase Bank also argues that "Plaintiff also fails to adequately allege the remaining elements [of a fraud claim], including knowledge of falsity . . . that Defendants intended to induce Plaintiff into relying on any representation . . . that Plaintiff relied on any representation by Defendants . . . or any resulting damage."  (<u>Id.</u>)

Plaintiff provides no argument in opposition but generally requests leave to amend.  (Dkt. No. 15 at 12.)

In its Reply, Chase Bank argues Plaintiff's Ninth Cause of Action should be dismissed for the reasons stated in its Motion to Dismiss and Plaintiff's Eleventh Cause of Action should be dismissed for failure to oppose Chase Bank's Motion as to this claim.  (Dkt. No. 16 at 10-11.)

Because Plaintiff provides no argument in opposition to Chase Bank's Motion, Plaintiff's Ninth and Eleventh causes of action are **DISMISSED WITH LEAVE TO AMEND**.

### K.      Plaintiff's Twelfth Cause of Action for Negligence

In his Twelfth Cause of Action, Plaintiff alleges that Washington Mutual and Chase Bank "owed a duty of care to Plaintiff as Mortgage lenders and holders of Plaintiffs [<u>sic</u>] note and Deed of Trust."  (Dkt. No. 1 ¶ 129.)  Plaintiff then alleges generally that Washington Mutual and Chase Bank breached that duty and that their breach was a direct and proximate cause of Plaintiff's damages.  (<u>Id.</u> ¶¶ 130-131.)

In its Motion to Dismiss, Chase Bank argues it owes no cognizable legal duty to

09cv2838

Plaintiff as a lender engaged in securing its interest in loan collateral and that Plaintiff alleges no specific facts supporting the remaining elements of a negligence claim.  (Dkt. No. 3-1 at 15.)

Plaintiff provides no argument in opposition but generally requests leave to amend. (Dkt. No. 15 at 12.)

In its Reply, Chase Bank argues Plaintiff's Twelfth Cause of Action should be dismissed for failure to oppose Chase Bank's Motion as to this claim.  (Dkt. No. 16 at 8.)

Because Plaintiff provides no argument in opposition to Chase Bank's Motion, Plaintiff's Twelfth Cause of Action is **DISMISSED WITH LEAVE TO AMEND**.

**L.      Plaintiff's Thirteenth Cause of Action for Declaratory Relief**

Plaintiff alleges "[a]n actual controversy has arisen and currently exists between Plaintiff and Defendants" in that "Defendants herein 'blindsided' him by foreclosing on his home when they expressly told him they would not do so while he was negotiating a 'loan modification.'"  (Dkt. No. 1 ¶ 134.)  Plaintiff further alleges he "desires a judicial determination . . . as to whether the foreclosure is valid and enforceable."  (Id. ¶ 135.)

Citing California law, Chase Bank argues this claim should be dismissed because Plaintiff does not seek a judicial determination of the parties' respective rights and obligations as they relate to the future conduct of either party.  (Dkt. No. 3-1 at 16.)

In opposition, Plaintiff cites to the federal Declaratory Judgment Act and various federal cases addressing declaratory relief.  Plaintiff, however, offers no argument applying the law he cites to the factual allegations in his Complaint.

In reply, Chase Bank asserts Plaintiff's declaratory relief claim duplicates Plaintiff's other causes of action alleging Chase Bank's foreclosure was improper.  (Dkt. No. 16 at 6.)

"A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so."  Seattle Audubon

09cv2838

1 Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201).  The

2 Declaratory Judgment Act "is intended to allow earlier access to federal courts in order to

3 spare potential defendants from the threat of impending litigation." Id. (citing Skelly Oil

4 Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950)).

5       "Declaratory judgment actions are justiciable if 'there is a substantial controversy,

6 between parties having adverse legal interests, of sufficient immediacy and reality to

7 warrant the issuance of a declaratory judgment.'" Seattle Audobon Soc., 80 F.3d at 1405

8 (citing Nat'l Basketball Ass'n v. SDC Basketball Club, 815 F.2d 562, 565 (9th Cir.1987)).

9       Here, the alleged controversy has reached a stage where a party may seek coercive

10 relief.  Indeed, Plaintiff asserts twelve other causes of action, alleging he is entitled to

11 coercive relief in the form of damages, rescission, and injunction.  Plaintiff does not allege

12 the threat of an impending foreclosure; he alleges claims based on a completed foreclosure.

13 In essence, Plaintiff's claim for declaratory relief is moot.   Accordingly, Plaintiff's

14 Thirteenth Cause of Action is **DISMISSED WITHOUT LEAVE TO AMEND.**

15       **M.**    **Plaintiff's Requests for Temporary Restraining Order and Preliminary**

16             **Injunction**

17       At the end of his Complaint, Plaintiff

18     applies for a Temporary Restraining Order ["TRO"] and Order to Show
    Cause re: Preliminary Injunction enjoining Defendants . . . from spending,

19     transferring, disbursing, encumbering, or otherwise dissipating any real or
    personal property without prior Court approval, including but not limited

20     to any money or other consideration that Defendants have received from
    Plaintiff for any loan, refinance transaction or appraisals made with

21     Defendants . . . and any money or other consideration Defendants have
    received from Plaintiff as a result of their "Loan Modification Scheme"

22     including but not limited to money or other considerations obtained from
    borrowers, lenders, or other entities for the transaction.

23 (Dkt. No. 1 ¶ 140.)

24       Plaintiff bases his requests on the allegations in his First, Second, Third, Ninth,

25 Tenth, and Eleventh causes of action.  (Dkt. No. 1 ¶ 140.)  Plaintiff also alleges, for the

26 first time in his Complaint, that defendants have violated the Home Ownership and

27 Equity Protection Act ("HOEPA") and the Federal Trade Commission Act ("FTCA").

28 (Id.)

1    Because this Court dismisses each of Plaintiff's claims as discussed above, and

2  because Plaintiff fails to allege any facts demonstrating that Chase Bank has violated

3  either HOEPA or the FTCA, Plaintiff's requests for a TRO and an "OSC Re: Preliminary

4  Injunction" are **DENIED WITHOUT PREJUDICE**.

5                                    <u>CONCLUSION</u>

6    After careful consideration of the parties' submissions, and for the foregoing

7  reasons, **IT IS HEREBY ORDERED** that:

8         1.    As alleged against Chase Bank, Plaintiff's First, Second, Third, and

9               Thirteenth causes of action are **DISMISSED WITHOUT LEAVE TO**

10              **AMEND**;

11        2.    Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, and

12              Twelfth causes of action are **DISMISSED WITH LEAVE TO AMEND**;

13        3.    Plaintiff's requests for a TRO and "OSC Re: Preliminary Injunction" are

14              **DENIED WITHOUT PREJUDICE**;

15        4.    Plaintiff may file an amended complaint **no later than November 16,**

16              **2011**.[5]

17
   Dated: October 5, 2011
18                                          HON. JOHN A. HOUSTON
19                                          United States District Judge

20

21

22

23

24

25

26

27
   ───────────────────
        [5] While Chase Bank moved to dismiss Plaintiff's Tenth Cause of Action, the Court
28  notes Chase Bank was not named as a defendant in that cause of action.  The Court did
   not address it.

                                          24