SEPEHR TORABI
3253 Caminito East Bluff, #26
La Jolla, California 92037
Phone: (858) 518-1515

Plaintiff, In Pro Se

**FILED**

NOV 1 6 2011

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SEPEHR TORABI

   Plaintiff / Claimant

vs.

WASHINGTON MUTUAL BANK
JP MORGAN CHASE BANK, and,
DOES 1 through 10 INCLUSIVE

Defendants / Respondents

Case No. 3:09-CV-2838-JAH (BLM)

FIRST AMENDED
VERIFIED COMPLAINT FOR
DAMAGES FOR:

1. To Set Aside and Vacate Trustees Sale
   Under Cal. Civil Code § 3412;

2. No Contract

3. Promissory Estopple;

4. Quiet Title;

JURY DEMANDED

Plaintiff brings this action against Washington Mutual Bank, JP Morgan Chase Bank, NA ("Chase") and Does 1 through 10 for selling Plaintiff's Property at a trustee's sale and depriving Plaintiff of his residence without any lawful claim to the Property. Plaintiff seeks to clear his title of Chase's claim.

Additionally, Plaintiff seeks injunctive relief and disgorgement under Cal. Bus. &

Professions Code § 17200 et seq. and implementing the California Private Attorney General Statute.

## JURISDICTION

There is diversity of citizenship between Plaintiff and Defendant Chase, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C. 1332(a). Declaratory relief is authorized under 28 U.S.C. 2210.

## PARTIES

1. Plaintiff, SEPEHR TORABI, is an individual, and is and at all times herein mentioned was a resident of the County of San Diego, State of California within the jurisdictional boundaries of this Court. Plaintiff is the owner of real property commonly known as and located at 3253 Caminito East Bluff, #26, La Jolla, California 92037, (hereinafter the "Subject Property"), which is situated within the jurisdictional boundaries of this Court.

2. Defendant, WASHINGTON MUTUAL BANK, (hereinafter referred to as "WAMU"), at all times herein mentioned was doing business in the County of San Diego, State of California as a Mortgage lender, and this Defendant alleged to be the beneficiary under Plaintiffs note and ordered and perfected the foreclosure of Plaintiffs real property.

3. Defendant, CHASE BANK, (hereinafter referred to as "CHASE ") , at all relevant times herein mentioned was doing business in the County of San Diego State of California, and this Defendant alleges to be the beneficiary under Plaintiffs Note and in concert with defendant WAMU, perfected the Foreclosure of Plaintiffs property.

4. Defendants Does 1-10, inclusive, are sued under fictitious names. When their true names and capacities are known, Plaintiff will amend this Complaint and insert their names and

2

capacities. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and proximately thereby caused the injuries and damages to plaintiff as hereinafter alleged, or claims some right, title, estate, lien, or interest in the residence adverse to Plaintiff's title and their claims constitute a cloud on Plaintiff's title to the property, or participated in unlawful or fraudulent acts that resulted in injury to Plaintiff's person or property.

5.   Upon information and belief, Does 1-4 claim to have become successors in interest to the Subject Mortgage by virtue of Plaintiff's loan having been made a part of a securitization process wherein certain residential mortgages and the promissory notes based thereon were securitized by aggregating a large number of promissory notes into a mortgage loan pool, then selling security interests in that pool of mortgages to investors by way of items called "Secondary Vehicles".

6.   Plaintiff is informed and believes, and upon such information and belief alleges that, at all times herein mentioned each of the Defendants sued herein in relation to the property they claim an interest in was the agent and employee of each of the remaining Defendants thereof and at all times was acting within the purpose and scope of such agency and employment.

7. Plaintiff alleges that Defendants, WAMU, and CHASE, conducted a Trustee Sale and unlawfully perfected foreclosure on Plaintiffs real property commonly known as, and located at, 3253 Caminito East Bluff, #26, La Jolla, California 92037, the same property identified in Exhibit 1, ostensibly to collect the unpaid balance on the Note secured by the security instrument that is identified in Exhibit 1.

## INTRODUCTION

8.   Mortgage Fraud is defined as the intentional misstatement, misrepresentation, or omission by an applicant or other interested parties, relied on by a lender or underwriter to

provide funding for, to purchase, or to insure a mortgage loan. Combating mortgage fraud effectively requires the cooperation of law enforcement and industry entities.

9.   No single regulatory agency is charged with monitoring this crime. The FBI, Department of Housing and Urban Development-Office of Inspector General (HUD-OIG), Internal Revenue Service, Postal Inspection Service, and state and local agencies are among those investigating mortgage fraud.

"The potential impact of mortgage fraud on financial institutions and the stock market is clear. If fraudulent practices become systemic within the mortgage industry and mortgage fraud is allowed to become unrestrained, it will ultimately place financial institutions at risk and have adverse effects on the stock market." -Chris Swecker, former FBI Assistant Director, Criminal Investigative Division, Introductory Statement: House Financial Services Subcommittee on Housing and Community Opportunity, 7 October 2004.

10.   During the past decade, Washington Mutual Bank (WaMu) and JPMorgan Chase Bank (Chase) abandoned traditional underwriting practices and contributed to a frenzy of real estate speculation by issuing predatory loans that ultimately lowered property values in the United States by 30-60%. Kerry Killinger, CEO of Washington Mutual, took home more than $100 million during the seven years he steered WaMu into bankruptcy. In March 2011, the FDIC filed a sixty-page complaint against Killinger and Stephen Rotella, a former WaMU COO, alleging gross negligence, breach of fiduciary duty, and fraudulent conveyance. *FDIC v. Kerry Killinger, Stephen Rotella, et. al.,* Case No. 2:11-cv-00459 USDC (WD WA Mar. 16, 2011) .

11.   WaMu issued millions of predatory loans between 2001 and 2008 with the knowledge that borrowers, including Plaintiff, would default and lose their homes. WaMu filled in fictitious figures on Plaintiff's loan application so that it would meet underwriting standards and WaMu could earn fees when it sold the loan to investors and then acted as servicer without any risk of loss when the borrower defaulted. Such blatant, systematic, and inexcusable acts of

fraud constituted a criminal enterprise. As a direct, foreseeable result of WaMu's illegal behavior, over a million families will lose their homes if the courts do not intervene and permit the borrowers to conduct discovery in order to determine who owns their loans.

### Application of Unique Law to this Case is Warranted

12.   Cal Bus Prof Code 17200, is perhaps the only mechanism that can both force the disgorgement and enjoin further conduct which loots California residents of hundreds of millions of dollars annually by Wamu/Chase alone. Accordingly, Plaintiff, absent being forced to devote his resources to investigating the fraud perpetrated at the inception of the financing triggered by the second stage fraud.

This second stage fraud occurred when Wamu/Chase claimed they were sending Plaintiff a new revised mortgage modification and one day later sold his home (to themselves) in a Trustee Sale.

13.   The fact that there was more than $100,000.00 of equity in property was clearly a motivating factor but as evidenced in the admission by Wamu detailed in the 300 page complaint filed against WAMU by its stockholders, that mortgages were not the core of Wamu's profit center, rather, mortgage fraud was the core. And such fraud has served as the key to the Court house for Wamu.

14.   Mortgage fraud is a relatively low-risk, high-yield criminal activity which is accessible to many, however Plaintiff asserts that Wamu took it to a new level rendering fraud the key to generating fees and placing homeowners like Plaintiff on a track to foreclosure from day one. How could a large powerful bank like WAMU place homeowners on a path to foreclosure form the date of financing:

a)  First, they issued fraudulent property appraisals as detailed in the admissions on ABC by the WAMU's top officers and directors and as detailed in the 300 page complaint aforementioned.

b)      Second, in an attempt to strip issuing the loans Wamu would routinely violate RESPA, TILA, together with inflating the Notary costs by 900%.

For example, Cal.Gov.Code § 8211, I pertinent part,states that fees charged by a notary public for the following services shall not exceed the fees prescribed by this section:

> "For taking an acknowledgment or proof of a deed, or other instrument, to include the seal and the writing of the certificate, the sum of ten dollars ($10) for each signature taken."

15.  Despite the above, Defendants charged Plaintiff 100.00 for his signature. This alone, sought under 17200 for disgorgement and injunction from further acts trumps the amount in controversy in the foreclosure action (even assuming the entire note was valid, due and owing by more than 100,000,000.00 million dollars.)

/././

/././

## STATEMENT OF FACTS

17.  Plaintiff realleges and incorporates by reference all of the paragraphs as fully set forth above.

18.  The property which is the subject to these proceedings is a condominium unit located at 3253 Caminito Eastbluff unit # 26 La Jolla CA APN #346-801-19-26 Plaintiff's primary residence since June 2006 and was originally financed by Suntrust Mortgage.

19.     Thereafter, Plaintiff refinanced with Washington mutual Bank with the principal balance of $375,000.00 in a 5 year ARM a mortgage back security note.

This note subsequent to the Washington mutual bankruptcy has developed into an painful ending for many distressed home owner and exposed the plaintiff to their predatory lending practice to a bad faith loan modification and finally an illegal foreclosure that brings me to the power of legal system to restore faith in our Banking system and protecting the right of the home owner against

6

greedy institutions depriving us of our very fundamental rights.

### FIRST CLAIM FOR RELIEF
**(Set Aside and Vacate Trustee's Sale**
**Cancellation of Deed of Trust**
**California Civil Code § 3412)**

20. Plaintiff's incorporates ¶¶ 1-61, as fully set forth above. This claim is against Defendants, CHASE , and, CRC.

21. Plaintiff is informed and believes, and upon such information and belief alleges that Defendants, CHASE, and, conducted the trustee's sale in violation of *California Civil Code* § 2924 et seq. As a direct and proximate result, Plaintiff has been wrongfully deprived of title to the Subject Property and of its beneficial use and enjoyment.

22. Defendant, BANK claims and interest in the Subject Property based upon the Trustee's Deed Upon Sale.

23. The claim of Defendant, to the Subject Property is without any right or merit. Although the Trustee's Deed Upon Sale appears valid on its face, it is invalid and of no force and effect, for the reasons set forth hereinabove.

24. As a direct and proximate result of the improperly, tortiously, unfair, unlawful Trustee's sale of the Subject Property, by Defendant, CHASE, and the subsequent execution and recording of the Trustee's Deed Upon Sale, Plaintiff has been deprived of title to, as well as the use and enjoyment of the Subject Property, all to Plaintiffs injury. If the Trustee's Deed Upon Sale is not delivered and canceled, serious irreparable injury will continue to result to Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

### SECOND CLAIM FOR RELIEF

**(No Contract)**

67. Plaintiff's incorporates ¶¶ 1-66, as fully set forth above. This claim is against Defendant, CHASE

68. Plaintiff is informed and believes that WaMu routinely approved predatory real estate loans to unqualified buyers from 2004 through 2007 and implemented unlawful lending practices by encouraging brokers and loan officers to falsify borrowers' income and assets to meet underwriting guidelines when borrowers were not qualified.

69. Plaintiff followed WaMu's instructions when he submitted a Uniform Residential Loan Application to WaMu that contained only his basic identifying information, such as name, address, phone number, social security number, andbank account number. WaMu employees filled out the application.

70. Plaintiff is informed and believes that WaMu pre-sold Plaintiff's mortgage. Immediately after he signed the Note, WaMu transferred all of its interest in the Note to an investment bank that bundled Plaintiff's Note with numerous other residential mortgages into residential mortgage-backed securities("RMBS") which were structured into synthetic collateralized debt obligations("CDOs") and sold to investors in Pool Number 432551 identified in Standard &Poor's registry as CUSIP # 31379XQC2.

71. Washington Mutual Bank, the sponsor of the securitization transaction, was a wholly owned subsidiary of Washington Mutual Inc. Securitization of mortgage loans was an integral part of Washington Mutual Inc.'s management of its capital. It engaged in securitizations of first lien single-family residential mortgage loans through Washington Mutual Mortgage Securities Corporation, as depositor, beginning in 2001. WaMu acted only as a servicer of Plaintiff's loan.

72. WaMu failed to disclose to Plaintiff that its economic interests were adverse to Plaintiff and that WaMu expected to profit when Plaintiff found it impossible to perform and

defaulted on his mortgage.

73. A necessary element in the formation of an enforceable contract under the common law is a *meeting of the minds*. Two or more parties must share some expectation that a future event will occur. Plaintiff expected that he would borrow money from WaMu, he would pay it back, and then he would own the Property. WaMu expected that Plaintiff would borrow money, he would not be able to pay it back, and then WaMu or the investors would own the Property. Since there was no shared expectation—no meeting of the minds—no contract was formed between Plaintiff and WaMu.

74. In addition to WaMu's expectation that Plaintiff would lose title to the Subject Property through foreclosure, WaMu anticipated transferring the Note to investors immediately after Plaintiff signed the Note. Plaintiff is informed and believes that WaMu purchased credit default insurance so that WaMu would receive the balance on the Note when Plaintiff defaulted, in addition to any money WaMu received when it securitized the Note.

75. Not only did WaMu dispense with conventional underwriting practices in 2006, it also paid premium fees and other incentives to mortgage brokers who signed up the riskiest borrowers. Fueled by spiraling profits to Chase, WaMu, and other bankers, common law principles of contract formation, customary underwriting practices, and statutory procedures for transferring interests in real property, including the recordation of transfers of interests in real property, disintegrated and the system collapsed.

76. WaMu expected that Plaintiff would not perform as merely one victim in a scheme in which:

(1) WaMu's fees as servicer would be greater as the number of loans increased;

(2) WaMu would recover the unpaid balance of Plaintiff's loan through credit default insurance when Plaintiff inevitably defaulted; and

/././

(4) All risk of loss in the event of Plaintiff's default would be borne by investors, not WaMu as the servicer.

77. Plaintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and non-disclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract was void *ab initio*.

78. No enforceable contract was formed between Plaintiff and WaMu, so his DOT and Promissory Note were not assets of WaMu that could be acquired or assumed by Chase from the Federal Deposit Insurance Corporation (FDIC) as receiver after WaMu was closed by the Office of Thrift Supervision on September 25, 2008.

79. Chase Bank had no right to receive payment under Plaintiff's mortgage loan and had no right to foreclose on the Subject Property. Plaintiff does not seek rescission of the contract in this First Amended Complaint, instead Plaintiff alleges that the contract was void *ab initio*.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

### (Promissory Estoppel)

81. Plaintiff's incorporates ¶¶ 1-80, as fully set forth above. This claim is against

Statement of facts

82.The plaintiff received a notice of default on 1/29/09 as a result of late payment and a notice of sale on 5/20/09. Shortly after Plaintiff entered into a Loan Modification Program with the Defendants which was suppose to stop and postpone the sale date as per defendants agreement. Due to defective documents provided by the defendants the process was delayed beyond the control of the plaintiff and the defendants conducted a trustee sale an foreclosed on the property

despite their agreement to halt the sale while in the Loan modification period.

On or about August of 2008, Plaintiff began to fall behind on his monthly mortgage payments to Washington Mutual due to a financial hardship he had encountered. On or about May 1, 2009, Plaintiff determined he was approximately $12,000.00 in arrears on his mortgage payments.

Given the relatively small amount his mortgage was in arrears Plaintiff approached a longtime business associate, Robert Makie, (Declarations Attached) and upon explaining his current financial condition Robert volunteered to loan Plaintiff up to $20,000.00 to cure his delinquent mortgage payments and help him through the economic hardship he had suffered.

On or about Feb 2, 2009, Plaintiff received a "Notice of Default" and on May 20 2009 a "Notice of Trustee Sale" from Defendant California Reconveyance Company. These notices named Defendant California Reconveyance Company as Trustee, Plaintiff as Trustor, and Washington Mutual Bank, FA as Beneficiary, pursuant to a deed of trust recorded 05/17/2004 Book, Page, Instrument 2004-0444813 of the official records of the Office of the Recorder San Diego County.

At this time the Plaintiff also received correspondence from WaMu/Chase which stated:

"As your mortgage company, we're ready to do whatever we can to help our Chase and WaMu customers through these challenging economic times."

The correspondence from Chase instructed Plaintiff to "Call the La Mesa Chase Home Ownership Center" and a loan Advisor will work with you  to explore all options available, including government programs designed to keep you in your home."

After receiving the notice of default and trustee sale from California Reconveyance Company along with the correspondence from Wamu/Chase Plaintiff started a workout plan with Wamu/Chase.  Plaintiff began to work with Wamu/Chase's "Loan Advisor" and was asked to

complete an application, submit a hardship letter, and provide various financial information detailing his current financial position.

Upon submitting all the documents as required by Wamu/Chase, Plaintiff's "Loan Advisor" informed him that Wamu/Chase would stop the foreclosure process while they qualified Plaintiff for a modified payment plan.

Plaintiff specifically instructed the loan advisor that if the Loan Modification did not work he had a business associate willing to loan him sufficient funds to cure the default.  In response Plaintiff was informed by the "Loan Advisor" that given the relatively small amount of Plaintiff's arrears, approximately $12,000.00, that obtaining a modified payment plan would be easy.

Based upon the communications Plaintiff had with the Wamu/Chase "Loan Advisor" Plaintiff contacted his business associate and informed him that he would not need to borrow the funds he had agreed to loan him as Wamu/Chase had agreed to modified the terms of the mortgage and had also halted both the foreclosure proceeding and trustee sale.

On or around June 16, 2009 Plaintiff received a loan modification contract from Wamu/Chase which would extend the term of his loan through June 01, 2034. The contract was very generic in terms in that it did not contain:

a)   Specifics as to the modified loan terms;

b)   An explanation of what amortization schedule Chase used to calculate there proposed modified loan payment;

c)   The correct details of the plaintiff including the marital status stated as married where he is no longer married and the divorce is recorded on the county recorder office. Marital status is a very important factor in accordance with a 30 Year financial obligation and the following

recording on the deed of trust .

d)  The loan modification was defined and desingned with the help of the federal government to assist  borrowers who can not afford their current mortgage payments. As stated in the above mentioned contract  my payment would  increase from $1,289.00 to $1,853.70 a nearly  50% increase in the monthly mortgage payment that I already had a hard time with.

That is not by any means helpful to the Plaintiff, despite Chase/WAMU promise on offering help to the borrwers through these "tough economic times".

The Modification agreement did contain an ambiguous explanation of the proposed new payment being $1,853.70 along with the following statement: EXHIBIT - M

"Upon the Agreement becoming binding and effective, the principal and interest amount of your monthly payments will be $1,853.70.  EXHIBIT M page-2 "Your first payment including taxes and insurance (if applicable) is due August 1, 2009, the total payment amount is $1,853.70. This payment amount is subject to change upon escrow analysis if applicable".

Property taxes and insurance are about $600 per month for this property that would be an additional 40% variation/increase from the stated amount. There was no clarification on these items anywhere on the contract. Plaintif immediately tried to contact the Home Owner's Assistance Department per number provided at the bottom of the contract (866-923-8937). After numerous attempts he was finally able to talk to an home retention specialist. The only answer the represntative was able to provide was to  take a message and try to forward it to the appropriate representaive so they can contact Plaintiff with the explaination of the terms, which they never did.

Conflicting timelines and dates beyond the scope of the contract made the deadline imposible to meet.

The loan modification contract, with incorrect information, Plaintiff received from Wamu/Chase were dated June 11, 2009, and came with instructions for Plaintiff to sign and notarize the documents and return them to Defendants Wamu/Chase no later than June 19, 2009, however Plaintiff did not receive the documents from Defendants until June 16, 2009. This means Defendants gave Plaintiff only 2 days in which to review, sign and notorize the  Wamu/Chase erroneous contracts.

Attached to the loan modification contract there were notary forms and two additional documents called a) NOTICE OF NO ORAL AGREEMENT  b) ERRORS AND OMMISIONS COMPLIANCE AGREEMENT. Ironically both of these documents are pre dated as JULY 1 2009 which is 11 days after the deadline defined to have the contracts signed notarized and returned to WAMU. Erroneous dates on both the  "ERRORS AND OMMISSIONS COMPLIANCE AGREEMENT "  form accompanied by a "NOTICE OF NO ORAL AGREEMENT" where there have been numerous agreements and errors next to a notarized and binding agreement for 30 years  is not only unlawful it also raises suspision towards a sequence of deceptive practices by Defendant.

Due to short deadlines and factual errors included in the docuements Plaintiff could not sign the docuements by the deadline due to Wamu/Chase negilance and descrepensies which he had notified Defendant of the problems.    Plaintiff contacted WaMu/Chace again to inform of  contract defencies.  At Plaintiff again informed Wamu/Chase's representative that beside the deadline he was faced with he had additional concerns with the documents Wamu/Chase had sent him. Plaintiff explained to the Wamu/Chase representative that the concerns he had included:

a)    A request for more specific information about the terms of the proposed loan modification;

b)   Clarification of how the interest rate in Wamu/Chase's proposed Loan

Modification was amortized and how Wamu/Chase calculated the new loan payments they

wanted Plaintiff to pay;

c)   That the new proposed monthly payment terms were unclear as to whether they

included taxes and insurance as well as principal and interest;

d)   How Wamu/Chase determined an increase in the monthly payment of nearly 50

percent would benefit Plaintiff;

Given these and the conflicting dates and misleading facts  Plaintiff voiced to Wamu/Chase

about the loan modification documents Wamu/Chase agreed to extend the deadline to the end of

July.

Due to his increased apprehension Plaintiff at this time asked a business associate of his named

Martin Esehaghi  to help him along his side through the loan modification process and to act as a

third party consultant, whereas Mr. Esehaghi had the knowledge and capability to negotiate on

Plaintiffs behalf.

On July 15, 2009 I met with Mr. Esehaghi to discuss the status of his loan modification.  At that

time Mr. Esehaghi informed Plaintiff that earlier in the day he had spoken to a Wamu/Chase

bank representative named Scott who worked in Wamu/Chase's home retention department. Mr.

Esehaghi informed Plaintiff that he had been told by Scott that the bank was reviewing the loan

modification paperwork he had previously provided Wamu/Chase.

On July 20, 2009, Plaintiff again spoke to Mr. Esehaghi about the loan modification and was told

the he had spoken to Stephanie at Wamu/Chase that day at 4:57 PM and was told by

15

Stephanie that my loan was NOT in active foreclosure and further informed Plaintiff that

Stephanie from Wamu/Chase needed additional financial worksheets from him faxed to

Wamu/Chase for further review.  Mr. Esehaghi concluded his conversation by assuring Plaintiff

that during his July 20, 2009 phone conversation with Stephanie she TWICE confirmed that

Wamu/Chase was not pursuing foreclosure on the Subject Property and Wamu/Chase had no

plans to sale the Subject Property at that time. In addition to Mr. Esehaghi, Plaintiff also

continued communicating directly with various repensatives in Wamu/Chase's home retention

department who confirmed the same, that was no sale of bubject property pending.

On or about July 10, 2009 Plaintiff was told by his "Loan Advisor"  at Wamu/Chase, that

Wamu/Chase would be sending him a new financial evaluation package as part of the process of

correcting the deficiancies and payment .

Plaintiff was also told by the Loan Advisor once again that his loan would be, "kept in the active

negotiation phase and therefore Wamu/Chase would not pursue foreclosure or home sale until

they determine and clarify the issues."

On or about July 22, 2009, Plaintiff was informed by Mr. Michael Alba ( WAMU'S rep at

the La Mesa CA office)  that after his return from his vacation he has followed the case and

informed the plaintiff : " That based on the banks own conversation log, and progress log,

Wamu/Chase had sent Plaintiff a request for additional documentation on July 22, 2009."

Further, Plaintiff was informed by Wamu/ Chase's home retention department that the

timeline set out within the loan modification package he had been sent would be extended to July

30, 2009 because Wamu/Chase had not yet addressed the concerns Plaintiff had raised about the

loan modification documents he received.

By June 30, 2009, (the deadline to sign and return the loan modification document

Wamu/Chase had sent Plaintiff) Wamu/Chase had still not addressed the numerous concerns and
questions Plaintiff had with the loan modification package they had sent him so he attempted to
contact Wamu/Chase to discuss the matter further.  At that time, Plaintiff discovered that on July
23, 2009, the Subject property was sold at auction via a trustee sale and that the purchaser was
none other than Wamu/Chase. This was done by Wamu/Chase even though Plaintiff was still
negotiating a loan modification with the "Loan Advisor",

Additionally, Plaintiff had been asked the day before to send Wamu/Chase additional documents
by Michael Alba and had been informed once again that Wamu/Chase would NOT resume
foreclosure or a trustee sale until such time as the contract defencies were corrected and
presented to the Plaintiff..

Plaintiff did not receive notice by written or verbal notification from Wamu/Chase of their
intent to go forward with a sale of the Subject Property despite the numerous conversations
concerning the loan modification which had taken place just prior to the sales occurrence. and
that Defendants, Wamu/Chase knew or should have known that Plaintiff, and anyone else
similarly situated, would rely upon Wamu/Chase's representations of halting forclosure and sale
under the givin circumstances.

Plaintiff asserts that Wamu/Chase also knew that Plaintiff relied upon
Wamu/Chase's statements, and because Plaintiff relied these statements Plaintiff was materially
mislead. The delays caused by WaMu/Chase and misrepentations by WaMu/Chase demonstrate
bad faith loan modification process therefore causing a breach of the contact and thus causing
great damages to Plaintiff.

Wamu/Chase made numerous statements to Plaintiff, and Plaintiffs third party advocate Martin
Esehaghi, assuring each of them that Wamu/Chase did not intend to foreclosure or sell the

Subject Property in an effort to conceal Wamu/Chase's true intention which was to mislead Plaintiff so that Wamu/Chase could steal the Subject Property thereby benefiting from equity and depiving Plaintiff from the sizable amount of equity the property contained estimated at over $100,000.

Wamu/Chase ill intentions were further demonstrated by the fact Wamu/Chase sold the Subject Property to themselves for $ 393,000.00 when 3 bedroom 2.5 bath properties such as Plaintiff's routinely sell for over $500,000.00 in the neighborhood in which the property is situated.

Further, Wamu/Chase was aware that Plaintiff had the means of curing the relatively small amount he was then in default on the loan, (Approximately $12,000.00) compared to the equity he had in the home, (Approximately $100,000.00) as Wamu/Chase knew of Plaintiff's ability to obtain a personal loan and cure the default if necessary.

Given Wamu/Chase's actions Plaintiff began researching into the legalities of what Wamu/Chase had done to him and discovered that Defendant Washington Mutual had been taken over by Defendant Chase after essentially going bankrupt making billions of dollars of risky home loans.

Plaintiff further discovered the existence of a major share holder class action suit and countless similar testimonies where they have been lured into believing a "workout plan" while the defendant continued to forclose upon the properties despite their verbal and written promises. Numerous examples of cases have been filed against Washington Mutual in the United States District Court in the Western District of Washington at Seattle under case number No. 2:08-md-1919 MJP / Lead Case No. C08-387 MJP in which it is alleged that Washington Mutual's risky loan practice arose after it illegally inflated the value of numerous homes to allow them to lend

excessive amounts of money to homeowners borrowing from them

**FORTH CLAIM FOR RELIEF**

**QUIET TITLE**

**Defendant lacks evidence proving ownership**

83. a) As stated on the Notice of Default dated January 29, (EXHIBIT - D)  California

Reconveyence Company is called the dully appointed trustee for WASHINGTON MUTUAL

BANK FA as beneficiary to the Deed of Trust signed by the borrower on 5/10/2004. The notice

is signed by Karime Arias (Assistant Secretary) for CRC on 1/28/09 attesting to the following

(excerpt from the last paragraph on the said notice of default) EXHIBIT-D

"by reason thereof, the present beneficiary under such deed of trust has executed and delivered to

said trustee , a written declaration and demand for sale, and has deposited with said duly

appointed trustee , such deed of trust and all the documents evidencing the obligations secured

thereby, and has declared and does hereby declare all sums secured thereby immediately due and

payable and has elected and does hereby select to cause the trust property to be sold to satisfy the

obligation secured thereby".

b) On 7/23/09 CRC has preceded to foreclose on the said property as duly appointed trustee for

WAMU 2004 AR-9 and on july 30/2009 CRC has recorded a "TRUSTEE 'S DEED UPON

SALE" EXHIBIT-A with the San Diego county recorder's office as trustee for Wamu 2004 AR-9

(Grantee) to CITI BANK NA as trustee for WAMU 2004 AR-9. Thereby WAMU 2004 AR-9 as

Grantee (last paragraph number page -1). This document is signed by Karime Arias as assistant

19

secretary for CALIFORNIA RECONVEYENCE COMPANY.

c) On MAY 9 2011 (nearly two years after the unlawful forclosure) CRC has recorded yet

another "TRUSTEE'S DEED UPON SALE" EXHIBIT - B with added description in fine print *

"THIS TRUSTEE UPON SALE IS TO CORRECT THE GRANTEE OF TRUSTEE'S DEED

UPON SALE RECORDED  ON 7/30/2009 AS DOCUMENT # 209-0424260* (the previous

filing after foreclosure 7/30/09).

d) In an additional filing on May/ 9/ 2011 Defendant has requested another filing  under

84. CALIFORNIA RECONVEYANCE COMPANY (which has been manually crossed

out and

amended as CHS without any explaination) again signed by Karime Arias, this document is

called: "ASSIGNMENT OF DEED OF TRUST NOTICE" defendant has stated (EXHIBIT C) "

FOR THE VALUE RECIVED the undersigned hereby grants, assigns and transfers to CITI

BANK NA as TRUSTEE for WAMU 2004 AR-9 all the beneficial interests under the certain

deed of trust dated 5/17/2004 executed by SEPEHR TORABI....  the undersigned is Deutsche

Bank NA as trustee for WAMU 2005 AR-2 and is signed by Karime Arias OFFICER for

Deutsche Bank NA as trustee for WAMU 2005 AR-5 BY JPMorgan Chase Bank, National

Association as attorney in fact.

85. Based on the definition of terms described in WAMU 2004 AR-9  excerpt from

perspectus on

page-54 SEC filing. (EXHIBIT - P)  the Borower is definded as trustor, WAMU/WAMU 2004

AR-9 as beneficiary and CALIFIRNIA RECONVEYANCE COMPANY as

TRSUSREE/GRANTEE.

86. If in fact Deutsche Bank NA as trustee for WAMU 2005 AR-2 HAD BEEN THE

NOTE HOLDER/ GRANTEE on the property at the time of foreclosure sale then WAMU 2004-AR-9

would not have the right to foreclose. as in the case  Herrera v Deutsch 5-31-11 Cal 3rd District

Deutsche Bank failed to establish proof of ownership. "Even if we were to construe Brignac's

declaration to state that the Bank substituted CRC as trustee under the 2003 deed of trust, it

would be insufficient to establish CRC is the trustee. A declaration that the Substitution of

Trustee by the Bank made CRC trustee would require admissible evidence that the Bank was the

beneficiary under the 2003 deed of trust and thus had the authority to substitute the trustee. As

explained ante, defendants failed to provide admissible evidence that the Bank was the

beneficiary under the 2003 deed of trust.

Case No. 07-07227-PB7.RS No. KSH-1.United States Bankruptcy Court, S.D. California,  citing

In reHuqgins, 357 B.R. 180, 185 (Bankr.D.Mass. 2006).

California business and professional code 17200

   87.According to the WAMU 2004 AR-9 Perspectus filed on SEC (EXHIBIT P on Page 53-54 )

Trustee is defined as a " third party Grantee" CRC was previously owned by WAMU before

it's fall out and now is owned by JPMorgan Chase but  JPMorgan Chase is not my lender, they

are a sucsessor to some of WAMU's assets therefore creating a coflict of intrest and in biased

position towards the borower violating CAL civil code 17200 in anfair business practice manner.

   88.Furthermore Karime Arias Has signed the NOD as assistant secretary for Califirnia

reconveyens company as trustee for Wamu on 1/27/2009 . (Cal. B&P Code sec. 17200)

Ansanelli v. JPMorgan Chase, 2011 WL 1134451, Case No. CV10-03892 WHA

Karime has  also signed the Trustees deed upon sale on 7/24/2009 on behalf of CRC citibank NA

as TRUSTEE for WAMU 2004-AR-9  attesting in paragraph number 1 EXHIBIT S paragraph- 1

that the GRANTEE herein was the forclosing beneficiary.

89.There is another filing  on the county recorders office by Karime  Ariasn MAY/9/2011

named

90. (ASIGNMENT OF DEED OF TRUST) IMPORTANT NOTICE*  on this document

Karime Arias (officer)  is signing on behalf of Deutsche Bank NA as trustee fo WAMU 2005

AR-2 by JPMorgan  Chase Bank National association to change the Grantee that was recorded

on

Jul/30/2009 aledgedly to correct an error (wrong grantee) .

91.Furthermore the defendant has not provided any evidence or proof showing even the

transfer or assignment of the note from WAMU 2004 AR-9 to Deutsche Bank NA as trustee for

WAMU 2005 AR-2 in the first place.

The original Deed of trust signed by SEPEHR TORABI filed with the San Diego county

recorders office dated 5/17/2004 shows Washington Mutual FA as  It is understood that

JPMorgan Chase in SEP 2008 as sucsessor to the bancrupt Washington Mutual Bank has aquired

some of the assets of the Washington Mutual Bank but without any description of the specific

details on what was aquired. Defendats have not provided any evidence proving their ownership

rights to the subject property.Furthermore the above mention covouluded and erouneus chain of

title prove otherwise.

92.There hasn't been any County recorders office recordings proving any trustee or deed

asigments nor proof that the defendant is in poression of the original note establishing their

ownership rights to the property.

93.Karime Arias has filed  three legally and financially sensitive documents represnting

and or employed by at least five of the largest finacial and intenationally recognized organizationst In two of the County recodrers office recordings ,TRUSTEE'S DEED UPON SALE one filed on 5/9/2009 EXHIBIT A another indentical TRUSTEE'S DEED UPON SALE on MAY/9/2011 that are in cotradiction with one another. This is in the essence of a document which it's soul purpose is to define who is the owner , has control or is in posession of the evidence proving ownership rights to the plaintiffs propery in question. Defendant not only have not provided evidence of such right they in their own filings proven that the forclosure and following TRUSTEE'S DEED UPON SALE was illegal and invalid.  In addition to this huge discrepency in the chain of title and alegded assignments Karima Aria under the last paragraph of the notice of default EXHIBIT -D

96.On 1/27/09 attested that not only written notices but also the deed of trust and all the evidene and legal obligations have been deposited with the company to conduct the forclosure on the subject property .

97.This ambiguous and convoluded chain of title without proof is further confirmed by contradicting statements by CRC and endless chain of trasfers and trustees further indicating the pattern of deception by plaintiff's nation wide practices of preditory lending that has cost our nation billions of tax payers and home owners money.

98.The notice of default sent to me by CRC on 1/27/09 page 2 last paragraph it is stated " That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to said trustee , a written declaration and demand for sale , and has deposited with said duly appointed trustee , such deed of trust and all the documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby select to cause the trust property to be sold to satisfy the obligation secured thereby.

⅄ Violation of RESPA (12 U.S.C section 2601)

99.If in fact the documentary evidence such as deed of trust and evidence of the demand letter by the note holder (GRANTEE) was delivered to CRC and examined, they should have noticed the authorizing Grantee as Deutsche Bank NA as trustee for WAMU 2005 AR-2 and not conduct an illegal foreclosure under WAMU 2004 AR-9.

100.Now if in fact if the servicing of the note were sold assigned or changed to a new servicer the borrower would have to notified within 15 days of that change then they are in violation of RESPA violation 12 U.S.C section 2601

## **EXHIBIT E**

101.  On or about July 23, 2009, Defendant promised, assured and represented to Plaintiff that the foreclosure sale of his property had been suspended due to Plaintiffs participation in Defendants "Loan Modification" Program. Defendant's, and each of them promised, assured and represented to Plaintiff that the sale of the Subject Property would continue to be suspended pending approval of his "Loan Modification".

102.  In doing so, Defendant knew, or should have known that Plaintiff would be reasonably induced to rely on Defendants promise, assurance and representation to suspend the foreclosure of his home by participating in Defendants "Loan Modification" Program and not seek alternative financial and/or legal remedies to rescue the property.

103.  Plaintiff reasonably relied on Defendants promise, assurance and representation by entering into Defendants "Loan Modification" Program instead of seeking alternative financial and/or legal remedies to rescue the property.

104.  As a direct and proximate result of Defendants failure to perform according to its

24

promise, assurance and representation made to Plaintiff, Plaintiff has been deprived of title to, as well as the quiet use and enjoyment of the Subject Property, but for Defendants failure to uphold its promise, assurance and representation and proceed with foreclosure all to Plaintiffs injury.

105.  Injustice can be avoided by enforcing Defendants' promise, assurance and representation completely.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

106. Plaintiff's incorporates ¶¶ 1-86, as fully set forth above. This claim is against Defendants, CHASE and CRC.

107. Plaintiff seeks to quiet title against the claims of Defendants and all persons claiming any legal or equitable right, title, estate, lien. (Cal Code Civil Procedure §760.020)

108. Plaintiff is the titleholder of the Subject Property according to the terms of the Grant Deed recorded on MAY 17, 2004.

109. Reconveyance. Upon payment of all sums secured by this SecurityInstrument, lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it...

110. The DOT does not state that Plaintiff must pay all sums, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to WaMu under the DOT were fulfilled and the loan was fully paid when WaMu received funds in excess of the balance on the Note as proceeds of sale through securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

111. Defendants' claims are adverse to Plaintiff because Plaintiff is informed and believes that none of the defendants is a holder of the Note, none of them can prove any interest

in the Note, and none of them can prove that the Note is secured by the DOT, as well as for the reasons set forth in the preceding causes of action. As such, Defendants have no right, title, lien, or interest in the Subject Property.

112. Plaintiff therefore seeks a judicial declaration that the title to the Subject Property is vested solely in Plaintiff and that Defendants have no right, title, estate, lien, or interest in the Property and that Defendants and each of them be forever enjoined from asserting any right, title, lien or interest in the Property adverse to Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as hereinafter set forth.

3. That the underlying loan transaction be declared void as a result of Defendants' and WaMu's misrepresentations, fraud, concealment, and predatory loan practices.

Dated: 11/16/2011                              By: _____
                                                    SEPEHR TORABI
                                                    Plaintiff, In Pro Se

### VERIFICATION

I, SEPEHR TORABI Plaintiff in the above entitled action, hereby declare that I have read the foregoing First Amended Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I hereby declare, under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

# EXHIBIT B

Trustee Sale No.: 230026CA Loan No.: 0083488213 Title Order No.: 602116985

**367**

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 07-23-2009. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being $393,676.24 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said Trustee's Sale.

DATE: May 04, 2011

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

Petra Vazquez, Assistant Secretary

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On May 04, 2011, before me, LOREN LOPEZ, "Notary Public", personally appeared <u>PETRA VAZQUEZ</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LOREN LOPEZ
Commission # 1812959
Notary Public - California
Los Angeles County
My Comm. Expires Sep 12, 2012

# EXHIBIT C

RECORDING REQUESTED BY CMS
~~CALIFORNIA RECONVEYANCE COMPANY~~

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311





DOC # 2011-0238395

MAY 09, 2011        8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE      364
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        21.00
                         DA:        1
              PAGES:        2



Space above this line for recorder's use only

Trustee Sale No. 230026CA    Loan No. 0083488213    Title Order No. 602116985

## IMPORTANT NOTICE

NOTE: After having been recorded, this Assignment should be kept with the
Note and the Deed of Trust hereby assigned.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to CITIBANK, NA AS
TRUSTEE FOR WAMU 2004-AR9 all beneficial interest under that certain Deed of Trust dated 05-
07-2004, executed by SEPEHR TORABI, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY, as Trustor; to CALIFORNIA RECONVEYANCE COMPANY as Trustee; and Recorded
05-17-2004, Book , Page , Instrument 2004-0444813 of official records in the Office of the County
Recorder of SAN DIEGO County, California. **APN:** 346-801-19-26 **Situs: 3253        CAMINITO
EASTBLUFF UNIT 26, , LA JOLLA, CA 92037**

TOGETHER with the note or notes therein described and secured thereby, the money due and to
become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust
including the right to have reconveyed, in whole or in part, the real property described therein.

DATE: May 04, 2011

Deutsche Bank N.A., as trustee for WAMU 2005-AR2 by JPMorgan Chase Bank, National
Association, as attorney in fact.

Karime Arias, Officer

FA_MERGE.DOC

1

Trustee Sale No. 230026CA Loan No. 0083488213 Title Order No. 602116985

365

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On May 04, 2011 before me, LOREN LOPEZ, "Notary Public", personally appeared Karime Arias, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LOREN LOPEZ
Commission # 1812959
Notary Public - California
Los Angeles County
My Comm. Expires Sep 12, 2012

FA_MERGE.DOC

2

# EXHIBIT A



Recording Requested By
**ServiceLink**

WHEN RECORDED MAIL TO

California Reconveyance Company
PO Box 6200
Northridge, CA 91328-6200

MAIL TAX STATEMENTS TO

Washington Mutual Bank
7255 Baymeadows Way
Jacksonville, FL 32256
Mail Stop: JAXB2007



DOC.#   2009-0424260



JUL 30, 2009        8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:       12.00
DC:         NA

**PAGES:**        **2**

Space above this line for recorder's use only

Trustee Sale No. 230026CA     Loan No. 0083488213     Title Order No. 602116985

## 4428     TRUSTEE'S DEED UPON SALE

APN 346-801-19-26     T.R.A. No.
The undersigned grantor declares:

1)  The Grantee herein <u>was</u> the foreclosing beneficiary.
2)  The amount of the unpaid debt together with costs was ..................$393,843.24
3)  The amount paid by the grantee at the trustee sale was...................$393,676.24
4)  The documentary transfer tax is .......................................................$0
5)  Said property is in LA JOLLA

and CALIFORNIA RECONVEYANCE COMPANY (herein called Trustee), as the duly appointed Trustee or substituted Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to CITBANK, NA AS TRUSTEE FOR WAMU 2004-AR9 (herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of SAN DIEGO, State of California, described as follows: PARCEL 1: AN UNDIVIDED 1/93RD INTEREST IN AND TO PARCEL 1 OF PARCEL MAP NO. 4690, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1976.  PARCEL 2:  UNIT 26 OF EAST BLUFF, AS SET FORTH ON CONDOMINIUM PLAN RECORDED JULY 15, 1976, AS FILE NO. 76-222577 OF OFFICIAL RECORDS AND AS DEFINED IN THAT CERTAIN DECLARATION OF RESTRICTIONS RECORDED JULY 9, 1976, AS FILE NO. 76-216385 OF OFFICIAL RECORDS.

Situs: 3253    CAMINITO EASTBLUFF UNIT 26, , LA JOLLA, CA 92037
RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 05/07/2004 and executed by SEPEHR TORABI, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, and Recorded 05/17/2004, Book , Page , Instrument 2004-0444813 of official records of SAN DIEGO County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

**4429**

Trustee Sale No.: 230026CA Loan No.: 0083488213 Title Order No.: 602116985

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 07/23/2009. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being $393,676.24 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said Trustee's Sale.

DATE: July 24, 2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____
Karime Arias, Assistant Secretary

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On July 24, 2009, before me, FRED RESTREPO, "Notary Public", personally appeared KARIME ARIAS, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

FRED RESTREPO
Commission # 1848173
Notary Public - California
Los Angeles County
My Comm. Expires May 8, 2013

EXHIBIT - D

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N 11 06 12
Chatsworth, CA  91311
800 892-6902
(818)775-2258 (Fax)

**350**

DOC #   2009-0040035



JAN 28, 2009      8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:          14.00
                         DA:        1

**PAGES:**       2

Space above this line for recorder's use only

---

Trustee Sale No. 230026CA   Loan No. 0083488213   Title Order No. 602116985

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $6,446.34 as of January 27, 2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

**351**

Trustee Sale No. 230026CA   Loan No. 0083488213   Title Order No. 602116985

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 05/07/2004, executed by SEPEHR TORABI, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK,  FA, as Beneficiary Recorded 05/17/2004, Book , Page , Instrument 2004-0444813 of official records in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust. APN: 346-801-19-26 Situs: 3253   CAMINITO EASTBLUFF UNIT 26, , LA JOLLA, CA 92037 Including the note(s) for the sum of $375,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 10/01/2008 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2935.5.

DATE:  January 27, 2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

Karine Arias, Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit 2

Recording Requested By
ServiceLink

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

**Trustee Sale No.    230026CA**
Loan No.    0083488213
Title Order No.    602116985

**3300**

DOC #    2009-0229296



MAY 01, 2009      8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:         15.00
                                            DA:       1
**PAGES:**        2

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05/07/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 05/20/2009 at 10:00 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 05/17/2004, Book , Page , Instrument 2004-0444813,         of official records in the Office of the Recorder of SAN DIEGO County, California, executed by: SEPEHR TORABI, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY STATUE, 250 EAST MAIN STREET, EL CAJON, CA

Legal Description: PARCEL 1:
AN UNDIVIDED 1/93RD INTEREST IN AND TO PARCEL 1 OF PARCEL MAP NO. 4690, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1976.
PARCEL 2:
UNIT 26 OF EAST BLUFF, AS SET FORTH ON CONDOMINIUM PLAN RECORDED JULY 15, 1976, AS FILE NO. 76-222577 OF OFFICIAL RECORDS AND AS DEFINED IN THAT CERTAIN DECLARATION OF RESTRICTIONS RECORDED JULY 9, 1976, AS FILE NO. 76-216385 OF OFFICIAL RECORDS.

Amount of unpaid balance and other charges: $391,179.81 (estimated)

Street address and other common designation of the real property:    3253   CAMINITO EASTBLUFF UNIT 26
                                                                                                LA JOLLA, CA 92037
                                                                                                APN Number:   346-801-19-26
        The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or

that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 04-29-2009

**3301**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

*Deborah Brignac*  (ap)

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.